IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DRAGON INTELLECTUAL PROPERTY, LLC, )
 )
   Plaintiff, )
 )
   v. ) C.A. No. 13-2066 (RGA)
 )
DISH NETWORK L.L.C., )
 )
   Defendant. )

## DISH NETWORK L.L.C.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
etennyson@mnat.com

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7510

*Attorneys for Defendant DISH Network L.L.C.*

Bradley Bowling
Ali Dhanani
Michael Sherby
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave. NW
Washington, DC 20004
(202) 639-7700

August 24, 2016

# **TABLE OF CONTENTS**

Page

I.   Nature and Stage of the Proceeding ..........................................................................1

II.   Summary of Argument ............................................................................................1

III.   Statements of the Facts ...........................................................................................2

    A.   '444 Patent and its Prosecution History Disclaimer ......................................2

    B.   Background of the Litigation .......................................................................2

    C.   Accused DISH Products ..............................................................................3

    D.   DISH Notified Dragon There Was No Reasonable Basis to Maintain The Case ............5

    E.   This Court Held That The '444 Patent Disclaimed "Continuous Recording" .................6

    F.   Unified Patents and DISH IPR Proceedings .................................................6

    G.   DISH's Resolution of District Court Case ...................................................8

    H.   Dragon Counsel's Withdrawal ....................................................................9

IV.   ARGUMENT ........................................................................................................9

    A.   Legal Standard ...........................................................................................9

    B.   DISH is the Prevailing Party .....................................................................11

    C.   The Case is "Exceptional" and Warrants An Award of Attorneys' Fees
       Against Dragon and its Counsel Freitas........................................................11

        1.   Dragon and its Counsel Failed to Conduct a Proper Pre-Filing
           Investigation..................................................................................12

        2.   Dragon and Freitas Recklessly Continued Objectively Baseless Litigation ............12

        3.   Dragon Took Diametrically Opposite Positions Regarding the Asserted
           Claims in the PTAB and Before This Court ...................................14

        4.   DISH is Entitled to Its Attorneys' Fees From Both the PTAB Proceeding
           and This Litigation .......................................................................15

        5.   Statutory Language of Section 285 Does not Exclude Counsel's
           Exceptional Conduct......................................................................16

6.   An Exceptional Case Against Freitas is Necessary to Deter Future
        Frivolous Patent Assertions Against Defendants......................................................19

    D.  In the alternative, DISH seeks fees against Frietas under 28 U.S.C. §1927..................19

V.   Conclusion .................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>C</u>ASES

*Deep Sky Software, Inc. v. Sw. Airlines Co.*,
   2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) ............................................................15, 16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ....................................................................................................16, 17

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006) ............................................................................................11

*Howes v. Med. Components, Inc.*,
   761 F. Supp. 1193 (E.D. Pa. 1990) ......................................................................................15

*IA Labs CA, LLC v. Nintendo Co.*,
   2012 WL 1565296 (D. Md. May 1, 2012) *aff'd*, 515 Fed.Appx. 892 (Fed. Cir.
   2013) ......................................................................................................................................15

*Inland Steel Co. v. LTV Steel Co.*,
   364 F.3d 1318 (Fed. Cir. 2004) ..............................................................................................9

*Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*,
   CV 14-03009-JVS (PWJ) (C.D. Cal. Jun. 23, 2016) .........................................................9, 11

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
   76 F.3d 1178 (Fed. Cir. 1996) ................................................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ................................................................................................ *passim*

*Oplus Techs., Ltd. v. Vizio, Inc.*,
   782 F.3d 1371 (Fed. Cir. 2015) ............................................................................................10

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
   840 F.2d 1565 (Fed. Cir.1988) ............................................................................................15

*Parallel Iron LLC v. NetApp Inc.*,
   70 F. Supp. 3d 585 (D. Del. 2014) ........................................................................................9

*Scott Paper Co. v. Moore Bus. Forms, Inc.*,
   604 F. Supp. 835 (D. Del. 1984) ..........................................................................................15

*Vehicle Interface Techs. LLC v. Jaguar Land Rover N. Am. LLC*,
   639 F. App'x 651 (Fed. Cir. 2016) ......................................................................................15

*Vehicle Operation Technologies LLC v. Am. Honda Motor Co. Inc.*,
    67 F. Supp. 3d 637 (D. Del. 2014) ........................................................................6

*Vehicle Operation Techs. LLC v. Ford Motor Co.*,
    2015 WL 4036171 (D. Del. Jul. 1, 2015) ..........................................................9, 10

*Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*,
    2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015), *appeal dismissed* (June 18,
    2015), *aff'd sub nom. Worldwide Home Prod., Inc. v. Time, Inc.*, 626 F. App'x
    1009 (Fed. Cir. 2015) ..........................................................................................19

## STATUTES

28 U.S.C. § 1927 ................................................................................. *passim*

35 U.S.C. § 284 .................................................................................17, 18

35 U.S.C. § 285 ................................................................................. *passim*

## I.     NATURE AND STAGE OF THE PROCEEDING

Defendant DISH Network L.L.C. ("DISH") respectfully moves this Court to declare this case exceptional pursuant to 35 U.S.C. § 285 and to award DISH its prevailing party attorney fees and other costs against Plaintiff Dragon Intellectual Property, LLC ("Dragon") and Dragon's original counsel in this case, the law firm of Freitas Angell & Weinberg LLP, as well as attorneys Robert Freitas and Jason Angell (collectively "Freitas").  DISH additionally asks that this Court award DISH fees under 28 U.S.C. § 1927.

## II.    SUMMARY OF ARGUMENT

First, DISH undoubtedly prevailed in all aspects of this case.  On infringement, Dragon dismissed its case against DISH by stipulation of non-infringement in light of the Court's Markman Order adopting DISH's briefing.  On validity, DISH also prevailed in cancelling all asserted claims in its IPR[1] before the PTAB.  Thus, DISH prevailed on both invalidity and non-infringement before this Court and the PTAB.

The record of this case demonstrates that Dragon's suit against DISH is exceptional for multiple reasons.  Dragon's infringement allegations were not only meritless and objectively unreasonable based upon the plain language of the asserted claims, but its claim construction and infringement positions had already been clearly and unequivocally disclaimed (repeatedly) during the prosecution of the asserted patent, as confirmed by this Court's Markman Order. Additionally, both pre-filing and during the lawsuit, Dragon and its counsel were aware and could easily confirm how the accused DISH products operated and the fact that the products could not infringe the plain language of the claims.  DISH warned Dragon that it could not infringe and Dragon has never stated that it conducted a pre-filing investigation.  On validity,

---

[1]     Petition for *Inter Partes* Review filed on December 23, 2014 and Final Written Decision issued on June 15, 2016.

Dragon must at least be charged with knowledge of the many disclaimers and prior art references that narrowed its claims.  Although Dragon was the party plaintiff, all conduct complained of here is that of Frietas.  As Dragon is believed to be a judgment-proof assertion entity and deterrence is necessary to avoid future objectively baseless assertions, DISH is entitled to an award of its attorneys' fees (for both the litigation and related IPR proceedings) from Dragon and from Freitas.

## III.   STATEMENTS OF THE FACTS

### A.   '444 Patent and its Prosecution History Disclaimer

The application for U.S. Patent No. 5,930,444 ("'444 patent") was filed on April 28, 1994.  During the prosecution of the '444 patent application, six office actions issued, and each office actions included rejections based on U.S. Patent No. 5,134,499 ("Sata").  Sata teaches a recording device that "continuously records the video data concerning the television program of the channel tuned by the television tuner."  *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-2061-RGA, D.I. 110, Mem. Op. at 7 (D. Del. Sept. 9, 2015).  The applicant repeatedly responded to the Sata rejections by disclaiming "continuous recording" as covered by the claims and by stating that the device claimed in the '444 patent does not begin recording until the user actuates the record key.  *Id.* at 7.  The applicant also amended the claims to highlight that the actuation of the record key is needed to begin recording.  *Id.*

### B.   Background of the Litigation

Having advised the public that its claims did not cover continuous recording, Dragon, represented by Freitas, filed suit on December 20, 2013, alleging that DISH infringed the '444 patent. (D.I. 1).  On that same day, Dragon also filed suit against nine other defendants: Apple, Inc., AT&T Services, Inc., Charter Communications Inc., Comcast Cable Communications LLC, Cox Communications Inc., DirecTV LLC, Sirius XM Radio Inc., Time Warner Cable Inc., and

Verizon Communications Inc. (with the exception of Sirius, hereinafter referred to as "Unstayed Defendants").  On June 23, 2014, DISH first produced publicly available user manuals for the accused DISH products and supplemented that production over time.  *See* Declaration of Jamie Lynn[2], Ex. 1, DISH Production Letter.  In its August 29, 2014 Infringement Contentions, Dragon asserted that DISH infringed claims 1, 2, 3, 4, 8, and 10 of the '444 patent.  Ex. 2, Infringement Contentions.

### C.    Accused DISH Products

In those Infringement Contentions, Dragon accused DISH's "DVR" or Digital Video Recorder products of infringing the '444 patent.  The accused DISH DVR products record satellite broadcast TV shows for viewing by the user at a later time.  They operate by using "continuous recording" (which Dragon had disclaimed) of any live broadcast program without user intervention.  In a feature that DISH calls "Auto Recording," the DISH DVRs initiate recording automatically and immediately upon turn-on of the system (to the last channel viewed) or upon user channel change.  This feature is described in DISH's public user manuals.  Ex. 3, DISH Satellite System User's Guide (produced at DISH_00000337) at 69; Ex. 4, DISH Hopper with Sling User Guide (produced at DISH_00001755) at 60.

This form of "continuous recording" had the advantage that the user did not have to press a separate RECORD key to initiate recording.  Importantly, the user experience was better because it allowed a user to simply tune to a channel and recording began automatically.  If the user then decided to record or pause the show for later retrieval, then the user could then press a RECORD key which saved the recorded show.  Ex. 4 at 62-63.[3]

---

[2]    The referenced exhibits are attached to the concurrently filed Declaration of Jamie Lynn.
[3]    Because DVRs do not have limitless storage, the amount of content stored when the DVR is "Auto Recording" was limited (*e.g.* two hours).  Ex. 3 at page 69.

3

Beyond being described in publicly available user manuals, DISH DVR operation is readily observable as a typical user or subscriber.  Detailed technical analysis is not required to determine that DISH's accused products use "continuous recording" disclaimed in the '444 patent.  For example, any subscriber to the DISH service with a DVR can simply make a channel change and then watch a show for up to an hour.  Ex. 5, Oct. 24, 2014 Letter at 4.  After some period, as short as a few seconds to as long as an hour, the user can press the RECORD key.  As described in the user manuals for DISH's DVRs, a show records from the point of the first channel change.  Ex. 4 at 61 ("you can only reverse back to the last channel change or back one hour, whichever occurs first").  After pressing the RECORD key, the user can go to the DVR program menu and retrieve the recorded show.  *Id.* at 62.  In every instance, the DVR recording can be seen as starting from the beginning of the channel change or when the DVR was first turned on and not when the RECORD key is pressed.  Ex. 5.  Recording is never initiated from the press of the RECORD key on any DISH DVR, as the '444 patent claims require.  *Id.*

Similarly, when a user presses the PAUSE key on any DISH DVR, the show is already recording.  *Id.*  Pause merely places a marker on the "continuous recording" already in progress at the point in the recording where PAUSE was pressed.  Ex. 4 at 61.  Pressing PLAY or PAUSE after pause has been pressed merely plays back the recording from that point, but the user could restart from any point in the recording.  Ex. 5.  It would be readily apparent to anyone that recording had started before the PAUSE key was pressed by simply rewinding to a time period before the PAUSE key press.  Thus, the DISH DVR PAUSE button never initiates any recording nor does it play back the recording from the initial start of the recording from the channel change or turn-on of the DVR.

4

**D.      DISH Notified Dragon There Was No Reasonable Basis to Maintain The Case**

On October 24, 2014, DISH notified Dragon by letter that the accused DISH DVRs were "continuously recording," as described above, and that there was no basis for its infringement allegations against DISH.  *Id*.  DISH was clear that any reasonable pre-suit investigation would have demonstrated that the DISH devices could not infringe the plain language of the asserted claims.  *Id*.

Specifically, DISH noted that the plain language of the claims requires the use of a "record key," which, when actuated, begins the recording that can then later be watched by pressing a "playback key."  *Id*.  As explained in that letter and demonstrated by DISH's user manuals, the DISH products do not begin recording when a RECORD or PAUSE button is actuated, but instead the DISH products continuously record, regardless of the use of a RECORD or PAUSE button.  In addition to noting that the DISH products could not meet the plain language of the claims, DISH explained in its October 24 letter that this basic reading of the claim language was further confirmed by the applicant's statements and prosecution disclaimer of devices that continually record.

Dragon failed to address the concerns raised in DISH's October 24 letter, but instead attempted to re-write its infringement allegations against DISH by ignoring the claim language. For example, for the term "the broadcast program information," Dragon's counsel attempted to replace it with the phrase "program information of interest" that did not otherwise exist in the asserted claims.  Ex. 6, Nov. 11, 2014 Letter.[4]  Two days later, DISH once again explained that its documentation, or alternatively, simple use of the DISH products, would confirm non-

---

[4]      Dragon took a new position that "broadcast program information" should be construed differently than "***the*** broadcast program information" within the same claim.  *Id.* at 2.  Dragon then served "Further Infringement Contentions" attempting to flesh out this argument.  Ex. 7, Further Initial Infringement Contentions at 5.

infringement.   Ex. 8, Nov. 13, 2014 Letter.   DISH requested that Dragon dismiss all claims against DISH and noted that it reserved its right to seek attorney fees under 35 U.S.C. § 285 based upon the objectively unreasonable positions Dragon and its counsel were taking in the litigation.   *Id.*   Critically, DISH warned Dragon and Freitas that its most recent conduct attempted to reverse the clear disclaimer regarding "continuous recording."   *Id.*

### E.      This Court Held That The '444 Patent Disclaimed "Continuous Recording"

The Court agreed with DISH that the '444 Patent disclaimed "continuous recording."   In its Markman Order, the Court held that, during the prosecution of the '444 patent when responding to the six separate rejections regarding the Sata reference, "applicants clearly and unequivocally disclaimed 'continuous recording' devices.   I have only once seen a clearer case of prosecution disclaimer."   *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-2061-RGA, D.I. 110, Mem. Op. at 7 (D. Del. Sept. 9, 2015) (citing *Vehicle Operation Technologies LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 650-51 & n.6 (D. Del. 2014)).

### F.      Unified Patents and DISH IPR Proceedings

Earlier in the case, on August 5, 2014, Unified Patents filed an *inter partes* review ("IPR") challenging claims 1, 2, 7, 8, 10, 13, and 14 of the '444 patent before the Patent and Trademark Appeals Board ("PTAB").   During the Unified IPR proceedings, Dragon attempted to distinguish the '444 patent claims from the prior art with statements suggesting that the '444 patent invention began a recording only by pressing a record key:   "[I]n [the prior art]... there's no reference to how recording is begun."   *Unified Patents Inc. v. Dragon Intellectual Property LLC*, IPR2014-01252, Paper No. 57, at 40 (PTAB Nov. 2, 2015).

After Dragon received the § 285 warning letters and failed to drop its lawsuit, on December 23, 2014, DISH also filed an IPR believing it to be the least expensive method then

available for resolving the dispute.  The PTAB instituted trial for claims 1-4, 7-10, 13 and 14 (which includes all asserted claims) on July 17, 2015.  On March 17, 2015, DISH and other parties filed a motion to stay the litigation.  (D.I. 74).  On April 10, 2015, the Court heard oral arguments regarding the motion to stay.  During the oral arguments, DISH's counsel explained that DISH viewed Dragon's infringement allegations as having no merit, that DISH had previously sent Dragon a letter explaining why this was an exceptional case under § 285, and that DISH had moved forward with a cost-efficient IPR proceeding as it viewed the patent as clearly invalid as well.  (D.I. 87 at 25).  Following oral arguments, the Court granted a stay of proceedings for DISH and proceeded with litigation as to the Unstayed Defendants.  (D.I. 86).

On February 5, 2016, the PTAB issued a Final Written Decision for the Unified Patents IPR, finding unpatentable claims 1, 2, 7, 8, 10, 13, and 14 of the '444 patent.  The IPR trial oral hearing for the DISH IPR occurred on February 9, 2016, during which Dragon's counsel took a position supporting the "continuous recording" disclaimer created by the prior art Goldwasser reference:

> "So, we don't dispute that in Goldwasser it does mention the action recording, ***but it does not teach anything about how to begin a specific recording.*** …. And in our patent, in claim 1, that means that ***you have to press a record key to specifically begin a recording.  That's what the claim language says.***"

Ex. 9, *DISH Network v. Dragon Intellectual Property*, IPR2015-00499, Paper No. 33, at 21: 1-6 (PTAB Oral Argument, Mar. 8, 2016) (emphasis added).  This is in clear distinction to and contrary to Dragon's district court position that its claims could cover any system that records prior to pressing a record key as long as the recording captured the "program information of interest."  Critically, Dragon never proposed the broader construction of "broadcast program information" to the PTAB nor did it attempt to propose two different meanings for this same term in the same claim even though the standard for claim construction in an IPR is broader than

in the district court.  In fact, Dragon did the opposite – arguing a broad interpretation in the District Court to capture DISH and other defendants' products while arguing the narrower construction before the PTAB.

On June 15, 2016, the PTAB issued a Final Written Decision for the DISH IPR finding unpatentable claims 1-4, 7-10, 13 and 14.  Ex. 10, *DISH Network v. Dragon Intellectual Property,* IPR2015-00499, Paper No. 34 (PTAB Final Written Decision, Jun. 15, 2016).

### G. DISH's Resolution of District Court Case

Though DISH's district court case was stayed just prior to the claim construction oral hearing, DISH did participate in all briefing with co-defendants.  Relying on the Court's September 15, 2015 Markman Order, DISH entered a stipulation and order on April 26, 2016 confirming non-infringement of DISH's accused products.  (D.I. 116).  The Court entered judgment in favor of DISH the next day on April 27, 2016.  (D.I. 117).  The co-defendants filed a Rule 11 Motion on December 24, 2015, which this Court denied on July 12, 2016.  *See* D.I. 120; D.I. 123 (referring to Order Denying Defendants' Motions, *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-2061-RGA, D.I. 180 (D. Del. Jul. 12, 2016)).  By stipulation, the effect of the final judgment was delayed until 30 days from the July 12, 2016 decision on co-defendants' Rule 11 Motion.  *Id.*[5]

---

[5]     In accordance with the Court's Order, DISH propounded limited interrogatories and requests for production on Dragon on July 14, 2016.  The discovery requests sought information regarding Freitas' conduct and control of the litigation, specifically concerning:  (a) contingency agreements; (b) statements to Dragon that the case was high risk or whether Dragon accepted the high risk; (c) statements identifying Dragon's investors; and (d) statements regarding Dragon's ability to pay a judgment.  Ex. 11, DISH's First Set of Limited Requests for Production; Ex. 12, DISH's First Set of Limited Interrogatories to Dragon.  Dragon refused to respond to these discovery requests.  Ex. 13, Dragon's Objections and Responses to DISH's 1st Set of Limited Interrogatories; Ex. 14, Dragon's Objections and Responses to DISH's 1st Set of Limited Requests for Production.

### H.      Dragon Counsel's Withdrawal

On October 28, 2015, Freitas filed a motion to withdraw as counsel for Dragon, claiming an undisclosed conflict between Freitas and Dragon.  (D.I. 92).  On December 9, 2015, Timothy Devlin entered a limited appearance for Dragon.  (D.I. 97).  At present, Dragon's current representation is not clearly known, and it is unclear whether Mr. Devlin's appearance will include this motion.  DISH is serving this motion not only on Dragon's limited appearance counsel, but also serving Freitas and the individual attorneys from that firm (Robert Freitas and Jason Angel) as this § 285 motion pertains to them.  DISH does not seek any claim against either Mr. Devlin or his firm, prior local counsel from the Bayard firm, or Dragon's IPR counsel.

## IV.    ARGUMENT

### A.      Legal Standard

The Patent Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Thus, under the statute there are two basic requirements:  (1) that the party seeking fees is a "prevailing party"; and (2) that the case is "exceptional."

The Federal Circuit held that district courts are to "apply the general principle that to be a prevailing party, one must receive at least some relief on the merits, which alters ... the legal relationship of the parties."  *Inland Steel Co. v. LTV Steel Co*., 364 F.3d 1318, 1320 (Fed. Cir. 2004).  Similarly, this Court has held that "for a party to be a prevailing party, that party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment."  *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014); *see also Vehicle Operation Techs. LLC v. Ford Motor Co.*, C.A. No. 13-539-RGA, 2015 WL 4036171, at *2 (D. Del. Jul. 1, 2015).  A party can be considered the prevailing party even when final judgment does not dispose of the entirety of a case, such as when the

asserted patent has been declared invalid.  *Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*, CV 14-03009 JVS(PJWx) (C.D. Cal. Jun. 23, 2016) (citing *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996)).

The Supreme Court recently defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  District courts should determine whether a case is "exceptional" in the exercise of their discretion on a case-by-case basis, considering the totality of the circumstances. *Id.*  Relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (internal quotations marks omitted).  A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id.* at 1758.  As this Court previously held, a case may be found exceptional and fees awarded where the exceptional conduct is based upon a purely legal argument, as one of the factors to consider in deciding whether a case is exceptional is objective unreasonableness (both in the factual and legal components of the case). *Vehicle Operation Techs.,* 2015 WL 4036171, at *2.

Under 28 U.S.C. § 1927, fees may be award against an attorney "who so multiples the proceeding in any case unreasonably and vexatiously[.]"  28 U.S.C. § 1927; *see Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371 (Fed. Cir. 2015) (remanding district court's denial of fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927 based upon district court's abuse of discretion).

### B.     DISH is the Prevailing Party

As to the first requirement for an exceptional case finding, DISH is undoubtedly the prevailing party.  On validity, DISH prevailed on all asserted claims when the PTAB issued a Final Written Decision for the DISH IPR finding unpatentable claims 1-4, 7-10, 13 and 14 of the '444 patent.  Ex. 10.  On infringement, DISH prevailed after Dragon lost its expansive claim constructions and the Court entered its Markman Opinion and Markman Order.[6]  DISH and Dragon then entered into a stipulation finding that none of the DISH accused products infringed the '444 patent under the Court's claim constructions.  (D.I. 116).  DISH has won on all substantive issues and Dragon has prevailed on none, making DISH a prevailing party.  The stipulation of non-infringement provides the necessary judicial imprimatur to confer prevailing party status to DISH under § 285.  *Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*, CV 14-03009 JVS(PJWx) (C.D. Cal. Jun. 23, 2016); *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).

### C.     The Case is "Exceptional" and Warrants An Award of Attorneys' Fees Against Dragon and its Counsel Freitas

This case "stands out from others" based upon:  (1) the clear failure by Dragon and its counsel to conduct an adequate pre-filing investigation; (2) Dragon's refusal to acknowledge the express language of its own claims as applied to the accused DISH DVR products and its continued pursuit of frivolous litigation after being notified of its meritless positions; and (3) the diametrically inconsistent positions that Dragon took in the related IPR proceedings and this Court concerning the scope of the asserted claims of the '444 patent.

---

[6]     *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-2061-RGA, D.I. 110, Mem. Op. (D. Del. Sept. 9, 2015); and D.I. 112, Claim Construction Order (D. Del. Sept. 15, 2015).

### 1.    Dragon and its Counsel Failed to Conduct a Proper Pre-Filing Investigation

First, Dragon and Freitas clearly failed to conduct an adequate pre-filing investigation concerning the DISH DVR products.[7]   As explained in section III(C) above, a basic visual examination of the DISH DVR products would have revealed that they operate in "continuous recording" mode, and thus would not meet the requirements of the plain language of the claim. Ex. 5.   Such a determination could have been made based on publicly available DISH user manuals for the accused DVR products or alternatively the use of a DISH DVR product, which could have been obtained with a modestly-priced DISH subscription.   *Id.*   In fact, Dragon's counsel even cited to the "Auto Recording" feature of DISH's products in its first Infringement Contentions, clearly relying upon DISH's public marketing of the feature.   Ex. 2 at 6, 10.   At a minimum, Dragon and its counsel ignored the results of its pre-filing investigation and irresponsibly moved forward with this lawsuit.

### 2.    Dragon and Freitas Recklessly Continued Objectively Baseless Litigation

Second, Dragon and Freitas continued this frivolous case and refused to acknowledge the express language of Dragon's own claims as applied to the accused DISH DVR products.   Such behavior was objectively unreasonable and baseless.   DISH's detailed letter of October 24, 2014 clearly explained why the plain language of the claims (supported by clear and repeated prosecution disclaimer) could not cover the "continuous recording" operation of the accused DISH DVR products.   Ex. 5.   DISH also explained why Dragon's Infringement Contentions demonstrated that no reasonable basis existed for continuing the lawsuit.   *Id.*

---

[7]      In response to an interrogatory covering pre-suit investigations, Dragon failed to identify ***any*** efforts or investigation made prior to filing its lawsuit against DISH.   *See* Ex. 15, Response to Defendants' Common Interrogatory No. 8 at 14-15.   Dragon's correspondence is equally silent as to any pre-suit investigation.

Rather than ending the case, Dragon and Freitas unnecessarily escalated and continued to litigate this case.   Dragon's meritless positions were further confirmed during the claim construction briefing for the '444 patent.   During briefing, DISH and the Unstayed Defendants pointed out the clear claim language that necessarily excluded "continuous recording" devices. (D.I. 78 at 75-80).

Faced with these arguments, Dragon ignored not only the plain claim language excluding "continuous recording" products, but also the six supporting prosecution disclaimers with respect to the term "the broadcast program information."   Instead of addressing the arguments, Dragon attempted a nonsensical and unsupportable legal argument:   ***namely that the repeated prosecution disclaimers concerning the scope of the claims were not relevant to claim construction***, but instead were related to prosecution history estoppel.   *Id*. at 12-15.   It stated "Dragon notes that claim 1 makes no reference to 'continuous recording' devices, and no purpose is served by reference to matters that do not appear in the claim, or in Dragon's construction."   *Id.* at 80.   Indeed, the prosecution history raised during the claim construction briefing showed six distinct rejections of the asserted claims based on the Sata reference and the applicant's explicit and repeated disclaimer of "continuous recording" devices in its Office Action responses.   Dragon and its counsel simply ignored this history.

Separate from its untenable positions concerning "continuous recording" and related prosecution disclaimer, Dragon and Freitas took an objectively unreasonable position seeking to have the term "broadcast program information" construed differently than the term "***the*** broadcast program information" in the ***same claim***, ignoring a basic axiom that the former is the

antecedent basis for the latter and must mean the same thing. *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-02061-RGA, D.I. 110, at 6-8 (D. Del. Sept. 9, 2015).[8]

During the May 2015 Markman hearing, this Court also noted the untenable positions that Dragon and Freitas were taking by attempting to argue that the claim term had not been limited by a rejection over prior art – arguing the term meant the same thing before and after the rejection. *Id.* at D.I. 101, Markman Transcript at 108 (D. Del. Sept. 9, 2015). Nevertheless, Dragon and Freitas continued to pursue Dragon's claims against DISH following the '444 patent Markman hearing. When the Court issued its Markman Order in September 2015, it noted that the PTO had rejected the patent claims six times based upon the Sata reference, which disclosed "continuous recording," and found that Dragon had not provided a good reason to depart from the "well-established presumption" that all uses of "broadcast program information" should have the same meaning. *Id.* at D.I. 110, Mem. Op. at 6 (D. Del. Sep. 9, 2015). The Court also found that "applicants clearly and unequivocally disclaimed 'continuous recording' devices. I have only once seen a clearer case of prosecution disclaimer." *Id.* at 7.

Despite the clear loss, it took ***more than 6 months*** after the September 2015 Markman Order for Dragon and its counsel to agree to stipulate to non-infringement for DISH – over a year after DISH's October 2014 letters notifying Dragon of its meritless infringement positions.

### 3. Dragon Took Diametrically Opposite Positions Regarding the Asserted Claims in the PTAB and Before This Court

Third, Dragon not only continued to litigate this case despite being aware of the plain language and repeated prosecution disclaimer, but took ***directly conflicting*** positions in the IPR

---

[8]    The Court noted Dragon's and Freitas' lack of support for their proposed construction of "the broadcast information" during the Markman hearing, with defendant AT&T using a technical dictionary for support, and Dragon relying on a story concerning the Oregon Ducks. *Dragon Intellectual Property LLC v. AT&T Services Inc.*, C.A. No. 13-2061-RGA, D.I. 101, Markman Transcript at 85 (D. Del. Sept. 9, 2015).

proceeding in an attempt to save its claims from cancellation.  In the IPR, Dragon sought to adopt the disclaimers to narrow its claims and avoid cancellation; in the District Court, Dragon sought to ignore the disclaimer to broaden its claims to cover Defendants' DVR products.

In Dragon's oral arguments during the IPR proceedings, Dragon flipped positions regarding the scope of its patent claims, stating, "So, we don't dispute that in Goldwasser it does mention the action recording, but it does not teach anything about how to begin a specific recording. . . . ***And in our patent, in claim 1, that means that you have to press a record key to specifically begin a recording.  That's what the claim language says.***"  Ex. 9 (emphasis added).

In its infringement contentions and during Markman briefing, Dragon ignored this limitation and broadly claimed that the recording could have begun earlier but the pause key was the point of recording that the user was "interested in."  This also explains why they argued for two different constructions of "broadcast program information" – the construction "program information of interest" allowed Dragon to try to avoid the "continuous recording" disclaimer.

### 4.   DISH is Entitled to Its Attorneys' Fees From Both the PTAB Proceeding and This Litigation

DISH's request for its attorneys' fees includes both fees for this litigation as well as the related IPR proceeding for the asserted '444 patent.[9]  Courts have previously awarded § 285 fees incurred for both post-grant patentability challenges and the underlying litigation.  *See Deep Sky Software, Inc. v. Sw. Airlines Co.*, No. 10-CV-1234-CAB, 2015 WL 10844231, at *1 (S.D. Cal. Aug. 19, 2015).[10]  In *Deep Sky*, the court awarded Southwest its attorneys' fees related to a

---

[9]   Similar to the *Jaguar case*, DISH is entitled to and will be seeking an exceptional case finding for any fees incurred as a result of Dragon appealing the Court's claim construction determinations.  *Vehicle Interface Techs. LLC v. Jaguar Land Rover N. Am. LLC*, 639 F. App'x 651 (Fed. Cir. 2016).  Notably, Freitas represented VIT in this exceptional case as well.
[10]   Beyond *Deep Sky*, other courts have similarly granted § 285 fee requests for Patent Office proceedings.  *See IA Labs CA, LLC v. Nintendo Co.*, No. CIV. PJM 10–833, 2012 WL 1565296, at *4 (D. Md. May 1, 2012) *aff'd*, 515 Fed. App'x. 892 (Fed. Cir. 2013)

concurrent *inter partes* reexamination proceeding that resulted in the cancellation of subject claims.  In granting Southwest's request, the court noted that the Federal Circuit had interpreted attorneys' fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit and noted that "just as the parties envisioned when they jointly moved to stay this case, the reexamination proceedings essentially substituted for work that would otherwise have been done before this court."  *Id.* at *2.

Analogous to *Deep Sky*, DISH utilized the IPR proceeding as an alternative and more cost-effective forum to address Dragon's frivolous assertions, and is entitled to the attorneys' fees incurred in that proceeding.  In addressing this issue during oral argument on DISH's stay request, DISH's counsel bluntly described why it filed the IPR petition – it was thought to be cheaper in the long run.  Ex. 16, Transcript of Motion to Stay at 25, 27.  To deny DISH's request for its attorneys' fees incurred in the IPR proceedings would paradoxically punish DISH for using an alternative and more cost-effective forum to resolve the dispute between the parties.  Although DISH will submit a formal request for proposed fees after an exceptional case finding, DISH would note that its fees for both the IPR proceeding and district court litigation are estimated as being only approximately $1.1 million, a more than reasonable sum considering the two-year time period that DISH has been dealing with the litigation and related IPR proceeding.

### 5.   Statutory Language of Section 285 Does not Exclude Counsel's Exceptional Conduct

DISH respectfully requests that the Court find this case exceptional and award DISH its attorneys' fees against **both** Dragon and Freitas.  Liability should be joint and severable.  The plain language of § 285 does not preclude awarding fees against a party's counsel.  *See* 35

---

(reexamination proceedings); *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1198 (E.D. Pa. 1990) (reexamination proceedings); *Scott Paper Co. v. Moore Bus. Forms, Inc.*, 604 F. Supp. 835, 838 (D. Del. 1984) (reissue proceedings); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568 (Fed. Cir.1988) (reissue proceedings).

U.S.C. § 285.  Rather, a plain reading of § 285 places that decision within this Court's discretion to award reasonable attorneys' fees.  The entirety of § 285 states:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

The recent Supreme Court decisions in *Octane Fitness* and *Halo* both support DISH's request here.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1756 (2014); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-34 (2016).  In both *Octane Fitness* and *Halo*, the Supreme Court rejected attempts to narrow the clearly broad, simple statutory language of §§ 284 and 285.  *Id.*  Similarly, there is no basis here to preclude the award of fees against a party's counsel when the statute contains no such restriction.  Congress could have, but did not, specify that the losing party alone must pay the fees, and the intent of Congress and the purpose of § 285 would be frustrated by a construction that does not permit awards against attorneys, where they are the only real recourse for compensation.

Based on the Supreme Court's decision in *Halo*, the best view is that § 285 allows the trial court to award attorneys' fees not only against a party, but also against its counsel, because there is no contrary limitation in the statute.  In *Halo*, the Supreme Court held that 35 U.S.C. § 284 must be interpreted as written by Congress and not unnecessarily constrained.  As in § 285, the operative language of § 284 is surprisingly curt (and does not mention willful infringement):  "In either event [a court or jury verdict] the court may increase the damages up to three times the amount found or assessed."  Striking down various court-imposed limitations, the Supreme Court held:  (1) the standard of proof is a preponderance of the evidence because the statute did not state otherwise; (2) review is by abuse of discretion where the statutory language states "the court may increase damages"; and (3) because an objectively reckless standard was not stated, none would be inferred and a subjective willfulness standard could satisfy increased

damages under § 284.  After *Halo*, § 285 must likewise be read literally ("may award") without imposition of any court-imposed limitations (e.g., "only against a party but not its counsel").

Similarly, in *Octane Fitness*, the Court was blunt that § 285 is "patently clear" in imposing "one and only one constraint on district courts' discretion to award attorney's fees in patent litigation:  The power is reserved for 'exceptional' cases.'"  134 S. Ct. at 1755-56.  In *Octane Fitness*, the bar for what constitutes "exceptional" conduct was lowered to conduct that "simply stands out from others" and again that standard was not found in mountains of jurisprudence but in the Webster's Dictionary definition of the word "exceptional."  *Id.* at 1756.  Fee awards under § 285, like increased damage awards under § 284, mean what they say:  (1) the grant of § 285 awards are within the trial court's discretion; (2) § 285 awards are decided on a preponderance of the evidence standard and not a clear and convincing standard; and (3) any review on appeal is under an abuse of discretion standard, not *de novo*.

Although the Federal Circuit has yet to address this specific issue post-*Octane Fitness*, recent commentary supports finding counsel liability under § 285.  As noted by commentators, "where the patentee is an asset-less [patent] 'troll,' shifting fees is a hollow victory."[11]  Specifically, it has been noted that, because the purpose of § 285 is to prevent a gross injustice, a winning party should not be forced to bear the entire burden of its own counsel's fees in cases of unfairness or bad faith in the conduct of the losing party.  *Id.*  The undersigned counsel is not aware of any congressional intent or legislative record suggesting § 285 be limited to parties.

Further factors support finding counsel liability under § 285.  Willful infringement claims under 35 U.S.C. § 284 are not available to a defendant.  The creation of a judgment-proof plaintiff exaggerates the asymmetry of remedies available for "exceptional" conduct.  Although

---

[11]    *See* Ex. 17, "When Dreams Come True?  Using Section 285 to Impose Fees against a Losing Patentee's Lawyers" (Landslide Magazine, Jan. 2015).

Dragon's financial status remains a question, joint and several liability would provide DISH with greater protection.  In this case, Freitas was the only party that effectively controlled the case, and was in a position to benefit from winning the case financially.  Indeed, Freitas was aware of the frivolous nature of the proceedings no later than its receipt of DISH's October 2014 letter.

### 6.   An Exceptional Case Against Freitas is Necessary to Deter Future Frivolous Patent Assertions Against Defendants

As noted in *Octane Fitness*, relevant factors for consideration include "frivolousness, motivation, objective unreasonableness (both in the factual and ***legal components*** of the case) and the need in particular circumstances to advance considerations of compensation and ***deterrence***."  134 S. Ct. at 1756 n.6 (internal quotations marks omitted, emphasis added).  It should be noted that this Court has recently dealt with other exceptional cases led by the Freitas firm and Robert Freitas in *Vehicle Interface Technologies, LLC v. Jaguar Land Rover North America, LLC*, C.A. No. 12-1285, D.I. 148, Mem. Op. (D. Del. Dec. 28, 2015).  Freitas should not be permitted to serially file frivolous and objectively unreasonable lawsuits using judgment-proof assertion entities as a shield – an exceptional case finding holding Freitas jointly and severally liable with Dragon here would be the precise type of deterrent that the Supreme Court contemplated in *Octane Fitness*.

### D.   In the alternative, DISH seeks fees against Freitas under 28 U.S.C. §1927

In the alternative, Freitas' conduct supports a finding and award of fees under 28 U.S.C. § 1927, to be awarded jointly and severally with Dragon's liability under §285.  *Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*, No. 11-CV-3633-LTS-MHD, 2015 WL 1573325, at *5-6 (S.D.N.Y. Apr. 9, 2015), *appeal dismissed* (June 18, 2015), *aff'd sub nom. Worldwide Home Prod., Inc. v. Time, Inc.*, 626 F. App'x 1009 (Fed. Cir. 2015).  Under § 1927, however, the scope of fees allowed against Freitas is limited to a fee claim for the "excessive costs, expenses

and attorney's fees" caused by counsel.  *Id.*  Freitas certainly filed the original complaint and DISH asserts that the case was unnecessary and excessive from the outset.  However, by no later than the first DISH § 285 warning letter on October 24, 2014, Freitas was personally on notice that the case was completely untenable.  Thus, the period of "excessive" fees, costs and expenses either runs from December 20, 2013, when Freitas improvidently filed the lawsuit or from October 24, 2014, when DISH clearly advised Freitas the case was meritless.  Freitas's personal role in the District Court case as to DISH ended on April 10, 2015, when the court entered the stay of all proceedings – a motion that Freitas and Dragon opposed.  The approximate fees for the work performed in the District Court case during the October 2014 to April 10, 2015 period was less than $270,000; less than a quarter of the total.[12]  At a minimum, fees against Freitas should therefore be awarded for the period of time in which the firm and its two partners clearly multiplied the proceedings "unreasonably and vexatiously" and in bad faith.

## V.   CONCLUSION

DISH is clearly the prevailing party, and Dragon's and Freitas's conduct here – which "stands out from the others" under the *Octane Fitness* standard – have  made this case exceptional.  Based on the facts of this case, DISH respectfully requests that the Court award DISH its fees incurred in this lawsuit against Dragon and Freitas under § 285 jointly and severally or, in the alternative, against Dragon under § 285 and Freitas under § 1927.

---

[12]    This amount does not encompass costs and fees associated with DISH's IPR.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304
(650) 739-7510

Bradley Bowling
Ali Dhanani
Michael Sherby
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002
(713) 229-1234

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave. NW
Washington, DC  20004
(202) 639-7700

August 24, 2016

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)
Eleanor G. Tennyson (#5812)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
etennyson@mnat.com

*Attorneys for Defendant DISH Network L.L.C.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 24, 2016, upon the following in the manner indicated:

Timothy Devlin, Esquire                                    *VIA E-FILING AND*
DEVLIN LAW FIRM LLC                                 *ELECTRONIC MAIL*
1306 North Broom Street, First Floor
Wilmington, DE  19806
*Attorneys for Plaintiff*

FREITAS ANGELL & WEINBERG LLP              *BY HAND VIA PROCESS*
350 Marine Parkway, #200                               *SERVER*
Redwood City, CA  94065

Robert Freitas, Esquire                                      *BY HAND VIA PROCESS*
FREITAS ANGELL & WEINBERG LLP              *SERVER*
350 Marine Parkway, #200
Redwood City, CA 94065

Jason Angell, Esquire                                        *BY HAND VIA PROCESS*
FREITAS ANGELL & WEINBERG LLP              *SERVER*
350 Marine Parkway, #200
Redwood City, CA 94065

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)