**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DRAGON INTELLECTUAL PROPERTY, LLC, | |
| Plaintiff, | |
| v. | C. A. No. 13-2066-RGA |
| DISH NETWORK, LLC, | |
| Defendant. | |
| DRAGON INTELLECTUAL PROPERTY, LLC, | |
| Plaintiff, | |
| v. | C. A. No. 13-2067-RGA |
| SIRIUS XM RADIO INC., | |
| Defendant. | |

**OPPOSITION TO MOTIONS TO DECLARE THE CASE EXCEPTIONAL**
**PURSUANT TO 35 U.S.C. § 285**

Dated: June 7, 2021

FREITAS & WEINBERG LLP
Robert E. Freitas
303 Twin Dolphin Drive, Suite 600
Redwood Shores, CA 94065
Telephone: (650) 593-6300

# TABLE OF CONTENTS

**Page**

I.     THERE IS "NO LEGAL BASIS" FOR THE APPLICATION OF SECTION 285
       TO LAWYERS AND LAW FIRMS ................................................................ 1

       A.    No Court Has Ever Held Section 285 Applicable To Lawyers Or Law
             Firms ................................................................................................. 1

       B.    Fee Shifting Is Not Available Against Lawyers Absent An Explicit "Carve
             In." ..................................................................................................... 3

       C.    The History Of Section 285 Confirms That It Does Not Apply To Lawyers ........ 4

       D.    Octane Fitness Confirms That Section 285 Does Not Apply To Lawyers
             Or Law Firms .................................................................................... 5

       E.    DISH's Other Arguments Have No Substance .................................... 6

       F.    DISH's One-Sided "Policy" Arguments Present A Question For Congress ......... 7

II.    THE DISCLAIMER ARGUMENT IS FORECLOSED BY THE
       INVALIDATION OF DRAGON'S '444 PATENT ....................................... 10

III.   DISH FAILS TO SUBSTANTIATE ITS CLAIM OF AN INADEQUATE  PRE-
       FILING INVESTIGATION.......................................................................... 10

IV.    EACH OF DRAGON'S CLAIM CONSTRUCTION POSITIONS WAS SOUND
       AND AMPLY SUPPORTED ........................................................................ 11

       A.    "Broadcast Program Information" And "The Broadcast Program
             Information"...................................................................................... 11

       B.    The Failed "Inconsistency" Argument............................................... 12

             1.    Infringement Contentions ......................................................... 12

             2.    Acknowledging The Definite Article Does Not Create
                   "Inconsistency."................................................................... 13

             3.    DISH's Plainly Mistaken "Antecedent" Argument ................. 14

       C.    DISH's Reliance On AT&T's Non-Infringement Argument .............. 17

       D.    The "Record Key" And Beginning "A Recording."........................... 20

             1.    Claim Language: "A Recording," Not "Recording."............... 20

## TABLE OF CONTENTS
(continued)

**Page**

       2.      The Importation Dispute: "Basic Operation." ......................................... 21

       3.      Clarifying Amendment: The Three "Hows." ........................................... 25

V.     *MUNSINGWEAR* FORECLOSES THE RELIEF SOUGHT BY DISH ......................... 26

VI.    "HOW CAN YOU ARGUE THAT?" IPR ATTORNEY FEES ARE NOT RECOVERABLE UNDER SECTION 285 ...................................................................... 28

VII.   DISH'S PERSONAL ATTACKS ARE NOT SUFFICIENT ......................................... 29

VIII.  CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
   659 F.3d 1121 (Fed. Cir. 2011)..................................................................................23

*Advanced Video Technologies LLC v. HTC Corp.*,
   2015 U.S. Dist. LEXIS 122423 (S.D.N.Y. Aug. 28, 2015) ....................................2

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
   500 F.3d 1230 (11th Cir. 2007) ................................................................................3

*B.E. Technology, L.L.C. v. Facebook, Inc.*,
   940 F.3d 675 (Fed. Cir. 2019)..................................................................................27

*Bose Corp. v. JBL, Inc.*,
   274 F.3d 1354 (Fed. Cir. 2001)................................................................................14

*Brooks Furniture Mfg. Co. v. Dutailier Int'l, Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005)..................................................................................5

*Brown v. Borough of Chambersburg*,
   903 F.2d 274 (3d Cir. 1990)......................................................................................3

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
   532 U.S. 598 (2001)...................................................................................................1

*Camreta v. Greene*,
   563 U.S. 692 (2011)..................................................................................................27

*Cap Exp., LLC v. Zinus, Inc.*,
   2019 U.S. Dist. LEXIS 168073 (C.D. Cal. May 10, 2019) ....................................9

*Chaffin v. Braden*,
   No. CV 6:14-0027, 2016 WL 5372540 (S.D. Tex. Sept. 26, 2016) ......................29

*Cooper Indus. v. Aviall Servs.*,
   543 U.S. 157 (2004)....................................................................................................7

*In re Crescent City Estates, LLC*,
   588 F.3d 822 (4th Cir. 2009) ..............................................................................1, 3, 7

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*,
   246 F.3d 142 (2d Cir. 2001)......................................................................................3

*Digitech Image Technologies, LLC v. Newegg, Inc.*,
    2013 WL 5604283 (C.D. Cal. 2013)....................................................................29

*Dragon Intellectual Prop., LLC v. Dish Network LLC*,
    956 F.3d 1358 (Fed. Cir. 2020)..................................................................27, 28

*DSS Tech. Mgmt. v. Taiwan Semiconductor Mfg. Co.*,
    No. 2:14-CV-00199-RSP, 2016 U.S. Dist. LEXIS 141623
    (E.D. Tex. Oct. 12, 2016)..........................................................................22

*Eastway Construction Corp. v. City of New York*,
    821 F.2d 121 (2d Cir. 1987)........................................................................3

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006)...................................................................15

*Foster v. Mydas Assocs., Inc.*,
    943 F.2d 139 (1st Cir. 1991)......................................................................3

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)...................................................................26

*Gahagan v. U.S. Citizenship & Immigration Servs.*,
    911 F.3d 298 (5th Cir. 2018) .....................................................................3

*Gross v. FBL Fin. Servs.*,
    557 U.S. 167 (2009)................................................................................28

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)...................................................................15

*Healey v. Chelsea Res., Ltd.*,
    947 F.2d 611 (2d Cir. 1991).......................................................................3

*Heckethorn v. Sunan Corp.*,
    992 F.2d 240 (9th Cir. 1993) .....................................................................3

*In re Hyatt*,
    708 F.2d 712 (Fed. Cir. 1983)....................................................................14

*Hyde v. Midland Credit Mgmt., Inc.*,
    567 F.3d 1137 (9th Cir. 2009) ....................................................................4

*Interlink Elecs v. Incontrol Sols., Inc.*,
    1999 U.S. App. LEXIS 20072 (Fed. Cir. Aug. 24, 1999).........................................2

*Joao Control & Monitoring Sys., LLC v. Dig. Playground, Inc.*,
    2018 U.S. Dist. LEXIS 53405 (S.D.N.Y. Mar. 28, 2018) ......................................29

*Lumos Tech. Co., Ltd. v. JEDMED Instrument Co.*,
    2018 U.S. Dist. LEXIS 24238 (S.D.N.Y. Feb. 14, 2018) .........................................2

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
    520 F.3d 1367 (Fed. Cir. 2008) ...............................................................14

*United States v. Munsingwear*,
    340 U.S. 36 (1950) ...........................................................................26

*My Health, Inc. v. ALR Techs., Inc.*,
    2019 U.S. Dist. LEXIS 94700 (E.D. Tex. June 5, 2019) ..........................................2

*My Health, Inc. v. ALR Techs., Inc.*,
    2020 U.S. Dist. LEXIS 4172 (E.D. Tex. Jan. 10, 2020) ........................................2, 5

*National Cable Television Ass'n v. Am. Cinema Editors*,
    937 F.2d 1572 (Fed. Cir. 1991) ...............................................................7

*Netcraft Corp. v. eBay, Inc.*,
    549 F.3d 1394 (Fed. Cir. 2008) ..............................................................23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) .........................................................................4, 5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ...........................................................................7

*Pavelic & LeFlore v. Marvel Entertainment Group*,
    493 U.S. 120 (1989) ...........................................................................8

*Peer v. Liberty Life Assurance Co.*,
    992 F.3d 1258 (11th Cir. 2021) ...............................................................3

*Personalized User Model LLP v. Google Inc.*,
    2012 WL 295048 (D. Del. Jan. 25, 2012) .....................................................15

*Pfingston v. Ronan Eng'g Co.*,
    284 F.3d 999 (9th Cir. 2002) ..................................................................3

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1319-20 (Fed. Cir. 2005) ....................................................21

*Phonometrics, Inc. v. ITT Sheraton Corp.*,
    64 F. App'x 219 (Fed. Cir. 2003) .............................................................1

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) .............................................................1, 2

*Pirri v. Cheek*,
    2020 U.S. Dist. LEXIS 86865 ........................................................................7

*Pirri v. Cheek*,
    2021 U.S. App. LEXIS 8483 (Fed. Cir. 2021) ...............................................7

*Radware, Ltd. v. A10 Networks, Inc.*,
    2014 WL 2738538 (N.D. Cal. Jun. 11, 2014)................................................14

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003).....................................................................23

*Rates Tech. Inc. v. Broadvox Holding Co., LLC*,
    56 F. Supp. 3d 515 (S.D.N.Y. Oct. 7, 2014)..............................................2, 3

*Rice Services, Ltd. v. United States*,
    405 F.3d 1017 (Fed. Cir. 2005).....................................................................27

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980).........................................................................................1

*Sacco v. United States*,
    452 F.3d 1305 (Fed. Cir. 2006).......................................................................7

*Steinert v. Winn Grp., Inc.*,
    440 F.3d 1214 (10th Cir. 2006) .......................................................................3

*Stillman v. Edmund Scientific Co.*,
    522 F.2d 798, 800 (4th Cir. 1975) ...................................................................2

*Tarkus Imaging, Inc. v. Adobe Systems, Inc.*,
    2012 WL 2175788 (D. Del. Jun. 14, 2012) ...................................................15

*Tech. Props. Ltd. LLC v. Canon Inc.*,
    2017 U.S. Dist. LEXIS 144204 (N.D. Cal. Jan. 26, 2017) .............................2

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
    955 F.3d 453 (5th Cir. 2020) ...........................................................................3

*Thryv, Inc. v. Click-To-Call-Techs., L.P.*,
    140 S. Ct. 1367 (2020).....................................................................................6

*United Video Properties, Inc. v. Amazon.com, Inc.*,
    2012 WL 2370318 (D. Del. Jun. 22, 2012) ...................................................15

*Verizon Services Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)................................................................24, 26

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008)...............................................................................23

*Wilder v. GL Bus Lines*,
  258 F.3d 126 (2d Cir. 2001)......................................................................................7

*Yodlee, Inc. v. Plaid Techs., Inc.*,
  2016 WL 204372 (D. Del. Jan. 15, 2016)................................................................15

**Federal Statutes**

28 U.S.C. § 1447(c) .......................................................................................................6

28 U.S.C. § 1927...................................................................................................2, 7, 8

35 U.S.C. § 70...............................................................................................................4

35 U.S.C. § 285................................................................................................. *passim*

**Other Authorities**

Federal Rule of Appellate Procedure 38 ...................................................................6, 7

Manual of Patent Examining Procedure § 2173.05(e) (8th ed. Rev. 2, May 2004)....................15

S. Rep. No. 1979, 82nd Cong., 2d Sess. (1952).............................................................5

The only thing "exceptional" about this case is the five-year pursuit by DISH Network L.L.C. ("DISH"), joined by Sirius XM Radio Inc. ("Sirius"), of claims against lawyers for which there is "no legal basis." Lawyers and law firms are not subject to section 285, as every court that has ever considered the issue has concluded. As shown by the expert testimony presented by Dragon Intellectual Property, LLC ("Dragon") and its former lawyers in 2016 and not challenged then or since, there is no basis for a claim that any position taken by Dragon was not properly supported in law and fact.

## I.      THERE IS "NO LEGAL BASIS" FOR THE APPLICATION OF SECTION 285 TO LAWYERS AND LAW FIRMS.

### A.      No Court Has Ever Held Section 285 Applicable To Lawyers Or Law Firms.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761-62 (1980), illustrates the presumption that when a fee shifting statute does not expressly provide for an award against lawyers, it does not apply to lawyers. *See also, e.g., In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009). Requiring a "carve in" is consistent with the normal operation of the "American Rule." As the Supreme Court explained in *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608 (2001), "attorney's fees will not be awarded absent 'explicit statutory authority.'" Section 285 does not mention lawyers or law firms, and every case that has ever considered the issue has concluded that section 285 does not authorize fee shifting against lawyers or law firms.

In *Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 F. App'x 219, 222 (Fed. Cir. 2003), the Federal Circuit saw "no legal basis for entering a fee award against the losing party's attorney under § 285." *Phonometrics v. ITT Sheraton* is a non-precedential opinion, but it was followed by a precedential opinion in the same group of cases. In *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242 (Fed. Cir. 2003), the court of appeals noted that, unlike the district court in

*Phonometrics v. ITT Sheraton Corp.*, "the district court clearly specified that Phonometrics 'is responsible for [the awarded] fees and costs pursuant to 35 U.S.C. § 285 [and its] counsel is responsible for [the awarded] fees and costs pursuant to 28 U.S.C. § 1927.'" *Phonometrics v. Westin Hotel Co.*, 350 F.3d at 1249 n.9. The fee award was therefore affirmed, contrary to the result in *Phonometrics v. ITT Sheraton Corp.*, where counsel was wrongly held liable under section 285. *See also Interlink Elecs v. Incontrol Sols., Inc.*, 1999 U.S. App. LEXIS 20072, at *6-7 (Fed. Cir. Aug. 24, 1999) ("[S]ection 285 imposes costs on a party, not an attorney.") (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (section 285 requires "the party acting exceptionally to bear the expenses of the opposing party")).

Before the Federal Circuit was created, the Fourth Circuit concluded that section 285 does not apply to lawyers, *see Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 800 (4th Cir. 1975), and all of the district courts that have considered the issue have reached the same conclusion. *See, e.g., My Health, Inc. v. ALR Techs., Inc.*, 2019 U.S. Dist. LEXIS 94700, at *7 (E.D. Tex. June 5, 2019) ("Defendants provide no legal basis for a fee award against My Health's counsel under § 285. Indeed, the Federal Circuit has declined to find counsel liable for fees awarded under § 285.") (citing *Phonometrics*, 64 F. App'x at 222), *adopted by district judge*, 2020 U.S. Dist. LEXIS 4172, at *16 (E.D. Tex. Jan. 10, 2020); *Lumos Tech. Co., Ltd. v. JEDMED Instrument Co.*, 2018 U.S. Dist. LEXIS 24238, at *4 (S.D.N.Y. Feb. 14, 2018) ("There does not appear to be any legal basis for entering a fee award against the losing party's attorney under § 285."); *Tech. Props. Ltd. LLC v. Canon Inc.*, 2017 U.S. Dist. LEXIS 144204, at *16 (N.D. Cal. Jan. 26, 2017); *Advanced Video Technologies LLC v. HTC Corp.*, 2015 U.S. Dist. LEXIS 122423, at *19 (S.D.N.Y. Aug. 28, 2015); *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 56 F. Supp. 3d 515, 526 (S.D.N.Y. Oct. 7, 2014) ("no legal basis [exists under section 285]

for entering a fee award against the losing party's attorney.") (quoting *Phonometrics*, 64 Fed. App'x at 222).

### B. Fee Shifting Is Not Available Against Lawyers Absent An Explicit "Carve In."

Federal courts have long presumed that "when a fee-shifting statute does not explicitly permit a fee award against counsel, it prohibits it. In short, silence does not equal consent." *Crescent City Estates*, 588 F.3d at 825. *See, e.g., Peer v. Liberty Life Assurance Co.*, 992 F.3d 1258, 1263 (11th Cir. 2021) (quoting *Crescent City Estates*, 588 F.3d at 825); *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 462 (5th Cir. 2020); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007); *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005-06 (9th Cir. 2002); *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001); *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993); *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991); *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 142 (1st Cir. 1991); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276-77 (3d Cir. 1990); *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 123-24 (2d Cir. 1987); *Rates Tech.*, 56 F. Supp. 3d at 526. "These cases firmly support the presumption that fee-shifting statutes shift fees only to parties unless they expressly state otherwise. . . . [P]resumptively, when a fee-shifting statute is silent about who pays attorneys' fees parties – not attorneys – are accountable. The presumption is widely held." *Crescent City Estates*, 588 F.3d at 825 (citing *Roadway Express*, 447 U.S. at 758 n.5).

There is no reason why section 285 would be uniquely interpreted or applied in a manner that departs from the rule consistently applied to other statutes. *See Tejero*, 955 F.3d at 462; *Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 303 (5th Cir. 2018) ("The

Supreme Court has repeatedly instructed us to apply consistent interpretations to federal fee-shifting statutes."); *Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1140-41 (9th Cir. 2009)). A consistent approach has been directed by the Supreme Court.

 **C. The History Of Section 285 Confirms That It Does Not Apply To Lawyers.**

 The attorneys' fees language now found in section 285 was originally a part of 35 U.S.C. section 70. *See* Patent Act of August 1, 1946, § 1, 60 Stat. 778 (codified at 35 U.S.C. § 70) (1946 ed.). Before section 70 was enacted in 1946, the remedies available for patent infringement did not include an award of attorneys' fees.

 Section 70 provided that "upon a Judgment being rendered in any case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor, together with such costs, and interest, as may be fixed by the court." The statute also provided that "[t]he court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of Judgment on any patent case." *See id*. Appearing as it did in a statute providing for the recovery of damages for infringement, the attorney's fees and cost remedies set forth in section 70 were plainly not available against lawyers.

 The attorneys' fees language of section 70 was interpreted in a manner that limited recovery to special situations warranting an award of attorneys' fees. *See generally Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548-49 (2014). When the Patent Act was adopted in 1952, the attorneys' fees language taken from section 70 was amended in a manner consistent with the case law by adding the reference to "exceptional cases," and codified in a new section 285.

 The 1952 Reviser's Note for section 285 states that "[t]his section is substantially the same as corresponding provision in R.S. 4921," showing that no change in the reach of section

70 was intended when section 285 was adopted. S. Rep. No. 1979, 82nd Cong., 2d Sess. (1952), reprinted in 1952 U.S. Code Cong. & Ad. News 2394, 4223. *See also Octane Fitness*, 572 U.S. at 549. Congress has taken no action to expand the reach of section 285 in the 70 years since its enactment.

### D.     *Octane Fitness* Confirms That Section 285 Does Not Apply To Lawyers Or Law Firms.

DISH attempts to fashion an argument that *Octane Fitness* supports the application of section 285 to lawyers. No issue about who is subject to section 285 was presented in *Octane Fitness*, as the moving party did not attempt to apply the statute to counsel. DISH's argument is not supported by anything the Supreme Court said, and it is at odds with the established "carve in" presumption followed by the federal courts.

*Octane Fitness* considered whether the "exceptionality" standard adopted by the Federal Circuit in *Brooks Furniture Mfg. Co. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), was "consistent with the statutory text." *Octane Fitness*, 572 U.S. at 548. *Octane Fitness* did not consider "who" is subject to section 285. The Supreme Court stated that section 285 imposes "one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Id*. at 553. The Court then concluded that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 554.

DISH attempts to distort the Court's reference to "one constraint" in a manner no court has,[1] by arguing that there is no "constraint" in the statute forbidding the imposition of liability

---

[1] Only one other litigant has attempted the argument made by DISH. The argument was rejected. *My Health, Inc. v. ALR Techs., Inc.*, 2020 U.S. Dist. LEXIS 4172, at *7-10 (E.D. Tex. Jan. 10,

on lawyers. The Supreme Court's opinion cannot reasonably be read as DISH attempts to read it.

The law has never required the demonstration of a "constraint" forbidding lawyer liability. The question is whether there is explicit language imposing liability. *Octane Fitness* did not *sub silentio* disrupt the application of the *Roadway Express* principle that has been consistently followed. The Supreme Court does "not so lightly treat [its] determinations . . . as overruling others *sub silentio*," *Thryv, Inc. v. Click-To-Call-Techs., L.P.*, 140 S. Ct. 1367, 1376 n.6 (2020), and neither does the Court overturn a unanimous approach of the courts of appeals without saying so.

DISH's argument would turn the judicial system upside down. If a "constraint" against lawyer liability were required, lawyers would be liable for ordinary costs under Rule 54(d), and who knows what else. *Octane Fitness* does not support the idea that a "carve out" of lawyers is required. The presumption requiring a "carve in" was not in issue in *Octane Fitness*, and the presumption was not disturbed by the Supreme Court's consideration of other issues.

### E.   DISH's Other Arguments Have No Substance.

DISH and Sirius claim there is a "split" that is relevant to their motions, but that is not true. To show a "split," DISH cites statutes or rules that explicitly allow fee shifting against lawyers, *i.e.*, cases with demonstrable "carve ins," and a series of cases that reject lawyer liability under various statutes. The only "split" that is mentioned in the cited cases is the pre-*Crescent City Estates* split regarding 28 U.S.C. section 1447(c), a bankruptcy removal statute. *Crescent City Estates* was decided in 2009. DISH and Sirius do not cite any cases that repudiate or challenge *Crescent City Estates*, or even resolve a dispute about section 1447(c) in a manner that

2020).

might support a conclusion that section 285 applies to lawyers.[2]

DISH also tries to make something of *Pirri v. Cheek*, 2021 U.S. App. LEXIS 8483 (Fed. Cir. 2021), a recent non-precedential case in which the Federal Circuit affirmed a section 285 award against a lawyer. The lawyer who was the subject of the section 285 motion in *Pirri* did not argue that section 285 is inapplicable to him and the Federal Circuit did not consider the question.[3] Even a precedential opinion that does not specifically address an issue is not authority on the issue. *See, e.g., Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 170 (2004); *Sacco v. United States*, 452 F.3d 1305, 1308 n.10 (Fed. Cir. 2006) (noting "longstanding rule that if a decision does not 'squarely address[ ][an] issue,' a court remains 'free to address the issue on the merits' in a subsequent case") (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993)); *National Cable Television Ass'n v. Am. Cinema Editors*, 937 F.2d 1572, 1581 (Fed. Cir. 1991). There remains "no legal basis" for the application of section 285 to lawyers and law firms.

### F.    DISH's One-Sided "Policy" Arguments Present A Question For Congress.

Unable to cite genuine authority supporting the application of section 285 to lawyers or law firms, DISH seeks a "policy"-based disregard of the established law. The simple response is

---

[2] DISH and Sirius argue that because Federal Rule of Appellate Procedure 38 has been held to apply to lawyers, the presumption consistently followed under fee shifting statutes should not be followed. This argument was rejected by the Fourth Circuit in *Crescent City Estates*. 588 F.3d at 829, n.*, and DISH and Sirius do not offer a retort to *Crescent City Estates*.

The Rule 38 argument has no apparent limits. For example, it too would appear to make lawyers subject to liability for ordinary costs under Rule 54(d), an obviously incorrect outcome, *see Wilder v. GL Bus Lines*, 258 F.3d 126, 129-30 (2d Cir. 2001), and require that established "carve in" presumption be ignored.

[3] The motion filed in *Pirri* asserted multiple bases for recovery against the lawyer. The district court relied only on section 285. Defeating the application of section 285 was not a path to success because the lawyer faced section 1927 and "inherent power" theories that had to be defended on the merits. The lawyer did not contest the applicability of section 285. *See Pirri v. Cheek*, 2020 U.S. Dist. LEXIS 86865, at *29, 38-40 (S.D.N.Y. May 18, 2020.

that Congress has not seen fit to subject lawyers to liability under section 285. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 193 (2015) ("Congress gets to make policy, not the courts."). That is enough, but that is not all.

The remedies that are available against lawyers in a proper case are extensive. Most of the potentially available remedies were indiscriminately asserted by DISH or other defendants in this case, but all were rejected by Judge Andrews.

Lawyers or law firms, or both, are potentially liable for attorneys' fees under Rule 11, 28 U.S.C. section 1927, and, in extreme cases, the court's "inherent power." Amendments to the rules allowing or forbidding lawyer liability have been adopted in response to Supreme Court decisions. Section 1927 was amended in response to the Supreme Court's interpretation of "costs" in *Roadway Express*, and Rule 11 was amended after the Supreme Court held in *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989), that the prior version of the rule did not allow sanctions to be imposed against the law firm of a lawyer who signed a pleading in violation of Rule 11.

DISH and Sirius wrongly claim that this case involves an inadequate pre-filing investigation. The pursuit of a lawsuit without "an inquiry reasonable under the circumstances" is squarely within Rule 11(b), and Rule 11(c)(1) specifies that remedies for violations of the rule are available against "any attorney, law firm, or party that violated the rule or is responsible for the violation." Section 1927 does not cover presuit activity, but it allows recovery against a lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously." "Inherent power" sanctions are reserved for the most extreme instances of improper conduct where it can be proved that a lawyer or party has strayed dramatically from the proper path. DISH and Sirius do not identify any situations in which conduct of the type they wrongly claim to be present here

could not be challenged under one or more existing theories

DISH claims there is a problem associated with impecunious plaintiffs in patent cases. The actions of lawyers who engage in improper conduct can be remedied under Rule 11 and otherwise, regardless of whether their clients are large and powerful, Davids fighting Goliaths, or scoundrels of any size or economic position engaged in abuse of the corporate form. Rule 11 and the other remedies available to address abuse do not impose a financial test. Lawyers are always responsible for their wrongful conduct, but Congress has never decided to make them responsible for what their clients do when the lawyers' actions fall outside of the carefully structured existing rules.

Delaware and other jurisdictions have always had rules allowing owners to be held responsible when there is abuse of the corporate form. Congress has never decided that there is something special about patent law, or other types of litigation, that justifies the adoption of a completely new system whereby lawyers are all of a sudden accountable for their clients' financial condition, or the responsibility with which clients have exercised the corporate form. Even Judge Gilstrap's *Iris Connex* opinion, which proposes a special-purpose version of the equitable alter ego doctrine, describes a remedy for disregard or abuse of corporate formalities against those "who would otherwise be shielded from liability due to corporate forms and entity structures," not their lawyers. *See Cap Exp., LLC v. Zinus, Inc.*, 2019 U.S. Dist. LEXIS 168073, at *3-4 (C.D. Cal. May 10, 2019). The existing Delaware law and that of other states already covers those "who would otherwise be shielded." There is no basis on which a judge might create a rule that would make a lawyer responsible for a client's abuse of the corporate form.

Statutes are interpreted as they are written, and they are not rewritten by courts on the basis of the biased views of litigants. If DISH or Sirius thinks section 285 should be applied to

lawyers, and perceives a convincing basis for modifying the existing remedial structure, it should consider asking Congress for a change in the law. That objective cannot be accomplished here.

## II.  THE DISCLAIMER ARGUMENT IS FORECLOSED BY THE INVALIDATION OF DRAGON'S '444 PATENT.

Dragon's brief demonstrates that the disclaimer finding on which the DISH and Sirius motions are based is inconsistent with the decision by the Patent Trial and Appeal Board holding the '444 patent invalid over a combination of "continuous recording devices," and that, in any event, Dragon's position that "continuous recording devices" can fall within the scope of the '444 patent cannot fairly be portrayed as unreasonable. FAW and Mr. Freitas join the Dragon brief.

## III.  DISH FAILS TO SUBSTANTIATE ITS CLAIM OF AN INADEQUATE PRE-FILING INVESTIGATION.

Although it did not file a Rule 11 motion, DISH and Sirius now claim that Dragon did not conduct an "adequate pre-filing investigation." The notion of an "inadequate pre-suit investigation" is a staple of attacks on patent owners in fee-shifting motions. DISH and Sirius offer nothing to substantiate their rote pre-filing investigation argument. They simply recast Dragon's disagreement with them as a failure to investigate.

Genuine proof of an inadequate investigation requires evidence that something material was not discovered before an allegation was made, but should have been discovered. DISH's pursuit of this motion contains several examples of that type of conduct. For example, Sirius claimed that "Freitas," a defined term it used to refer to two lawyers and a law firm, "certainly" signed Dragon's complaint. *See* C.A. 13-2067, D.I. 140 at 17. *See also* C.A. 13-2066, D.I. 131 at 25 (DISH). A proper pre-filing review of Dragon's complaint would have shown this did not happen. *See* D.I. 1. DISH also claimed that Mr. Freitas filed a prior lawsuit in which a section 285 finding was made. *See* DISH Br. 21 n.10, 30. A proper pre-filing investigation would have

shown that Mr. Freitas appeared late in the proceedings, after the conduct on which the Court

relied in its exceptional case order had occurred. *See id*. at Exs. LL, MM.[4] False claims like these

are the hallmark a failure to investigate.

DISH and Sirius point to nothing revealed during the *Dragon* cases that was not known

before Dragon filed suit.[5] They do not demonstrate that Dragon was unaware of something that a

better or different investigation would have revealed.

## IV.    EACH OF DRAGON'S CLAIM CONSTRUCTION POSITIONS WAS SOUND AND AMPLY SUPPORTED.

The DISH and Sirius motions attempt to create the impression that Dragon was broadly

unreasonable in the positions it took by including various attacks on arguments that were rejected

in the claim construction order. Although the claim construction order has been vacated, DISH

and Sirius simply point to Judge Andrews's order, and assume that what was said in an order that

has no force or effect is sufficient to prove the case exceptional.

Each of the arguments now made by DISH and Sirius was clearly refuted in the

oppositions to the Rule 11 motions and the DISH and Sirius section 285 motions five years ago.

Dragon presented expert testimony supporting each of its positions, and the expert testimony

remains unchallenged.

### A.    "Broadcast Program Information" And "The Broadcast Program Information"

DISH and Sirius say that Dragon offered inconsistent constructions for the "same" claim

language. Their actual argument is that Dragon acted "inconsistently" when it gave *different*

---

[4] *See* Declaration of Robert E. Freitas ¶ 25.

[5] DISH and Sirius again point out that Dragon unremarkably objected to producing or describing pre-suit investigation materials on the basis of the attorney-client privilege and the work product doctrine. DISH Br. at 13 n.7. Recognizing the appropriateness of Dragon's objections, neither defendant filed a motion to compel.

claim language constructions that appropriately reflected the slight, but significant, difference between them. The common aspect of the claim language was given an identical construction.

DISH and Sirius suggest inconsistency in the interpretations Dragon offered for two parts of Claim 1 of the '444 patent, "*broadcast program information*," and "*the broadcast program information*." The phrase "*broadcast program information*" appears in two places, once in the preamble, and once in the last element of Claim 1, where it is preceded by the definite article. The full term "*the broadcast program information*" appears only once in Claim 1.

Dragon argued that "broadcast program information" required no construction, or alternatively, that it should be construed as "program information that is broadcast." *See* C.A. 12-2061, D.I. 77 at 19. Dragon gave one, and only one, construction to the phrase "*broadcast program information*," wherever it appears, and it applied the construction consistently.

When Judge Andrews suggested in the claim construction order that Dragon gave different meanings to the term, he did not cite any instance of Dragon doing so. *See* C.A. 12-2061, D.I. 110 at 6. DISH and Sirius also do not cite inconsistent meanings. The "inconsistency" charge was false when it was made, and it has been refuted.

### B.    The Failed "Inconsistency" Argument.

#### 1.    Infringement Contentions.

DISH and Sirius point to Dragon's infringement contentions, which did not contain claim constructions, and were not cited by Judge Andrews (or the other defendants) in support of an "inconsistency" argument. Dragon's infringement contentions did not define "broadcast program information." Dragon noted that "the broadcast program information" is the information that is stored after the record key is actuated, rather than any information that had been played or recorded before that time. Dragon called the information that is stored when the record key is actuated "the information of interest" in Claim 1, as it plainly is. "The broadcast program

information" is "the information of interest" in the context of Claim 1 because it is the information that is "stored," "retrieved," and "played back," fulfilling the purpose of the invention of the '444 Patent. Dragon's explanatory reference in its infringement contentions was not a claim construction, and only DISH and Sirius have ever suggested that it was.

### 2.   Acknowledging The Definite Article Does Not Create "Inconsistency."

The second attempt to demonstrate inconsistent constructions of the same claim language is based on Dragon's recognition of the use of the definite article in the claim language. The defendants argue that by defining "*broadcast program information*" as "program information that is broadcast," and arguing that "*the broadcast program information*," as it is used in the body of Claim 1, refers to specific "program information that is broadcast," Dragon impermissibly and unreasonably offered "inconsistent" meanings for the same term. There is no sense in which this contention is even arguably true, and there is nothing unreasonable or exceptional about the arguments Dragon actually made.

"A definite article indicates that its noun is a particular one which is identifiable to the listener. It may be something that the speaker has already mentioned, or it may be something uniquely specified. The definite article in English, for both singular and plural nouns, is the." Article (grammar), www.en.wikipedia.org/wiki/Article_(grammar). *See also* Definition of "the", www.dictionary.com/browse/the ("used, especially before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an"). The "specifying or particularizing effect" of the definite article in the phrase "the broadcast program information" is to refer to "specific" or "particular" broadcast program information, to wit, the broadcast program information whose storage is initiated after actuation of the record key. That "broadcast program information," and no other, is "the broadcast program information," and there is nothing wrong or "inconsistent" in saying so.

Dragon's construction was sound, and the notion that by reading the claim "in accordance with the precepts of English grammar," as it "must," *see In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983), Dragon engaged in "exceptional" conduct defies the imagination. Dr. Goldberg explained five years ago that "the broadcast program information" refers to specific "broadcast program information," as one would conclude through the application of ordinary English grammar. *See* Goldberg Rule 11 Decl. (Ex. S) ¶¶ 28-31. There was no inconsistency, nothing unreasonable about reading the claim as it was written.

### 3.    DISH's Plainly Mistaken "Antecedent" Argument.

Attempting to avoid a proper construction of "*the broadcast program information*," the defendants argued that the phrase could not be given a meaning that acknowledged the use of the definite article. That strange argument was made because the only place "*broadcast program information*" appeared before the use of "*the broadcast program information*" was in the preamble, and the defendants claimed it was therefore necessary to construe "*the broadcast program information*" in a way that pointed to the preamble. Without "*broadcast program information*" as a reference point, the defendants said, "*the broadcast program information*" would lack an "antecedent," and Claim 1 would be "indefinite."

"Lack of antecedent basis generally occurs when a claim first refers to an element using the words 'the' or 'said,' with no earlier recitation of the claimed element." *Radware, Ltd. v. A10 Networks, Inc.*, 2014 WL 2738538, at *8 (N.D. Cal. Jun. 11, 2014) (citing MPEP § 2173.05(e) (9th ed. Mar. 2014)). But "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite. If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite." *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001) (quoting  MPEP § 2173.05(e) (6th ed. Rev.1, Sept. 1995)).

-14-

*See also Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (relying on "the well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"); *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1369 (Fed. Cir. 2006) ("When the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of "antecedent basis."). *See* MPEP § 2173.05(e) (8th ed. Rev. 2, May 2004) ("Obviously, however, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite.").  A term can be indefinite if it "does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable," but that is not inevitably the case when an explicit antecedent is not present. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (citing *Energizer Holdings*, 435 F.3d at 1370–71). Moreover, as the *Energizer Holdings* court noted, "an antecedent basis can be present by implication." *Id*. at 1371 (quoting *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987)). *See also Personalized User Model LLP v. Google Inc.*, 2012 WL 295048, at *26 (D. Del. Jan. 25, 2012).

Many courts have recognized the principle that the absence of an antecedent basis for a term is not invariably fatal. Chief Judge Stark has observed that "[a] failure to provide antecedent basis does not necessarily render a claim indefinite." *Yodlee, Inc. v. Plaid Techs., Inc.*, 2016 WL 204372, at *12 (D. Del. Jan. 15, 2016) (citing *Energizer Holdings*, 435 F.3d at 1370).  *See also United Video Properties, Inc. v. Amazon.com, Inc.*, 2012 WL 2370318, at *15 (D. Del. Jun. 22, 2012) ("Amazon is correct that the term 'interactive program guide' does not explicitly appear in parent Claim 19, but Claim 27 is not thereby rendered indefinite because it still has a 'reasonably ascertainable meaning.'") (citing *Energizer Holdings*, 435 F.3d at 1370–71); *Tarkus Imaging,*

*Inc. v. Adobe Systems, Inc.*, 2012 WL 2175788, at *5 (D. Del. Jun. 14, 2012) ("An express antecedent basis is not required to render a claim definite.") (citing *Microprocessor Enhancement Corp.*, 520 F.3d at 1376).

DISH and Sirius do not attempt to prove that the alleged absence of an antecedent would leave one of ordinary skill "unable to discern the boundaries of the claim," relying instead on a conclusory *non sequitur* that an antecedent for "*broadcast program information*" is missing unless "*the broadcast program information*" is construed to refer to the use of "*broadcast program information*" in the preamble. Judge Andrews did not say, and it cannot be said, that Claim 1 could not be understood if the words in the preamble were not taken as an antecedent, and he did not provide analysis of the type he made in *United Video Properties*, or provide any analysis of why the standard set out by the Federal Circuit in *Energizer Holdings*, *Halliburton*, *Microprocessor Enhancement*, and other cases was met or not met.

There is no problem understanding Claim 1. *See* Ex. S ¶ 25. This is what it provides:

"substantially simultaneous recording and playback" is to occur.

"program information" is *what* will be "substantially simultaneously record[ed]and play[ed] back."

"substantially simultaneous recording and playback" will be achieved *when* the "record key is first actuated to begin a recording by initiating storage of the broadcast programinformation" in the memory unit, and

the "playback key is subsequently actuated to begin time delay playback of therecording from the beginning thereof"

"by initiating retrieval of the stored program information in said memory unit."

Thus,

> said control circuit being configured so that substantially simultaneous recording and playback of program information is achieved when said record key is first actuated to begin a recording by initiating storage of the broadcast program information in said memory unit, and said playback key is subsequently actuated to begin time delay playback of the recording from the beginning thereof by initiating retrieval of the stored program information in said memory unit

There is no doubt about what is described by the reference to "the broadcast program information." Substantially simultaneous recording and playback of "program information" is achieved when "the program information," described as "the broadcast program information," is first "stored" and then "retrieved." "A recording" of "the broadcast program information" is begun by initiating storage of "the broadcast program information," and, after "the recording" is completed, retrieval of "the recording" is initiated and playback occurs. As Dr. Goldberg explained five years ago, a person having ordinary skill in the art would understand that "the broadcast program information" is what is stored, retrieved, and substantially simultaneously recorded and played back.  Where is the counter to Dr. Goldberg? The point of the invention of Claim 1 is to accomplish "substantially simultaneous recording and playback," so the same thing would have to be "recorded" and "played back."

### C.    DISH's Reliance On AT&T's Non-Infringement Argument.

The construction of "broadcast program information" ultimately adopted in the claim construction order included a restrictive interpretation of the word "broadcast" advocated only by AT&T. *See* C.A. 12-2061, D.I. 110 at 4 (construction: "programming information transmitted to all users"). This was a disguised non-infringement argument based on specific features of the AT&T accused products. No one joined AT&T, but DISH and Sirius attempt to use a comment made by Judge Andrews during the claim construction hearing to make Dragon's disagreement with a construction DISH and Sirius did not offer evidence of exceptionality.

-17-

To serve its infringement position, AT&T claimed that "broadcast" requires that the broadcast information be "transmitted to all users." That is inconsistent with the plain meaning of the term.  *See* www.dictionary.com/browse/broadcast?s=t ("verb (used with object), broadcast or broadcasted, broadcasting. 1. to transmit (programs) froma radio or television station.") ("noun 9. something that is broadcast.") ("adjective 14. (of programs) transmitted from a radio or television station."). AT&T's only support for its restrictive construction was a purported technical dictionary definition. AT&T supplied the dictionary, but it did not present any foundational expert testimony supporting its use.

Judge Andrews "[found] as a fact" that the dictionary cited by AT&T provided the meaning of "broadcast" applicable to the '444 patent. But  AT&T did not present evidence that "broadcast" is a term of art, or otherwise has a special technical meaning that would be understood and applied by those having ordinary skill in the art. AT&T did not even offer any evidence supporting the idea that the dictionary it cited is relevant to the field of the invention of the '444 patent.

That was five years ago. It is now undisputed that the dictionary cited by AT&T has nothing at all to do with the field of the invention. Dr. Goldberg explained in his original declaration that a person having ordinary skill in the art would not rely on the AT&T dictionary because it addresses a completely different type of technology, and that resort to AT&T's dictionary was not necessary to interpret "broadcast program information."  *See* Ex. S. ¶¶ 19-25. "Broadcast" cannot be limited in the manner argued by AT&T. *See id*.

So why do DISH and Sirius make this argument? When AT&T's narrow construction of broadcast was advocated, Mr. Freitas explained that it is not necessary for a "broadcast" to be

"transmitted to all users" to be a "broadcast." He used an example of a sporting telecast not sent to or seen by "all users," as in what is often called a "closed circuit broadcast." Ex. E at A0646-A0650. "Closed circuit broadcast" is not an oxymoron.  *See, e.g.*, http://www.bloodyelbow.com2012/8/10/3233243/new-light-shed-on-closed-circuit-ufc-broadcasts-at-bars ("New Light Shed On Closed Circuit UFC Broadcasts at Bars"); http://eric.ed.gov/?id=ED016399 ("A CLOSED-CIRCUIT DATA BROADCAST SYSTEM"); https://store.maxishare.com/closed-circuit-broadcast-rights--500001-p116.aspx (offer of "Closed Circuit Broadcast Rights"); https://en.wikipedia.org/wiki/Broadcasting_of_sports_events ("(the first actual broadcast was on closed-circuit in Maple Leaf Gardens in Spring 1952").

Mr. Freitas used a reference to his favorite football team to make the point, and Judge Andrews asked whether closed circuit technology was known at the time of the application that led to the '444 patent was filed. Ex. E at A0670. It was, of course, known long before the early 1990s.  Later in the argument, Mr. Freitas pointed out that closed circuit technology was not only known, but that "pay per view custom programming systems" were mentioned in the specification.  *Id*. at A0670. *See* '444 patent at 1:25. The '444 patent states that VCRs were commonly used to store "broadcast information" from "all" of the sources listed, including closed circuit "pay per view" systems.  *See id*. at 1:26-36.

DISH quotes Judge Andrews as stating AT&T had a "technical dictionary," while Dragon had nothing more than an "Oregon Ducks story," but neither is quite accurate. Dragon showed the Court that pay per view programming, inherently not "transmitted to all users," was known when the application that led to the '444 patent was filed, as it had been since at least the late 1950s. *See* http://www.espn.com/sports/boxing/news/story?id=2606226. Closed circuit pay per view systems were identified in the patent as a source of "broadcast information."  And what

AT&T tried to pass off as a "technical dictionary" was not a relevant one, as Dr. Goldberg's still unchallenged testimony from 2016 established.

There is no basis for any suggestion that Dragon's reliance on the ordinary meaning of "broadcast," with support in the specification, was exceptional.

### D.     The "Record Key" And Beginning "A Recording."

DISH and Sirius also mention the construction of the term "record key." They make another attempt to fault Dragon for reading the claim language as it is written.

#### 1.     Claim Language: "A Recording," Not "Recording."

The "record key" limitation appears, in relevant part, in the last element of Claim 1:

> . . . substantially simultaneous recording and playback of program information is achieved when said **record key** is first actuated **to begin a recording** by initiating storage of the broadcast program information in said memory unit, and said playback key is subsequently and solely actuated to begin time delay playback **of the recording** from the beginning thereof by initiating retrieval of **the stored program information** in said memory unit . . . .

'444 patent at 8:52-61 (emphasis added). There should be no disagreement that, when the record key is actuated, "*a recording*" is begun. "Recording," as used in "*a recording*," is a noun. The claim does not say that "*recording*," a verb, begins when the record key is actuated, and it does not say that "*the recording process*" begins.

The use of the noun form in the claim language is confirmed by the later explanation that, when the playback key is actuated, playback of "*the recording*" is begun. "*A recording*" is initiated, and "*the recording*" is eventually played back. These are clearly noun forms.

Dragon proposed that "record key" be construed as "a key that, when actuated, signals the control circuit to initiate storage of program information in the memory unit." C.A. 12-2061, D.I. 77 at 48.  Claim 1 states that actuation of the record key "initiat[es] storage of the broadcast

program information." The specification confirms this. *See* '444 patent at 5:24-25 ("Control circuit 14 initiates storing *information present on input 22* in *a recording* within memory unit 12.") (emphasis added). By specifying that it is information that is then "present on input 22" whose storage is initiated, the specification also confirms that "the broadcast program information" is information that is present after, not before, the record key is actuated.

Judge Andrews disagreed with Dragon's construction, construing the term as "key that, when actuated, begins the recording process." C.A. 12-2061, D.I. 110 at 10. He did so as a part of the implementation of the disclaimer of "continuous recording devices." But the claim says the record key is actuated "*to begin a recording*," not "*to begin the recording process*." The claim construction order thus changed a noun structure to a verb structure. But assume Judge Andrews was correct in the vacated order. How could Dragon's reliance on the actual words and structure of the claim be unreasonable?

### 2.     The Importation Dispute: "Basic Operation."

In the claim construction order, Judge Andrews also relied on the fact that there is a mention in the specification of "basic operation" of the invention that includes the recording device being "off." *See* '444 patent at 5:20-22. That mention did not justify disregard of the noun structure used in Claim 1. Nor did it create a situation in which Dragon's reliance on one of the fundamental rules of claim construction became unreasonable.

Dragon argued that reliance on the passage in the specification to justify changing "a recording" to "the recording process" would represent a "cardinal sin" in the form of importation of a limitation from the specification. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1319-20 (Fed. Cir. 2005). Importation disputes occur in most patent cases, and a dispute about whether improper importation is present is not a likely candidate for an exceptionality finding. "[T]he distinction between using the specification to interpret the meaning of a claim and importing

limitations from the specification into the claim can be a difficult one to apply in practice." *Id.* at

1323 (quoting *Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed. Cir. 1998)

("there is sometimes a fine line between reading a claim in light of the specification, and reading

a limitation into the claim from the specification")). *See DSS Tech. Mgmt. v. Taiwan*

*Semiconductor Mfg. Co.*, No. 2:14-CV-00199-RSP, 2016 U.S. Dist. LEXIS 141623, at *7 (E.D.

Tex. Oct. 12, 2016) ("the Court questions, as a preliminary matter, whether a party's position

taken during claim construction—a practice characterized by the Supreme Court as 'mongrel,'

— can ever by itself make a case exceptional under § 285.") (rejecting argument that claim

construction position and allegedly inconsistent positions taken in IPR qualified as

"exceptional.") (internal citation omitted).

It is especially difficult to conclude that Dragon's resistance of the importation argument

was unreasonable. It would be odd if the applicants intended to limit their invention to situations

in which the recorder is "off" and did not say so in the claim language. It would be stranger still

if they intended to require that "*recording*" begin with the actuation of the record key, and, rather

than say so, they said instead that "*a recording*" of specified information was to occur and be

followed by playback of "*the recording*." Ironically, in light of the mistaken "antecedent" charge

leveled at Dragon on another term, might "the recording" lose its antecedent if "a recording" is

changed to "the recording process?"

But Judge Andrews concluded that Dragon was wrong, so the response by DISH and

Sirius is a claim that Dragon was unreasonable. This is not true.

First, the single passage in the specification on which Judge Andrews relied referred to

"basic" operation, not all operation.  This is not a likely way to express a generally applicable

requirement, especially one that is not easy to square with the claim language.

None of the uses of "basic" in the '444 patent justifies a conclusion that the Column 5 usage is a reference to "all" operation of the device of the invention, and no one has proved otherwise. Why would the applicants use "basic" if they meant "all," and why would they leave no tracks anywhere else in the specification or prosecution history to confirm the supposed selection of "basic" as a synonym for "all."

There is no reference to other statements in the specification that might provide a further basis for importation. There is one reference to "basic" operation and nothing more.

The idea that the single mention of "basic operation" was a stand-in for a reference to "all" operation is also not consistent with the discussion in which it appears. Column 5 appears in a section of the patent that is headed "Detailed Description of the Preferred Embodiments," and the discussion of Figure 2 begins with a statement that Figure 2 shows a "second embodiment." Both of these facts show that embodiments are being discussed. Why would the reference to "the instant invention" so clearly overcome these explanations of what is being discussed that Dragon has no right to advocate that importation of the "off" concept is a garden variety "cardinal sin?"

Claim construction seeks to ascertain the meaning of claim terms based on the language of the claims as informed by the specification and, where relevant, the prosecution history. *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1088 (Fed. Cir. 2003). Limiting claim terms to embodiments described as "the instant invention" or "the present invention" is an exception to these ordinary rules of claim construction. *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398 (Fed. Cir. 2008); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136–37 (Fed. Cir. 2011); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320–21 (Fed. Cir. 2008); *Rambus*, 318 F.3d at 1094. The Federal Circuit has "found that use of the phrase 'present invention' or 'this

invention' is not always so limiting, such as where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent." CITE.

The Column 5 passage describing "basic operation" of the Figure 1 embodiment does not purport to describe the invention "as a whole." *See Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007). In *Verizon*, the description of "the instant invention" found limiting appeared in a section of the specification titled "Disclosure of the Invention." *Id.* In contrast, the Column 5 passage appears under the heading "Detailed Description Of The Preferred Embodiments." The description in Column 5 refers to the embodiment in Figure1, and the specification goes on to describe other embodiments that do not suggest that "record key" must be limited as it was in the claim construction order.

The claim construction order also cited an excerpt of a sentence presented by the defendants, and declared that the "purpose of the invention" is "user control over recording." C.A. 12-2061, D.I. 110. at 11. The "objects of the invention" are described under the heading "Objects And Advantages," beginning in Column 2. *See* '444 patent at 2:36-3:7.  None of the specified purposes includes "user control over recording," and it is difficult to imagine any situation in which a claim construction that is not consistent with the plain meaning of the claim language can be justified by a general reference to a "purpose" of the invention, or that it would be unreasonable to contest an argument to that effect.

The specification concludes by stating that it describes only preferred embodiments, that the specifics are exemplary, and that the invention should be understood "by the claims appended hereto and their legal equivalents." '444 patent at 8:21-27. Arguments that the specification should apply to limit patent claims are common in every case. This case is not

"exceptional" because Dragon advocated the usual rule in a manner that was well supported by the claim language and specification.

### 3.     Clarifying Amendment: The Three "Hows."

Judge Andrews also relied on an amendment of Claim 1 to support his determination that "*a recording*" means "*the recording process*." He stated that the applicants' "device does not begin recording until the user actuates the record key." C.A. 12-2061, D.I. 110 at 10. But that is not what the amendment says.

The original claim language stated that "substantially simultaneous recording and playback of program information is achieved when said record key is first actuated to initiate storage of the program information in said memory unit." There is no requirement that the device be "on" or "off," or that "the recording process" have commenced. When the record key is actuated, "storage of the program information" that is the subject of the "substantially simultaneous recording and playback" is initiated. The language is agnostic as to whether storage of other information previously occurred, and also as to whether the recorder was "on" or "off" before the record key is "first actuated."

When the record key is actuated, storage of "the program information," later identified as "the broadcast program information," is initiated. "Recording," or "the recording process" could have been underway when storage of "the program information" was initiated, or not.

The amended claim language preserves the options available under the original language, and it does not add a new requirement that the device be "off." The amendment does not state that the recorder is "off" when the record key is actuated, and no other change sufficient to create a new scenario in which the recorder is necessarily "off" is imposed.

The amended claim states that "substantially simultaneous recording and playback of program information is achieved when said record key is first actuated to begin a recording by

initiating storage of the program information in said memory unit." In the amended claim language, "storage of the program information" is still initiated. The amended language explains that "*a recording*" (plainly not "*recording*" or "*the recording process*") is begun by the initiation of storage of the information. This is consistent with the explanation in the specification that it is only "the information present on input 22" that is stored "in a recording within memory unit 12" when the record key is actuated. *See* '444 patent at 5:24-25.

As Dragon explained during the claim construction process, a person having ordinary skill in the art would not understand the amended claim language to indicate that actuation of the record key "begins recording." Ex. S ¶¶ 93-95. That is simply not what the claim language says. A person having ordinary skill in the art would understand that "a recording" could begin by the initiation of storage of the information that followed the interruption, regardless of whether the device happened to be "continuously recording" and previously recorded other information that was not missed by the user. *Id.* Dr. Goldberg's testimony to this effect has never been challenged. On this point, as on all others, there is no responsive expert testimony.

## V.   *MUNSINGWEAR* FORECLOSES THE RELIEF SOUGHT BY DISH.

When the '444 patent was invalidated, Dragon's appeal from the judgments in the *DISH* and *Sirius* cases became moot, and so did the underlying cases. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). *See generally United States v. Munsingwear*, 340 U.S. 36 (1950). The invalidation of the patent deprived Dragon of the opportunity to obtain review of the disclaimer and claim construction decisions made by Judge Andrews. Under the *Munsingwear* rule, vacatur of the previously-entered *DISH* and *Sirius* judgments was required, and, as explained in Dragon's brief, vacatur of the judgments eliminated the claim construction order as well. *See* Dragon Brief at Section II.A.

Judge Andrews explained his *Munsingwear*-based vacatur of the *DISH* and *Sirius*

judgments by reference to the fact that "absent vacatur of [the Court's] prior judgment, Plaintiff is at significant risk of harm from an unreviewed decision." Ex. EE at A1345. Preventing that harm is the essence of the *Munsingwear* rule. "The point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by what we have called a 'preliminary adjudication.'" *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (quoting *Munsingwear*, 340 U.S. at 40). Judge Andrews vacated the judgments to prevent the imposition of the "legal consequences" that would otherwise ensue, including, what DISH and Sirius request.

These strange circumstances are the result of the Federal Circuit's surprising decision in *B.E. Technology, L.L.C. v.* Facebook*, Inc.*, 940 F.3d 675 (Fed. Cir. 2019). Although the Federal Circuit had previously found it "obvious" that there are no "prevailing parties" in moot cases, *Rice Services, Ltd. v. United States*, 405 F.3d 1017, 1027 n.6 (Fed. Cir. 2005), the *B.E.* court held that the defendant is a "prevailing party" in a case that is terminated for mootness, and, indeed, whenever a case comes to an end without a judgment for the plaintiff. *See B.E. Technology, L.L.C. v. Facebook, Inc.*, No. 19-1312 (Petition for Writ of *Certiorari*) (Ex. JJ).

Judge Andrews's determination that DISH and Sirius are not prevailing parties entitled to pursue relief under section 285 was reversed on the basis of *B.E. See Dragon Intellectual Prop., LLC v. Dish Network LLC*, 956 F.3d 1358, 1361-62 (Fed. Cir. 2020). *B.E.* is inconsistent with *Munsingwear*, but *B.E.* did not, unlike this case, present a paradigmatic *Munsingwear* situation in which a prior judgment is vacated following intervening mootness.

A ruling in favor of DISH or Sirius would be inconsistent with the *Munsingwear* rule. The responding parties oppose the DISH and Sirius motions on the basis of the *Munsingwear* rule, which is still alive and well and regularly applied by the Federal Circuit and other federal

courts. If the *Munsingwear* point has been resolved for purposes of this proceeding, so be it, but the responding parties will raise the *Munsingwear* rule on appeal or *certiorari*, in the unlikely event that becomes necessary.

## VI.   "HOW CAN YOU ARGUE THAT?" IPR ATTORNEY FEES ARE NOT RECOVERABLE UNDER SECTION 285.

DISH and Sirius claim that the attorneys' fees they incurred in connection with the IPR proceedings are recoverable under section 285. When Mr. Linn made that argument during oral argument in the Federal Circuit, Judge Stoll asked "How can you argue that?" *See Dragon Intellectual Prop., LLC v. Dish Network LLC*, No. 19-1283, Oral Argument (Jan. 6, 2020) at 5:06, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1283.mp3. In its opinion, the Federal Circuit panel stated that it "[saw] no basis for this argument," but left it to this Court to make a formal ruling in the first instance. *See Dragon Intellectual Prop, LLC*, 956 F.3d at 1362. The panel was right.

When adopted in 1952, section 285 covered proceedings in district court, and nothing else. The statute was not amended in the America Invents Act, or in any manner after the creation of the IPR procedure. Neither was the statute changed at any time to allow the recovery of attorneys' fees incurred in any proceeding before the Patent and Trademark Office, or in any matter other than the "case" in which a section 285 motion is made. Congress could have allowed the recovery of fees incurred in another forum under section 285, but it never has, and the courts lack the power to make their own judgments on whether those fees should be recovered. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174-75 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

There are additional problems associated with any attempt to recover IPR fees. DISH's motion does not claim that these cases are exceptional based on positions taken on validity

issues.  The vacated judgments to which the parties stipulated were based on non-infringement resulting from the vacated claim construction order. No validity issues were presented to or decided by this Court. There is no connection between the IPR and the "rulings that were important to the court's final decision in the lawsuit," as in *Chaffin v. Braden*, No. CV 6:14-0027, 2016 WL 5372540, at *2 (S.D. Tex. Sept. 26, 2016). Indeed, in this case, the judgments and the IPR decision rested on inconsistent grounds. If section 285 were amended to allow recovery for fees incurred in proceedings in other fora, it would be a great surprise if the amendment did not require consideration of whether the proceedings in another forum were "exceptional."

## VII.   DISH'S PERSONAL ATTACKS ARE NOT SUFFICIENT.

The "rote attempt to shift the burden of paying legal fees by hurling [plaintiff] into the crusade against 'Patent Trolls'" has become par for the course. *See Digitech Image Technologies, LLC v. Newegg, Inc.*, 2013 WL 5604283, * 5 (C.D. Cal. 2013). But "[a] party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants." *Id.* This case sadly demonstrates that the overzealous pursuit of section 285 motions can also be directed at lawyers, or their families. Against anyone, more is needed than "labels and name calling." *See Joao Control & Monitoring Sys., LLC v. Dig. Playground, Inc.*, 2018 U.S. Dist. LEXIS 53405, at *18-19 (S.D.N.Y. Mar. 28, 2018).

For five years, claims for which there is unquestionably "no legal basis" have been pursued against lawyers. A process server was repeatedly sent to Mr. Freitas's home in the middle of the day when there was no reason to believe he was there. *See* Declaration of Robert E. Freitas ¶¶ 7-8. DISH has argued that the case is exceptional because Mr. Freitas questioned the abysmal judgment that resulted in that stunt, but DISH stopped the harassment only after

Mr. Freitas spoke out. *See* DISH Ex. 21. DISH also claims that the case is exceptional because, after he was wrongly pursued for years, Mr. Freitas requested the apology, and described an appeal that was frivolous when filed as "frivolous." Such conduct does not make a case exceptional.

DISH says the case is exceptional because FAW and Mr. Freitas filed a motion based on more than 200 years of Supreme Court precedent to terminate the proceedings. DISH falsely argued that the jurisdiction arguments made in that motion had been rejected by the Federal Circuit, but that never happened, *see* Ex. HH at A1382-85, and that is not what Judge Andrews decided when he denied the motion on the basis of *B.E. See* Ex. II.

DISH uses Mr. Freitas's surname as a slur, repeating it 68 times in 30 pages, and Dr. Zhu of Dragon also becomes a target. Dr. Zhu's personal difficulties have nothing to do with Dragon or this case. The Court is told that "Freitas" has been the driving force behind this case, although Bob Freitas had a limited role, and FAW withdrew within days of Judge Andrews's claim construction order. *See* Declaration of Robert E. Freitas ¶ 1. DISH proclaims that Mr. Freitas has done bad things "throughout the case," but he didn't even interact meaningfully with DISH's lawyers until after they began their unjustified personal attacks on him.

The personal attacks on Mr. Freitas are all the worse because DISH's lawyers know they are false. Hopkins Guy, the senior lawyer for DISH, is a former partner of Mr. Freitas. DISH's lawyers know their caricature of Mr. Freitas is untrue. But Dragon did not act unreasonably, so DISH felt it necessary to engage in personal attacks.

**VIII.  CONCLUSION.**

The motions filed by DISH and Sirius should be denied.

Dated: June 7, 2021                          */s/Robert E. Freitas*_____
                                             Robert E. Freitas
                                             FREITAS & WEINBERG LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.


Dated: June 7, 2021                                FREITAS & WEINBERG LLP


                                    _____/s/Robert E. Freitas_____
                                              Robert E. Freitas