IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRAGON INTELLECTUAL PROPERTY, LLC,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | C.A. No. 13-2066 (RGA) |
| v.   ) | |
| ) | |
| DISH NETWORK L.L.C.,   ) | |
| ) | |
| Defendant.   ) | |
| ——————————————————   ) | |
| DRAGON INTELLECTUAL PROPERTY, LLC,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | C.A. No. 13-2067 (RGA) |
| v.   ) | |
| ) | |
| SIRIUS XM RADIO INC.,   ) | |
| ) | |
| Defendant.   ) | |

**DISH NETWORK L.L.C.'S AND SIRIUS XM RADIO INC.'S REVISED JOINT REPLY
BRIEF IN SUPPORT OF THEIR MOTIONS TO DECLARE THIS CASE
EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285**

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Bradley Bowling
Ali Dhanani
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
(713) 229-1234

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant DISH Network L.L.C.*

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

POTTER ANDERSON & CORROON LLP
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
(650) 752-1700

*Attorneys for Defendant Sirius XM Radio, Inc.*

Mark A. Baghdassarian
Aaron Frankel
Shannon H. Hedvat
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 715-9100

June 21, 2021

## **TABLE OF CONTENTS**

I.  THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285 ....................................................2

    A.  The Claim Language and the Disclaimer of "Continuous Recording" Are Clear ............2

    B.  Freitas and Dragon Attempted to Avoid the Disclaimer ...................................................4

    C.  This Case Is Exceptional Regardless of the Vacatur Order ...............................................5

    D.  Expert Testimony Is Not Necessary ..................................................................................6

    E.  Defendants' IPRs Are Not Inconsistent ............................................................................7

II.  FREITAS'S CASE LAW DOES NOT ADEQUATELY ADDRESS LIABILITY FOR
    SECTION 285 FEES ...................................................................................................................8

    A.  *Roadway Express* Did Not Create a Presumption Against Attorney Liability ................8

    B.  Freitas's Section 285 Interpretation Creates a Legal Loophole.....................................12

III.  FREITAS'S ARGUMENTS AGAINST ASSESSING IPR FEES LACK MERIT.................14

IV.  FREITAS ADMITS THAT ITS *MUNSINGWEAR* ARGUMENT IS FORECLOSED ..........15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alliance for Good Gov't v. Coalition for Better Gov't,*
No. 20-30233, 2021 WL 1996349 (5th Cir. May 19, 2021)..............................................11, 12

*Amneal Pharm. LLC v. Almirall, LLC,*
960 F.3d 1368 (Fed. Cir. 2020)...............................................................................................14

*Andersen Corp. v. Fiber Composites, LLC,*
474 F.3d 1361 (Fed. Cir. 2007)..................................................................................................3

*B.E. Tech., L.L.C. v. Facebook, Inc.,*
940 F.3d 675 (Fed. Cir. 2019)..................................................................................................15

*Brecht v. Abrahamson,*
507 U.S. 619 (1993)..................................................................................................................10

*Central Soya Co. v. Geo. A. Hormel & Co.,*
723 F.2d 1573 (Fed. Cir. 1983)................................................................................................11

*Chaffin v. Braden,*
No. CV 6:14-0027, 2016 WL 5372540 (S.D. Tex. Sept. 26, 2016) ........................................15

*Chambers v. NASCO,*
501 U.S. 32 (1991)..............................................................................................................13, 14

*Coghlan v. Starkey,*
852 F.2d 806 (5th Cir. 1988) .....................................................................................................9

*Deep Sky Software, Inc. v. Sw. Airlines Co.,*
No. 10-cv-1234-CAB (KSC), 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015)................14, 15

*Dragon Intell. Prop., LLC v. AT&T Servs. Inc.,*
C.A. No. 13-2061-RGA, D.I. 110 (D. Del. Sept. 9, 2015) ......................................................1

*In re Crescent City Estates, LLC,*
588 F.3d 822 (4th Cir. 2009) .........................................................................................9, 10, 11

*Interlink Elecs v. Incontrol Sols., Inc.,*
215 F.3d 1350 (Fed. Cir. 1999)................................................................................................11

*Iris Connex, LLC v. Dell, Inc.,*
235 F. Supp. 3d 826 (E.D. Tex. 2017) ....................................................................................13

*LaSalle Nat. Bank v. First Conn. Holding Grp., LLC*,
    287 F.3d 279 (3d Cir. 2002).............................................................................13

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
    No. CV 13-06787 JEM, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018)..................14

*My Health, Inc. v. ALR Techs., Inc.*,
    No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017)....................14

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000)......................................................................................12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)................................................................................. passim

*Park-In-Theatres v. Perkins*,
    190 F.2d 137 (9th Cir. 1951) ..........................................................................11

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..........................................................................6

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
    840 F.2d 1565 (Fed. Cir. 1988)........................................................................15

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980)................................................................................8, 9, 10

*Sacco v. United States*,
    452 F.3d 1305 (Fed. Cir. 2006).......................................................................10

*Saffran v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013)...........................................................................3

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003)...........................................................................5

*Stillman v. Edmund Sci. Co.*,
    522 F.2d 798 (4th Cir. 1975) ..........................................................................11

*Sullivan v. Hudson*,
    490 U.S. 877 (1989).......................................................................................14

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015)..........................................................................7

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019)..........................................................................5

*Webb v. Bd. of Educ. of Dyer Cty., Tenn.*,
   471 U.S. 234 (1985) .................................................................................15

**STATUTES**

15 U.S.C. § 1117 .................................................................................11, 12

28 U.S.C. § 1447 .......................................................................................10

28 U.S.C. § 1927 ...............................................................................9, 10, 13

35 U.S.C. § 70 ...........................................................................................11

35 U.S.C. § 285 ................................................................................ passim

42 U.S.C. § 1988 .......................................................................................10

42 U.S.C. § 2000e–5 ................................................................................10

**OTHER AUTHORITIES**

Fed. R. App. P. 38 ......................................................................................9

Fed. R. Civ. P. 11 .....................................................................................13

Fed. R. Civ. P. 37 .....................................................................................13

The facts of this case are exceptional but not complicated.  Dragon sued DISH and SXM for patent infringement, asserting claims that, on their face, require pressing a record button to start a recording.  The claims use the words "begin" and "initiate" to describe this.  But DISH's and SXM's products never begin a recording with the press of a record button.  Rather, they record "continuously" regardless of button presses.  If there were any doubt about the claims' meaning, the applicants confirmed the meaning by repeatedly telling the Patent Office during prosecution that the claims overcame prior art (including Sata) because the prior art "continuously" recorded and did not allow user control to start a recording.

Defendants both sent Dragon and Freitas letters explaining why their products could never infringe.  Both pointed to **public manuals** and the obvious operation of DISH's and SXM's devices to demonstrate it.  But instead of accepting the truth, Dragon and Freitas dug in, and pursued contorted claim constructions that attempted to avoid the inevitable.  They argued that there was no disclaimer despite the many representations made to the Patent Office.  But the Court ruled: "I have only once seen a clearer case of prosecution disclaimer."  *Dragon Intell. Prop., LLC v. AT&T Servs. Inc.*, C.A. No. 13-2061-RGA, D.I. 110 at 7 (D. Del. Sept. 9, 2015). It was not a close case.  Dragon had asserted infringement over devices that were expressly disclaimed.

Now, in an effort to muddy the waters, Dragon and Freitas present two expert declarations (only after defendants sought monetary sanctions) to tell the Court how to read the file history.  Those extrinsic expert declarations are unneeded and cannot replace the Court's own analysis of the intrinsic record during claim construction.  Dragon and Freitas also argue that the PTAB's **obviousness** conclusion—using two references that purportedly disclose "continuous recording devices"—somehow forecloses or estops Defendants' prosecution

1

disclaimer arguments.  But the Claim Construction Order was submitted to the PTAB and Defendants consistently told the PTAB that the claims did not cover continuously recording devices.  And the PTAB's obviousness conclusion is not inconsistent with the file history, Defendants' arguments, or the Court's Claim Construction Order.

This case "stands out from others" not only "with respect to the [lack of] substantive strength of [Dragon's] litigating position" but also in "the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014). The exceptional behavior largely arose with Dragon's lawyers – Freitas – and they should be jointly liable.

## I.     THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285

### A.     The Claim Language and the Disclaimer of "Continuous Recording" Are Clear

Dragon and Freitas go to great lengths to explain why the Court should not believe its own eyes when reading the language of the claims and the repeated disclaimers of continuous recording devices.  But the claim language of claim 1 is revealing: "said ***record key is first actuated to begin a recording by initiating storage*** of the broadcast program information in said memory unit, and said ***playback key is subsequently and solely actuated to begin time delay playback of the recording from the beginning thereof by initiating retrieval*** of the stored program information in said memory unit."  DISH D.I. 207,[1] Ex. A at A00011 (emphasis added). The express language of the claim states that actuating a record key "***begin[s]*** a recording by ***initiating storage***."  *Id.*  It could not be clearer that recording and storage can only ***begin*** or ***initiate*** with the press of the record key.  And then, the playback key is pressed to begin playback "of the recording from the beginning thereof." *Id.*

---

[1]      "DISH D.I." herein refers to C.A. No. 13-2066-RGA.

This language was added during prosecution to overcome prior art Sata—a continuously recording device.  Specifically, the applicants amended the claim as follows:

> when said record key is first actuated to <u>begin a recording by initiating</u> [initiate] storage of the program information in said memory unit, and said playback key is subsequently actuated <u>to begin time delay playback of the recording from the beginning thereof by initiating</u> [initiate] retrieval of the program information store in said memory unit.

DISH D.I. 207, Ex. B at A0109.  In that same amendment, the applicants explained that their amendment recited "how the structure of the instant invention begins a recording *upon a first actuation of the record key*."   DISH D.I. 207, Ex. B at A0100 (emphasis added).   That amendment "further distinguished from the structure of Sata," whose "recording … is continuous, and never initiated or stopped."  *Id.*[2]  The applicants explained Sata's flaw is that it "at best, is continually recording and playing back."  DISH D.I. 207, Ex. B at A0102-A0103; *see also id.* ("It is not clear by any means that Sata even intends to provide any control at all over the point at which recording or playback begins and ends."); *id.* ("the prior art makes no mention whatever of the desirability of controlling the point at which recording is to begin).

Even though "applicants rarely submit affirmative disclaimers along the lines of 'I hereby disclaim the following ...' during prosecution and need not do so to meet the applicable standard," *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013), the applicants' statements disclaiming continuous recording are clear and unmistakable.  It is inconsequential that the applicants argued about both a record key and a playback key.  "[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

---

[2]    The Appendix separates the pages of this Amendment between A0100-0106 and A0108-0110.

3

And the applicants were consistent.  After each subsequent Office Action in which the examiner rejected the claims over the prior art (including Sata), the applicants repeatedly argued that prior art continuous recording was distinguished from the recording mechanism of the claims because the claims required actuating a "record key" to begin a recording by initiating storage of the broadcast program information, *e.g.*:

- "In the Official Action dated 11/17/94, the Examiner states that he considers actuation of a record key and a playback key to be an inherent characteristic of Sata, *et al*.  Applicant respectfully submits that this argument is totally unsupported by the facts.  ***Where a reference teaches a device that explicitly records continuously and all the time, it would not be obvious to add a record key to control a function for which no control scenario is provided*.**"  DISH D.I. 207, Ex. B at A0124 (May 19, 1995, Resp., at 4) (emphasis added).

- "Sata's device not only fails to include a record key, ***it cannot accommodate a record key since it is always recording***.  So far as structure necessary to implement a control scenario is concerned, ***Sata teaches in a totally different direction by explicitly requiring full time recording operation*** and some sort of undefined operator console capable of generating read designating data and track designating data necessary to find the desired starting place for playback in a full time recording device.  To do as the examiner here suggests, ***it would be necessary to disregard Sata's requirements that the device be recording at all times*** and that read designating data and track designating data be used for retrieval of stored information." …   "***Where a reference teaches a device that explicitly records continuously and all the time, it would not be obvious to add a record key to control a function for which no control scenario is provided***."  DISH D.I. 207, Ex. B at A0145-A0147 (Nov. 15, 1995 Resp., at 3) (emphasis in original).

- "***Sata does not have a pre existing [sic] controllable record function, but instead records continuously***. … As mentioned earlier, ***since Sata must record continually, there is no need for Zato's record key***[.]"  DISH D.I. 207, Ex. B at A0150 (Nov. 15, 1995 Resp., at 8) (emphasis added).

These statements are why the Court held that "I have only once seen a clearer case of prosecution disclaimer."  C.A. No. 13-2061-RGA, D.I. 110 at 7.

### B.    Freitas and Dragon Attempted to Avoid the Disclaimer

Faced with letters notifying them that Defendants' products were continuous recording devices that could not be covered by the claims (DISH D.I. 199 at 3-10), Freitas and Dragon pivoted to a new construction of "broadcast program information" in which it had different

meanings in the same claim.  Specifically, they claimed that "broadcast program information" merely meant "program information that is broadcast" (DISH D.I. 206 at 12), but when the term is preceded by a "definite article" – *"the"* – later in the same claim, "*the* broadcast program information" was special.  They claimed that "*the* broadcast program information" was "the broadcast program information presented after the record key is actuated and before the playback key is actuated."  C.A. No. 13-2061-RGA, D.I. 110 at 4.  Their purpose was transparent:  if "*the* broadcast program information" is defined as only the broadcast program information of interest after pressing the record key and before pressing the playback key, then the claims could cover continuous recording devices.  Under that interpretation, it would not matter when recording actually started; it would only matter when recording of the program information *of interest* started.  But "[a] patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement."  *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).  As the Court held, "Plaintiff cannot now use claim construction to recapture continuous recording devices."  C.A. No. 13-2061-RGA, D.I. 110 at 7.

## C.    This Case Is Exceptional Regardless of the Vacatur Order

Dragon alleges that the vacatur order (DISH D.I. 168) "wiped the slate clean" and therefore the Court cannot consider its previous rulings.  DISH D.I. 207 at 12-14.  But the Federal Circuit has specifically approved of a "district court's resting its exceptional-case determination on an examination of an issue—infringement, and specifically the basis for alleging infringement—that was neither fully adjudicated nor even fully litigated before the judgment on the merits."  *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356-57 (Fed. Cir. 2019) (internal citation omitted).  The same analysis should apply here:  although the PTAB invalidated Dragon's patent, the frivolous nature of Dragon's infringement claims cannot and

5

should not be ignored.  And in this case, the Court *has* considered, and issued an order on, claim construction that it is not required to, and should not, ignore.  That is especially true where claim construction was case dispositive and the exceptional conduct largely involved the attempt to recapture what was unquestionably disclaimed.  *See* DISH D.I. 115.

      **D.**    **Expert Testimony Is Not Necessary**

      Dragon and Freitas seek to avoid a finding that this case is exceptional by submitting two expert declarations from 2016 and arguing that "it is not possible" to construe the claims without expert testimony because the "level of ordinary skill in the arts is an 'expert' level."  But that is not the law.  *All* claim construction is performed from the perspective of what one of ordinary skill in the art would understand.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  And although "expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field," that is not what Dragon and Freitas propose here – nor what they did during claim construction years ago.  *Id.* at 1318.  Rather, these are just the sorts of "conclusory, unsupported assertions by experts as to the definition of a claim term" that *Phillips* found "are not useful to a court."  *Id.*  *Phillips* warns about "extrinsic evidence consisting of expert reports and testimony" that "is generated at the time of and for the purpose of litigation" because it "can suffer from bias that is not present in intrinsic evidence."  *Id.*  "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the ***indisputable public records consisting of the claims, the specification and the prosecution history***, thereby undermining the public notice function of patents."  *Id.* at 1319 (emphasis added).

6

The Court does not need Dragon's and Freitas's late, self-serving expert testimony to read the claims and the prosecution history.  In fact, the Federal Circuit says it would be error to do so because "[t]he meaning one of skill in the art would attribute to" a claim term "in light of its use in the claims, the disclosure in the specification, and the discussion of this term in the prosecution history is a question of law."  *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1342 (Fed. Cir. 2015).  District Courts "should not defer to" an expert's "ultimate conclusion about claim meaning in the context of [the] patent." *Id*.

And if expert testimony were required to understand the claims, why did Dragon not hire its expert before it filed suit?  Or provide the entirety of these declarations before or during *Markman*?  Adam Goldberg, who submitted a declaration in support of Dragon, was not engaged until August 2014 – nine months after Dragon filed suit.  *See* DISH D.I. 207, Ex. S ¶ 13 (A1128-A1129).  And although Dragon submitted a three-page declaration from Mr. Goldberg in support of certain claim construction positions, that declaration said nothing about the prosecution history or the meaning of "broadcast program information."  *See* C.A. No. 13-2061-RGA, D.I. 78, Tab 1 (D. Del. Mar. 19, 2015).  The answer is that Dragon and Freitas only claimed experts were needed when faced with the consequences of their actions.

### E.      Defendants' IPRs Are Not Inconsistent

Dragon's claims that Defendants' arguments in the IPR foreclose or estop a finding of disclaimer are meritless.  As the PTAB found, claims 1, 2-4, 7-10, and 14 were obvious over various combinations of Goldwasser, Yifrach, and Vogel.  DISH D.I. 207, Ex. U at A1230.  During the IPR proceedings, Defendants consistently argued the same construction that they presented to this Court and even advised the PTAB that "[i]n view of prior art cited during prosecution, the ***recording must initiate by activating a record/pause button*** at the beginning of the pause, and ***cannot involve continuous background recording***."  DISH D.I. 207, Ex. I at

A0881 (emphasis added).  And Dragon itself submitted the Court's claim construction order with its patent owner response.  *See* Ex. 23 (listing Dragon's IPR exhibits).  So with the benefit of Defendants' express statement that "continuous background recording" was not covered by the claims, as well as the Court's claim construction order, the PTAB found the claims obvious.[3]

Dragon's and Freitas's attempt to now muddy the waters should be disregarded because Defendants never argued, and the PTAB did not find, that Goldwasser and Yifrach "fall within the scope of the claims," nor that they were solely continuously recording devices.  Rather, Defendants argued that the claims of the patent are obvious in light of the combination of the references (including Goldwasser, Yifrach, and Vogel).  The PTAB agreed the claims were obvious with full knowledge of disclaimer of "continuous recording" in the claim construction.

## II.   FREITAS'S CASE LAW DOES NOT ADEQUATELY ADDRESS LIABILITY FOR SECTION 285 FEES

### A.   *Roadway Express* Did Not Create a Presumption Against Attorney Liability

Freitas ignores the authority authorizing fee awards against attorneys under statutes and

---

[3]    The PTAB found Goldwasser's "Address controller 58 controls the storage of these digitized video samples and is responsive to commands from user control panel 50."  DISH D.I. 207, Ex. U at A1218.  And in Yifrach "A user may interrupt the real-time broadcast by depressing freeze button 32. …  Freeze button 32 controls logic circuit 31, and depressing this button causes the system to enter Freeze Mode. …  In Freeze Mode, the last sixty seconds of the broadcast are stored in further storage device 30, and cyclic storage device 22 continues to store the audio signal. …"  *Id*. at A1219.  In response to the argument that the combination "does not render obvious the claimed record button because it does not 'begin a recording'" (*id*. at A1222), the PTAB stated that its "*analysis must go further than reviewing what is taught by each isolated reference*. Instead, *we must focus on what one of ordinary skill in the art would learn from the combination of teachings found in the cited references*. …  Pursuant to such analysis, we find that Yifrach's playback and freeze keys combined with Goldwasser's simultaneous recording and playback would have taught one of ordinary skill in the art the claimed 'keyboard having a record key and a playback key.'"  *Id*. at A1223-24 (emphasis added).  The PTAB also found "that Goldwasser's address controller, when viewed in light of Yifrach's two-button interface and Goldwasser's user control panel, would have taught one of ordinary skill in the art a control circuit configured to allow for simultaneous *recording when the record key is actuated to begin a recording* and playback when the playback key is subsequently and solely actuated to begin playback."  *Id*. at A1226 (emphasis added).

rules that are silent as to attorney liability, such as Federal Rule of Appellate Procedure 38. *See Coghlan v. Starkey*, 852 F.2d 806, 818 & n.22 (5th Cir. 1988) ("[M]any cases under [R]ule 38 assess sanctions against offending counsel, alone or jointly with the client . . . .") (citing cases). Instead, Freitas's defense turns on an imagined "presumption" that if a fee-shifting statute is silent on attorney liability, fees should not be assessed against attorneys, the so-called "American Rule." DISH D.I. 206 at 1. For this, Freitas leans heavily on *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), and *In re Crescent City Estates, LLC*, 588 F.3d 822 (4th Cir. 2009). Although *Crescent City Estates* discusses such a "presumption," the Supreme Court in *Roadway Express* (on which *Crescent City Estates* relies) does not. *Roadway Express* instead concerned a statute that spoke only to costs, not attorneys' fees. At the time, 28 U.S.C. § 1927 permitted an award of excess "costs" against lawyers who multiply proceedings. *Roadway Exp.*, 447 U.S. at 757. The question for the Court was whether "costs" in § 1927 included attorneys' fees. *Id. Roadway Express* characterized "the 'American rule'" as one where "attorney's fees ordinarily are not *among the costs* that a winning party may recover." *Id.* at 759 (emphasis added); *see also id.* at 765 (discussing "general rule in federal courts [] that a litigant cannot recover his counsel fees"). That discussion had nothing to do with who is liable for fees when a specific fee-shifting statute abrogates the American Rule and states that fees are recoverable.[4]

Contrary to Freitas's characterization, *Roadway Express* simply reinforced the general notion that a cost-shifting statute is not equivalent to an attorney-fee-shifting statute and, absent explicit statutory authority for *fee*-shifting, litigants cannot recover fees (put simply, the "American Rule"). Because § 1927 explicitly made attorneys liable for costs, *Roadway Express*

---

[4]   To clarify, Congress later amended § 1927 to permit litigants to recover both costs *and fees* against lawyers. DISH D.I. 206 at 8 (acknowledging that "Section 1927 was amended in response to the Supreme Court's interpretation of 'costs' in *Roadway Express*").

did not squarely address the statute's silence on the liable entity.  As Freitas acknowledges, DISH D.I. 206 7, "if a decision does not 'squarely address[ ][an] issue,' a court remains 'free to address the issue on the merits' in a subsequent case.'"  *Sacco v. United States*, 452 F.3d 1305, 1308 n.2 (Fed. Cir. 2006) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

      *Crescent City Estates* is not controlling here, but did involve a fee-shifting statute, 28 U.S.C. § 1447(c), that was silent on liability.  *Crescent City Estates* mentions the American Rule's presumption that, absent any cost or fee-shifting statutes, parties bear their own costs and fees, 588 F.3d at 825; but the court went one step too far.  The Fourth Circuit held, without support, that another "presumption" exists—"that fee-shifting statutes apply *only to parties* unless they expressly state otherwise"—which the court declared "consistent with the American Rule."  *Id.* (emphasis added).  In particular, it declared that the American Rule presumes "**first**, that parties bear *their own* legal fees and **second**, that parties [and not attorneys] bear legal fees." *Id.* at 826 (bold emphasis added).

      Although the first presumption is correct, the second is not.  *Crescent City Estates*'s reliance on *Roadway Express* for this proposition was misplaced.  The Supreme Court in *Roadway Express* did not create or endorse a "presumption" that only parties bear the legal fees. Rather, in declining to interpret § 1927's "costs" as permitting both costs *and fees* against attorneys, the Court looked to ordinary principles of statutory construction.  It examined statutes with different language—costs-plus-fees in 42 U.S.C. § 1988, 2000e–5(k)—and, critically, the legislative history, giving weight to a "Senate Report accompanying § 1988 [that] stated that the bill authorizes 'an award of attorneys' fees against a *party*.'"  *Id.* at n.9 ("This reference reinforces the view that the statute was not intended to permit recovery from opposing counsel.").  Indeed, the legislative history of § 1447 in *Crescent City Estates* also suggested

10

limiting the fee liability to parties.  *See Crescent City Estates*, 588 F.3d at 827-28.

No such legislative history exists here.  As confirmed in *Octane*, 572 U.S. at 549, both § 285 and its predecessor statute, 35 U.S.C. § 70 (1946), were broadly intended to "to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force,' which made a case so unusual as to warrant fee-shifting," such as "vexatious or unjustified litigation."  Congress never expressed an intention to limit § 285 (or its predecessor) to parties.

Freitas and *Crescent City Estates* also point to other Circuit Court decisions declining to authorize an award of fees against attorneys when the statute is silent.  DISH D.I. 206 at 3; *Crescent City Estates*, 588 F.3d at 828.  Tellingly, Freitas cites two pre-*Octane* cases on § 285: *Stillman v. Edmund Sci. Co.*, 522 F.2d 798, 800 (4th Cir. 1975), and *Interlink Elecs v. Incontrol Sols., Inc.*, 215 F.3d 1350, at *3 (Fed. Cir. 1999) (unpublished).  Neither case is applicable after *Octane* nor dispositive here, as each case cited to earlier precedent that did *not* address whether attorneys were liable.  In particular, *Interlink* (a non-precedential opinion) relies on *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983), which did not concern who was liable, only whether expenses could be included in § 285 fees.  And the origins of *Stillman*'s holding can be traced back to *Park-In-Theatres v. Perkins*, 190 F.2d 137, 138, 143 (9th Cir. 1951), which also did not directly address attorney liability.

On the other hand, the Fifth Circuit recently authorized attorney liability for fees under the Lanham Act's identical fee-shifting provision.  *See Alliance for Good Gov't v. Coalition for Better Gov't*, No. 20-30233, 2021 WL 1996349, at *2-3 (5th Cir. May 19, 2021).  Using the same language as § 285, § 1117 of the Lanham Act "authorizes the award of 'reasonable attorney fees to the prevailing party' in 'exceptional cases.'"  *Id.* at *2 n.15 (quoting 15 U.S.C. § 1117(a)).

Just like § 285, § 1117 is silent on who is liable.  Looking to the Patent Act's similar fee-shifting statute, the Fifth Circuit agreed that *Octane* "gave no indication that [§ 285] limited who could be held liable." *Id.* at *2.  It also pointed to the Federal Circuit's "imposition of fee awards under the Patent Act against individuals who were not party to the underlying litigation when their conduct contributed to" the exceptionality. *Id.* at *3 & n.18.  As a result, the Fifth Circuit held it was reasonable to impose liability against a "properly-added party responsible for the conduct making a case exceptional"—in that case, a principal of the party who, as an attorney, personally signed motion papers. *Id.* at *3.

The facts and the fee-shifting statute in this case more closely align with *Alliance* (a post-*Octane* decision) than the other pre-*Octane* decisions cited by Freitas.  This Court should likewise find it reasonable to assess liability against Freitas, who was "responsible for the conduct making a case exceptional." *Id.*

### B.      Freitas's Section 285 Interpretation Creates a Legal Loophole

Freitas's narrow interpretation of § 285 perpetuates a nefarious loophole in patent cases.  Attorneys who are responsible for exceptional litigation behavior in their representation of under-capitalized, shell companies can insulate themselves and their clients from fee liability.  In fact, a party's insufficient funding to pay the fee award has prompted courts to assess liability against the party's officers or leaders when involved in bad-faith conduct.  *See, e.g.*, *Alliance*, 2021 WL 1996349, at *2-3 (against party's principal/attorney); *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 462-64 (2000) (against party's president and sole shareholder).[5]

District courts have also recognized that failing to hold similarly situated entities, such as non-parties, liable results in perverse incentives under § 285.  "Congress enacted Section 285 to

---

[5]      The Supreme Court in *Nelson* reversed the Federal Circuit's decision for lack of due process and remanded for further proceedings, but in doing so, stated that its "decision surely does not insulate Nelson [the president and sole shareholder] from liability."  529 U.S. at 472.

provide incentives to defend against frivolous infringement claims because doing so benefits the public," and "if recourse can only be had against a judgment-proof shell company, no such incentive exists." *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 846 (E.D. Tex. 2017) (permitting award against non-party).

Freitas argues that alternative remedies exist for sanctioning attorneys. DISH D.I. 206 at 8. Each is insufficient here. For example, Federal Rule of Civil Procedure 11 and 37 establish certain sanctions that apply to pleadings, motions, or discovery responses. Here, Freitas perpetuated litigation behavior that does not fall squarely into either of these two rules but still amounts to a case "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *See Octane*, 572 U.S. at 554. Rule 11 motions also "should be served promptly after the inappropriate paper is filed, and if delayed too long, may be viewed as untimely." *See* Fed. R. Civ. P. 11, Advisory Committee's Notes to 1993 Amendment. In contrast, § 285 motions are only available at the conclusion of a case. District courts also have discretionary authority under Rule 11, 37, and their inherent power to fashion an "appropriate sanction," whereas § 285 specifies that the *only* appropriate sanction is fees. *Cf. Chambers v. NASCO*, 501 U.S. 32, 51 (1991).

As for 28 U.S.C § 1927 fees, this Court previously noted that while Freitas's conduct "might properly have [been] sanctioned under Section 285, the allegations do not meet the standard for a Section 1927 fees award" because the actions did not "multipl[y] the proceedings," as required by statute. DISH D.I. 170, at 2-4. And both § 1927 and a district court's inherent power require a higher showing of bad faith, something that *Octane* explicitly did away with for § 285. *Compare LaSalle Nat. Bank v. First Conn. Holding Grp., LLC*,

287 F.3d 279, 288 (3d Cir. 2002) (requiring bad faith for § 1927 fees), and *Chambers*, 501 U.S. at 46-47 (requiring bad faith under inherent power) *with Octane*, 572 U.S. at 554-55.  None of these remedies sufficiently addresses Freitas's unreasonable behavior.

In sum, Freitas advances no reason why a court may tax fees against a party who litigates unreasonably and not against that party's attorneys who *also* behave unreasonably.  Freitas would have this Court shift the burden of its own unreasonable behavior onto its client.  It would turn the judicial process on its head if courts condoned the unreasonable behavior of members of its bar, but not their clients.

## III.   FREITAS'S ARGUMENTS AGAINST ASSESSING IPR FEES LACK MERIT

Freitas makes no attempt to address the cases cited by Defendants that support including IPR fees in a § 285 fee award.  Freitas does not discuss *Sullivan v. Hudson*, 490 U.S. 877, 878 (1989), or *Amneal Pharm. LLC v. Almirall, LLC*, 960 F.3d 1368, 1372 (Fed. Cir. 2020).  Nor does it acknowledge the cases permitting awards for fees incurred in IPRs, such as in *My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *6 (E.D. Tex. Dec. 19, 2017), and *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787 JEM, 2018 WL 7504404, at *7 (C.D. Cal. Dec. 27, 2018), or the numerous cases permitting recovery of fees from other administrative proceedings, such as reissues, reexaminations, and ITC proceedings. *See, e.g.*, DISH D.I. 204 at 22 & n.11.

Instead of addressing Defendants' authority, Freitas points to the enactment of § 285 via the 1952 Patent Act (which predated any IPRs) as allegedly demonstrating that Congress contemplated that § 285 fees would apply only to district court proceedings.  DISH D.I. 206 at 28.  This ignores cases like *Deep Sky Software, Inc. v. Sw. Airlines Co.*, No. 10-cv-1234-CAB (KSC), 2015 WL 10844231, at *1-2 (S.D. Cal. Aug. 19, 2015), which permitted the recovery of reexamination fees under § 285, even though reexaminations were created by statute in 1981, *see*

14

Pub. L. 96–517, H.R. 6933 (Dec. 12, 1980), many years after the Patent Act of 1952.  There is no reason to distinguish the treatment of reexamination fees from IPR fees.

Freitas simply ignores the plain language of § 285, which requires only that the "case" be "exceptional."  Under that plain language, "case" includes all manner of victories, including those at the PTAB.  This is especially so because an IPR is an ancillary proceeding that is "both useful and of a type ordinarily necessary" to advancing the underlying litigation.  *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 243 (1985); *see also PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-69 (Fed. Cir. 1988) (holding entitlement to attorneys' fees for "reissue proceedings [which] substituted for the district court litigation"); *Deep Sky*, 2015 WL 10844231, at *2 (awarding fees when "reexamination proceedings essentially substituted for work that would otherwise have been done before this court").

There is also no requirement that the fees expended are only for sums "important" to the district court's final decision.  DISH D.I. 206 at 29.  For support, Freitas cites *Chaffin v. Braden*, No. CV 6:14-0027, 2016 WL 5372540 (S.D. Tex. Sept. 26, 2016), which is not binding.  Rather, application of the binding precedent cited by Defendants—including *Webb* and *PPG*—broadly permit sums incurred in preparation for and performance of legal services related to the suit.  Nothing more is required.

## IV.    FREITAS ADMITS THAT ITS *MUNSINGWEAR* ARGUMENT IS FORECLOSED

Freitas's *Munsingwear* argument is admittedly foreclosed by *B.E. Technology, L.L.C. v. Facebook, Inc.*, 940 F.3d 675 (Fed. Cir. 2019), and the Federal Circuit's mandate in this case's prior appeal.  *See* DISH D.I. 192 at 3.  Freitas and Dragon rehash identical arguments that Freitas raised, and lost, in its own prior appeal and in post-appeal motions practice.  *Compare* DISH D.I. 206 at 26-28 *and* DISH D.I. 207 at 12-14, *with* DISH D.I. 180 at 7-12.  Freitas tacitly admits that this issue is foreclosed yet continues to assert it.  Its admission should be the end of it.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Bradley Bowling
Ali Dhanani
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
(713) 229-1234

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant DISH Network L.L.C.*

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
(650) 752-1700

Mark A. Baghdassarian
Aaron Frankel
Shannon H. Hedvat
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 715-9100

June 21, 2021

*/s/ Philip A. Rovner*
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant Sirius XM Radio, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 21, 2021, upon the following in the manner indicated:

Timothy Devlin, Esquire                                   *VIA ELECTRONIC MAIL*
DEVLIN LAW FIRM LLC
1306 North Broom Street, First Floor
Wilmington, DE  19806
*Attorneys for Plaintiff*

J. James Li, Ph.D.                                        *VIA ELECTRONIC MAIL*
LILAW INC.
5050 El Camino Real, Suite 200
Los Altos, CA  94022
*Attorneys for Plaintiff*

FREITAS ANGELL & WEINBERG LLP                                  *VIA FEDEX*
350 Marine Parkway, #200
Redwood City, CA  94065

Robert Freitas, Esquire                                        *VIA FEDEX*
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, #200
Redwood City, CA  94065


/s/ *Rodger D. Smith II*

Rodger D. Smith II (#3778)