**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DRAGON INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 13-2066-RGA |
| DISH NETWORK L.L.C., | ) ) | |
| Defendant. | ) ) | |
| DRAGON INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 13-2067-RGA |
| SIRIUS XM RADIO INC., | ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are two Motions to Declare Case Exceptional Pursuant to 35 U.S.C. § 285 filed by Defendants Dish Network L.L.C. ("Dish") and Sirius XM Radio Inc. ("SXM") in these two related patent infringement cases. (C.A. No. 13-2066-RGA, D.I. 130; C.A. No. 13-2067-RGA, D.I. 139.)[1]  I agree with the defendants that these cases are exceptional, so I recommend that the Court grant the pending motions in part.  However, I recommend that the Court deny the motions (1) to the extent that the defendants seek attorney's fees incurred solely

---

[1] Subsequent docket citations will refer to C.A. No. 13-2066-RGA unless otherwise noted.

during *inter partes* review proceedings and (2) to the extent that the defendants seek fees not from Dragon, but from its former lead counsel.

## I.      BACKGROUND

These cases have a long and complicated history, despite never making it to the summary judgment stage.  In 2013, Plaintiff Dragon Intellectual Property, LLC ("Dragon") separately sued Dish, SXM, and eight other defendants.[2]  Each complaint alleged that the named defendant directly infringed claims 1, 2, 3, 4, 7, and 8 of U.S. Patent No. 5,930,444 (the "'444 patent").  Of those claims, only claim 1 is independent.  It provides as follows:

> 1. A recording and playback apparatus for the substantially immediate and seamless resumption of interrupted perception of [broadcast][3] program information based upon audio or video signals, or both, without missing the program information presented during the interruption, comprising:
>
> means for powering the apparatus;
>
> a keyboard having a record key and a playback key;
>
> a control circuit coupled responsively to said keyboard;
>
> a memory unit coupled responsively to said control circuit, said memory unit having a medium for storage of information, said storage medium having structure which enables substantially random access to information stored in said medium for retrieval of the stored information from said storage medium;

---

[2] (*See* C.A. No. 13-2058-RGA, D.I. 1; C.A. No. 13-2061-RGA, D.I. 1; C.A. No. 13-2062-RGA, D.I. 1; C.A. No. 13-2063-RGA, D.I. 1; C.A. No. 13-2064-RGA, D.I. 1; C.A. No. 13-2065-RGA, D.I. 1; C.A. No. 13-2066-RGA, D.I. 1; C.A. No. 13-2067-RGA, D.I. 1; C.A. No. 13-2068-RGA, D.I. 1; C.A. No. 13-2069-RGA, D.I. 1.)

[3] "A Certificate of Correction was issued March 5, 2013, replacing 'perception of program information' with 'perception of broadcast program information.'"  *Dish Network L.L.C. v. Dragon Intell. Prop., LLC*, No. IPR2015-00499, 2016 WL 3268756, at *2 n.6 (P.T.A.B. June 15, 2016).

2

at least one input, said input being connected to a user's audio/video program signal source and also being coupled to said memory unit so as to enable program information presented by the signal source to be transferred to and stored in said memory unit; and

at least one output, said output being connected to a user's audio or video display device or both, said output further being connected to said memory unit so as to enable the transfer of program information from said memory unit to the user's display device, said control circuit being configured so that ***substantially simultaneous recording and playback of program information is achieved when said record key is first actuated to begin a recording by initiating storage of the broadcast program information in said memory unit***, and said playback key is subsequently and solely actuated to begin time delay playback of the recording from the beginning thereof by initiating retrieval of the stored program information in said memory unit, with the interval of the time delay being the same as the time elapsed between the actuation of said record key and the subsequent actuation of said playback key.

'444 patent, claim 1 (emphasis added).

Dragon served its initial infringement contentions in August 2014.  (D.I. 200, Ex. 2; D.I. 201, Ex. 2.)  Subsequently, Dish and SXM sent separate letters to Dragon's counsel asserting that their products could not infringe.  (D.I. 200, Ex. 5 (letter from Dish's counsel to Mr. Angell of Freitas Angell & Weinberg LLP, dated October 24, 2014); D.I. 202, Ex. 14 (letter from SXM's counsel to Mr. Freitas and Mr. Angell at Freitas Angell & Weinberg LLP, dated December 15, 2014).)  The letters pointed out that, according to publicly available user manuals, the accused products continuously record from the time viewing or listening begins.  (D.I. 200, Ex. 5 at 4–5; D.I. 202, Ex. 14 at 2.)  Devices that continuously record could not infringe, according to the defendants, because the claim language required that a recording be initiated when the record key was pressed.  (D.I. 200, Ex. 5 at 3–4; D.I. 202, Ex. 14 at 2.)  The defendants also pointed out that,

during prosecution of the '444 patent, the applicants had disclaimed coverage of "continuous recording devices."  (D.I. 200, Ex. 5 at 2–3; D.I. 202, Ex. 14 at 3–4.)  The defendants' letters each demanded that Dragon dismiss its claims, and the defendants threatened to seek sanctions and attorney's fees if Dragon failed to do so.  (D.I. 200, Ex. 5 at 1, 6; D.I. 202, Ex. 14 at 1.)

Dragon did not dismiss its claims.  Instead, it amended its infringement contentions.  (*See, e.g.*, D.I. 200, Ex. 7 (Dragon's Further Initial Infringement Contentions, served November 7, 2014).)  The amended contentions, among other things, set forth Dragon's theory as to how devices that continuously record could infringe.  (*See, e.g., id.* at 17.)

In late 2014, Dish filed a petition for *inter partes* review of the '444 patent and, along with the other defendants, moved to stay all ten cases.  (D.I. 74.)  The Court granted the motion only as to Dish and entered a stay of Dish's case.  (D.I. 86.)  Subsequently, Dragon and SXM stipulated to stay SXM's case conditioned upon SXM joining Dish's IPR.  (C.A. No. 13-2067-RGA, D.I. 101, 102.)  The PTAB instituted review on July 17, 2015 and subsequently granted SXM's request for joinder.

While the IPR was pending, this Court held a claim construction hearing in the eight non-stayed cases.[4]  The parties requested construction of ten claim terms, including "broadcast program information" and "the broadcast program information."  (D.I. 78.)  Dragon argued that "the broadcast program information" is a particular portion of "broadcast portion information" presented after the user presses the record key and before the user presses the playback key—the result of Dragon's proposed construction being that the claim could cover devices that record

---

[4] Pursuant to the Court's scheduling orders, the claim construction proceedings were coordinated.  Though Dish's and SXM's cases had been stayed prior to the hearing, Dish and SXM participated in the preparation of the Joint Claim Construction Brief that was filed in all ten cases. (*See* D.I. 78.)

content before the record key is pressed (*i.e.*, devices that continuously record content).  (C.A. No.

13-2058-RGA, D.I. 101 at 4–7.)  In a Memorandum Opinion dated September 19, 2015, Judge

Andrews rejected Dragon's proposed constructions, holding that the inventors disclaimed

continuous recording devices during prosecution:

> In this case, the applicants clearly and unequivocally disclaimed continuous recording devices.  I have only once seen a clearer case of prosecution disclaimer.  The Patent and Trademark Office rejected the patent six times based on U.S. Patent No. 5,134,499 ("Sata").  ([C.A. 13-2058] D.I. 94 at 27).  Sata teaches a recording device that "continuously records the video data concerning the television program of the channel tuned by the television tuner 1." ('499 patent, col. 6, 11. 47-49).  The applicants repeatedly distinguished Sata on the basis that Sata records continuously, and the claimed device does not begin recording until the user actuates the record key.  (D.I. 78 at pp. 7-8, 52-54, 58, 77).
>
> The applicants amended the claim from "said record key is first actuated to initiate storage of the program information" to "said record key is first actuated to begin a recording by initiating storage of the program information." (C.A. 13-2062 D.I. 79-3 at p. 292). The applicants explained the amendment: "Claim 1 has been further amended to recite how the structure of the instant invention begins a recording upon a first actuation of the record key . . . . Accordingly, the instant invention as claimed is further distinguished from the structure of Sata, wherein recording . . . is continuous, and never initiated or stopped . . . ." (*Id.* at p. 294).  The prosecution history is replete with such disclaimers.  (*See, e.g.*, *id.* at pp. 296-97; C.A. 13-2062 D.I. 79 at p. 243; C.A. 13-2062 D.I. 79-2 at pp. 248, 271). Plaintiff cannot now use claim construction to recapture continuous recording devices.

(C.A. No. 13-2058-RGA, D.I. 101 at 7.)  Judge Andrews relied on the same disclaimer in rejecting

Dragon's proposed constructions of two other terms: "record key" and "to begin a recording by

initiating storage of the broadcast program information in said memory unit."  (*Id.* at 12 ("As

discussed above, the applicants disclaimed continuous recording devices during prosecution.

Defendants' construction clarifies that continuous recording devices are not within the scope of

the claim.").)

5

In October 2015, Dragon's lead attorneys, Freitas Angell & Weinberg LLP ("FAW") moved to withdraw as counsel in all ten cases. The Court granted FAW's request in November 2015.

In April 2016, Dragon, Dish, SXM, and the other eight defendants stipulated to non-infringement based on the Court's claim constructions. (*See, e.g.*, D.I. 115.) Among other things, the parties agreed that "the Accused Products do not include a 'record key,' as construed by the Court," because "pressing a record key is not required to begin the recording process." (*Id.* ¶ 10.) They also agreed that "the Accused Products do not function 'to begin a recording by initiating storage of the broadcast program information in said memory unit,' as construed by the Court," because "the information that is stored after the PAUSE or PAUSE/PLAY key is actuated is, in the Accused Products, information that would have been stored whether or not the PAUSE or PAUSE/PLAY key is actuated." (*Id.* ¶ 11.) The Court ordered the stipulations and, in April 2016, entered judgments for the defendants in all ten cases. (*See, e.g.*, D.I. 116, 117.)

The Court's final judgments marked the beginning of the next stage of these cases: the parties' protracted litigation over fees and sanctions. In the first round of motions, the defendants in seven of the ten cases (but not Dish or SXM) filed motions for sanctions under Federal Rule of Civil Procedure 11.[5] The moving defendants alleged that Dragon and its counsel should be sanctioned because of their "failure to recognize an obvious prosecution history disclaimer" that was "fatal to Plaintiff's infringement theory." (*See, e.g.*, C.A. No. 13-2061-RGA, D.I. 179 at 8.) While Judge Andrews ultimately denied the motions as untimely, his Memorandum Order recalled his conclusion "that Plaintiff's proposed constructions — with respect to 'broadcast program

---

[5] (*See* C.A. No. 13-2061-RGA, D.I. 123; C.A. No. 13-2062-RGA, D.I. 133; C.A. No. 13-2063-RGA, D.I. 132; C.A. No. 13-2064-RGA, D.I. 125; C.A. No. 13-2065-RGA, D.I. 139; C.A. No. 13-2068-RGA, D.I. 135; C.A. No. 13-2069-RGA, D.I. 132.)

information,' 'record key,' and 'to begin a recording by initiating storage of the broadcast program information in said memory unit' — sought to reclaim subject matter disclaimed during prosecution" and that he had "only once seen a clearer case of prosecution disclaimer." (*Id.* at 4, 8 (entered July 12, 2016).)

On to the next round: the parties in nine of these ten cases (including Dish and SXM) filed motions for attorney's fees.[6]  Seven of those motions, including those filed by Dish and SXM, sought fees under both 35 U.S.C. § 285 and 28 U.S.C. § 1927.[7]

Meanwhile, in June 2016, the PTAB issued a final written decision in the IPR, holding that the asserted claims were unpatentable.  The PTAB construed the claims to give them "their broadest reasonable construction in light of the specification," which was the applicable standard for IPR petitions filed prior to November 13, 2018.  *Dish Network L.L.C.*, 2016 WL 3268756, at *3.  The PTAB found that some claims (including claim 1) were obvious over a combination of U.S. Patent Nos. 5,241,428 ("Goldwasser") and 5,126,982 ("Yifrach"), and that others were obvious over a combination of Goldwasser, Yifrach, and PCT Pub. WO 90/15507 ("Vogel").  *Id.* at *9 & n.2–4.

Dragon appealed the PTAB's obviousness decision to the Federal Circuit and separately appealed this Court's final judgments of non-infringement.  On November 1, 2017, the Federal

---

[6] (*See* C.A. No. 13-2061-RGA, D.I. 183; C.A. No. 13-2062-RGA, D.I. 203; C.A. No. 13-2063-RGA, D.I. 202; C.A. No. 13-2064-RGA, D.I. 195; C.A. No. 13-2065-RGA, D.I. 196; C.A. No. 13-2066-RGA, D.I. 130; C.A. No. 13-2067-RGA, D.I. 133; C.A. No. 13-2068-RGA, D.I. 205; C.A. No. 13-2069-RGA, D.I. 195.)

[7] (*See* D.I. 130 (Dish's motion seeking fees under §§ 285 and 1927); C.A. No. 13-2067-RGA, D.I. 133 (SXM's motion seeking fees under §§ 285 and 1927); C.A. No. 13-2062-RGA, D.I. 203 (filed in five cases and seeking fees under §§ 285 and 1927).)  Two of the defendants sought fees under only § 285.  (*See, e.g.*, C.A. No. 13-2061-RGA, D.I. 183 (filed in two cases and seeking fees under § 285 only).)

7

Circuit affirmed the PTAB's finding that the claims at issue were unpatentable as obvious. *Dragon Intell. Prop., LLC v. Dish Network LLC*, 711 F. App'x 993, 994 (Fed. Cir. 2017). The same day, the Federal Circuit dismissed Dragon's appeal of the final judgments entered by this Court as moot. *Dragon Intell. Prop., LLC v. Apple Inc.*, 700 F. App'x 1005, 1006 (Fed. Cir. 2017). At the time the Federal Circuit issued its rulings, the fee motions were still pending before Judge Andrews.

Dragon then moved this Court to vacate the judgments of non-infringement in all ten cases under Federal Rule of Civil Procedure 60(b) and to dismiss the cases as moot. (D.I. 159.) On September 27, 2018, Judge Andrews vacated the judgments of non-infringement, but he held that he could retain jurisdiction to resolve the defendants' fee motions. (D.I. 168 at 6–8.)

On November 7, 2018, Judge Andrews denied Dish's and SXM's motions for attorney's fees. He reasoned that the defendants were not "prevailing parties" within the meaning of 35 U.S.C. § 285 because the Court had vacated its previous judgments of non-infringement. (D.I. 170 at 2.) Judge Andrews also denied the defendants' requests for fees under 28 U.S.C. § 1927 because they failed to establish that Dragon "multiplie[d] the [district court] proceedings . . . unreasonably and vexatiously." (*Id.* at 2, 4.) Regarding § 1927, Judge Andrews noted that, "although Defendants identify behavior that [he] might properly have sanctioned under Section 285 [if the defendants were prevailing parties], the allegations do not meet the standard for a Section 1927 fees award." (*Id.* at 4.)

Dish and SXM appealed this Court's denial of their requests for fees under 35 U.S.C. § 285. On appeal, the Federal Circuit "h[e]ld that DISH and SXM are prevailing parties" within the meaning of § 285. *Dragon Intell. Prop., LLC v. Dish Network LLC*, 956 F.3d 1358, 1362 (Fed. Cir. 2020). It remanded back to this Court "for initial consideration of [Dish's and SXM's] fee motions." *Id.*

The Federal Circuit did not consider whether these cases were "exceptional" within the meaning of § 285. *Id.* Nor did it resolve the defendants' arguments (1) that any fee award should include fees incurred by the defendants in the IPR or (2) that fees should be awarded against counsel of record as jointly and severally liable with a party. *Id.* Although the Federal Circuit expressly declined to rule on either argument "in the first instance," the panel remarked that "we see no basis in the Patent Act for awarding fees under § 285 for work incurred in *inter partes* review proceedings that [Dish and SXM] voluntarily undertook." *Id.*

Dish's and SXM's fee motions—originally filed in 2016—are now back before this Court on remand. After ordering fresh briefing, Judge Andrews referred the motions to me for a Report and Recommendation. (D.I. 195.) I heard oral argument on June 28, 2021. ("Tr. __.")

## II.    LEGAL STANDARD

Section 285 of Title 35 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has defined an "exceptional" case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional is left to the discretion of the district court, which should make a case-by-case determination based on the totality of the circumstances. *Id.* One of the factors to consider in deciding whether a case is exceptional is "objective unreasonableness (both in the factual and legal components of the case)." *Id.* at 554 n.6; *see also Vehicle Operation Techs. LLC v. Ford Motor Co.*, No. 13-539-RGA, 2015 WL 4036171, at *3 (D. Del. July 1, 2015).

### III.   DISCUSSION

Dish and SXM seek fees under § 285 from Dragon and its original counsel in this infringement action, the FAW law firm and named partner Robert Freitas.

I will begin by listing the issues that I am not resolving.  First, I do not need to determine whether Dish and SXM are prevailing parties.  The Federal Circuit has already held that they are.[8] *Dragon Intell. Prop., LLC*, 956 F.3d at 1361–62.  Second, I am not going to revisit Judge Andrews's claim construction rulings or his conclusion that the inventors of the '444 patent disclaimed coverage of continuous recording devices.  Although Judge Andrews's claim construction order and opinion were not entered in the Dish and SXM cases (because they were stayed at the time), Dish and SXM participated in the joint briefing and Dragon had a full and fair chance to present its arguments against the disclaimer to Judge Andrews.  Moreover, Dragon has already stipulated to non-infringement by Dish and SXM based on those same constructions.[9] (D.I. 115 ¶¶ 9–13.)  Third, for the same reason, I do not need to decide whether Dish and SXM infringe the '444 patent under Judge Andrews's claim construction rulings.

---

[8] The Federal Circuit arrived at that conclusion notwithstanding that it appears from the docket that no judgments have been entered (because Judge Andrews vacated them) and the infringement claims have not been dismissed.

[9] Dragon and FAW argue that, when Judge Andrews vacated the judgments, he also necessarily "vacated . . . the claim construction order."  (D.I. 207 at 12.)  That is so, they say, because "[w]hen a judgment is vacated, everything that came before is also eliminated."  (*Id.* at 13; *see also* D.I. 206 at 26.)  They say it would be unfair to award fees based on Judge Andrews's claim construction rulings because those rulings are "unreviewable" as a result of the infringement cases now being moot.  (D.I. 206 at 27.)  Regardless of what I think of that argument, Judge Andrews has already rejected permutations of it on two occasions.  (*See* D.I. 192 at 3–4; D.I. 168 at 8.)

I also note that any decision of this Court that awards fees will provide an opportunity for Dragon and FAW to seek appellate review.  *Cf. Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356–57 (Fed. Cir. 2019) (affirming district court's award of fees against plaintiff based on its "ill-supported" infringement position even though infringement had not been adjudicated before the asserted claims were invalidated).

There are three issues that I must resolve with this Report and Recommendation. First, I must determine whether the cases are exceptional because they stand out from others with respect to the substantive strength of Dragon's litigating position. Second, I must determine whether Dish and SXM may recover attorney's fees that they incurred during IPR proceedings that they voluntarily undertook. Third, I must determine whether § 285 permits the Court to assess fees against a losing party's attorneys.

### A.        These cases are exceptional under 35 U.S.C. § 285.

I agree with Judge Andrews's observation that this is a very clear case of prosecution disclaimer. In light of that disclaimer, and in view of the totality of the other circumstances, these cases stand out from others with respect to the substantive strength of Dragon's infringement position.

As an initial matter, Dragon does not dispute that Dish's and SXM's accused products are continuous recording devices. Indeed, Dish stipulated that the Dish and SXM accused products did not infringe under the Court's claim construction because they were continuous recording devices. Nor does Dragon dispute that, at all relevant times, it was on notice that the accused products were continuous recording devices. (D.I. 206 at 11.) Dish and SXM point out (and Dragon does not dispute) that, prior to Dragon filing suit, it was readily apparent from publicly available user manuals and casual operation of the accused devices that they operated by continuous recording. Moreover, after Dragon filed suit and served its infringement contentions, Dish and SXM sent separate letters to Dragon's counsel explaining that their products were continuous recording devices and could not infringe due to a prosecution disclaimer. Dragon nevertheless continued to press its infringement claims.

11

Dragon does dispute the legal question of whether there was a prosecution disclaimer, but Judge Andrews has already held that there was.[10]   Judge Andrews also remarked that he has "only once seen a clearer case of prosecution disclaimer."  (C.A. No. 13-2058-RGA, D.I. 101 at 7.)

---

[10] Having reviewed the prosecution history, I agree with Judge Andrews.  To overcome the examiner's rejection of claim 1 as obvious over the Sata reference, the applicants amended the claim to specify that the claimed apparatus "begin[s] a recording by initiating storage" when the record key is actuated.  (*See, e.g.*, D.I. 212, Ex. B at A0109.)  The applicants explained that

> Claim 1 has been further amended to recite how the structure of the instant invention begins a recording upon a first actuation of the record key . . . .  Accordingly, the instant invention as claimed is further distinguished from the structure of Sata, wherein recording . . . is continuous, and never initiated or stopped[.]

(*Id.* at A0100.)  In short, the applicants distinguished the claim from Sata because Sata disclosed a device that records continuously.  That is a clear and unambiguous disclaimer of continuous recording devices.

Consistent with their view that they are entitled to a do-over on a clean slate, Dragon and FAW each devote significant portions of their fee briefs to rearguing claim construction.  They contend that their positions on claim construction and prosecution disclaimer are either correct, or that they are at least not so wrong as to be unreasonable.  (D.I. 206 at 11–26; D.I. 207 at 14–31.)  Because I have reviewed the prosecution history and agree with Judge Andrews regarding the disclaimer, and because I think that these cases stand out from others with respect to the substantive strength of Dragon's litigating position, I render no opinion about FAW's argument that Judge Andrews must entertain Dragon's and FAW's most recent claim construction arguments, some of which are new.  (*See* Tr. 55:9–57:21.)  But I do note that Dragon and FAW are incorrect to the extent they contend that the Court cannot base an exceptional case finding on an issue that has not been litigated to judgment.  *See Thermolife Int'l*, 922 F.3d at 1356–57.

Dragon's fee motion briefing points out that there are differences between Sata and the claimed invention besides continuous recording.  Putting aside the fact that Dragon failed to raise many of its points to Judge Andrews in the claim construction briefing (where one might have expected Dragon to put forth its strongest arguments), the fact that there are other distinctions between the claimed invention and Sata does not preclude a finding of disclaimer.  "[A] disavowal, if clear and unambiguous, can lie in a single distinction among many."  *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1377 (Fed. Cir. 2008); *see also Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007) ("[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well."); *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005) ("[W]e have not allowed [patentees] to assert that claims should be interpreted as if they had surrendered only what they had to.").

Dragon also makes a convoluted claim construction argument based on the PTAB's findings in the IPR.  The argument, to the extent I can understand it, goes like this:  The PTAB found that claim 1 of the '444 patent was obvious over Goldwasser and Yifrach.  *Dish Network*,

12

I conclude that the totality of the particular circumstances here makes these cases stand out from others with respect to Dragon's substantive litigating position: the disclaimer is very clear; it precludes a finding of infringement by any of the defendants' accused products; the information demonstrating non-infringement by the accused products was available to Dragon prior to filing the suit; the defendants also put Dragon on notice of the issue after the complaints were filed; and Dragon nevertheless continued to litigate.

Accordingly, I agree with Dish and SXM that the cases are exceptional and that they should be awarded attorney's fees.  *See Thermolife Int'l*, 922 F.3d at 1356–62 (holding that district court did not abuse discretion in awarding fees when plaintiff could have discovered through an adequate pre-suit investigation that the defendant did not infringe); *see also id.* at 1358 ("[T]he presence of [early notice of the defects in plaintiffs' infringement assertions], followed by continuation of litigation, can be a factor in justifying an award of attorney's fees[.]").

### B.   Dish and SXM may not recover fees incurred in the IPR.

The next issue I must decide is whether Dish and SXM may recover attorney's fees that they incurred in connection with the IPR proceedings.[11]  The Federal Circuit previously declined

---

2016 WL 3268756, at *9.  According to Dragon, Goldwasser and Yifrach disclose continuous recording devices.  Dragon contends that, since the PTAB could not have found that claim 1 was obvious unless all of its elements are present in the prior art combination, it follows that claim 1 must cover continuous recording devices.  That argument fails for multiple reasons not the least of which is that the PTAB did not consider whether there was a prosecution disclaimer and instead gave the '444 patent claims "their broadest reasonable construction in light of the specification." *Dish Network*, 2016 WL 3268756, at *3.  I similarly reject Dragon's argument that Dish's and SXM's characterization of Goldwasser in the IPR proceedings somehow "estops" them from asserting a disclaimer here.

[11] The record before the Court does not contain a current estimate of the amount of fees at issue.  In 2016, Dish estimated its fees as approximately $1.1 million for both the district court litigation and the IPR proceedings.  (D.I. 131 at 16.)  It is possible (but not clear from the record) that a significant percentage of those fees were incurred solely in connection with the IPR proceedings.  (Tr. 20:24–21:19, 62:25–63:4, 63:18–64:19.)  In 2016, SXM estimated its fees for both proceedings as $1.52 million.  (C.A. No. 13-2067, D.I. 140 at 15.)

to answer that question, remanding the cases to this Court instead for "initial consideration of [the] fee motions." *Dragon Intell. Prop.*, 956 F.3d at 1362.   Notwithstanding, the Federal Circuit remarked that it "[saw] no basis in the Patent Act for awarding fees under § 285 for work incurred in *inter partes* review proceedings that the Appellants voluntarily undertook[.]"   *Id.*   That remark is *dicta*, but I agree that there is no basis in the Patent Act for awarding fees incurred in PTAB proceedings that Dish and SXM voluntarily undertook.

The text of 35 U.S.C. § 285 says nothing about giving the district court the ability to award fees incurred by a prevailing party in a separate administrative proceeding.   The statute simply states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   35 U.S.C. § 285.   The statute appears in the chapter of Title 35 concerning remedies in infringement actions.   35 U.S.C., Chap. 29, §§ 281–299 ("Remedies for Infringement of Patent; and Other Actions").   And there is no dispute that the "cases" to which the statute refers are judicial proceedings.   In other words, IPR proceedings are not "cases."   *Amneal Pharms. LLC v. Almirall, LLC*, 960 F.3d 1368, 1371–72 (Fed. Cir. 2020).

Dish and SXM do not go so far as to argue that a party who prevails in an IPR can then turn around and file an action in district court to seek fees under § 285.   But they do argue that a defendant that is sued in district court and is a prevailing party can, in that district court case, be awarded the fees it incurred in a separate IPR that it voluntarily sought if the reason it asked for the IPR is because it was sued in district court.

The Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* is not relevant to the issue here.   There, the Supreme Court stated that the text of § 285 "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases."   572 U.S. at 553.   But in that case, the Supreme

Court dealt only with the question of what circumstances make a patent case "exceptional" under § 285. *Id.* at 553–54. The Court did not consider the scope of attorney's fees recoverable under § 285. And saying that a district court has broad discretion to award fees whenever it concludes that a patent case is exceptional is not the same thing as saying that a court can award attorney's fees for time that was not expended litigating the "case."

Dish and SXM point to the Federal Circuit's opinion in *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565 (Fed. Cir. 1988). Whether that case was correctly decided is, of course, not for me to say. But it is distinguishable. There, the Federal Circuit held that a defendant sued for infringement in district court could recover under § 285 the fees it incurred opposing the patentee's PTO reissue proceedings, where the district court stayed the infringement case over the defendant's objection and the defendant's "participation in [the] reissue application proceedings was not optional." *Id.* at 1568. In so holding, the Federal Circuit distinguished the Supreme Court's opinion in *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234 (1985), which held that attorney's fees incurred while pursuing optional administrative proceedings were not compensable under a fee-shifting statute in a later district court case, even where the party seeking fees ultimately prevailed in the district court litigation. *Id.* at 240–41.

*PPG* does not help Dish and SXM here because they acknowledge that the IPR proceedings were optional. (*See* D.I. 199 at 23; Tr. 34:5–14.) And my conclusion that fees incurred in the IPR proceedings are not recoverable in this litigation is also consistent with, if not required by, the Supreme Court's decision in *Webb*.[12]

---

[12] I suspect that other analogous cases exist but FAW did not cite *Webb* or any other case applying it. Dragon did not respond to the defendants' arguments regarding IPR attorney's fees.

Dish and SXM also cite the Supreme Court's decision in *Sullivan v. Hudson*, 490 U.S. 877 (1989), but that case is inapposite. *Hudson* held that an applicant for social security benefits could obtain fees under the Equal Access to Justice Act for work performed before the Social Security Administration after a reviewing district court remanded the applicant's case to the agency for further proceedings. *Id.* at 892–93. The statutory scheme governing district court review of Social Security benefit determinations is not at all comparable to the situation here. This Court doesn't review IPR decisions, and this Court didn't remand anything to the PTAB. The PTAB proceeding was optional.[13]

Dish and SXM contend that, by not allowing them to recover their IPR fees under § 285, the Court is in effect punishing them for choosing the more efficient route to resolve these cases. My answer to that is this: raise it with Congress. Federal courts don't make policy. Congress could have provided for such fee shifting but it didn't. This Court cannot change that.[14]

---

[13] Dish and SXM also cite three district court cases that awarded fees under § 285 for work performed before the PTO, but I am not persuaded by their reasoning. *See Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 13-06787, 2018 WL 7504404 (C.D. Cal. Dec. 27, 2018), *rev'd on other grounds by* 960 F.3d 1373 (Fed. Cir. 2020); *My Health, Inc. v. ALR Techs., Inc.*, No. 16-00535, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017); *Deep Sky Software, Inc. v. Southwest Airlines Co.*, No. 10-1234, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015).

    *My Health* cited no legal authority supporting its award of IPR fees. *My Health*, 2017 WL 6512221, at *6. *Munchkin* relied on *My Health* and the Supreme Court's decision in *Fox v. Vice*, 563 U.S. 826 (2011), but *Fox* had to do with how a court should calculate a fee award to a prevailing defendant when a plaintiff brought a mix of frivolous and non-frivolous claims. *Munchkin*, 2018 WL 7504404, at *7; *see Fox*, 563 U.S. at 835–39. *Fox* did not assess whether a district court may rely on a fee-shifting statute to award fees incurred by a party in an optional administrative proceeding.

    *Deep Sky Software* relied on the Federal Circuit's decision in *PPG* to award fees under § 285 for legal services performed during an *inter partes* reexamination, 2015 WL 10844231, at *2, but, as already explained, *PPG* is distinguishable.

[14] I note that fees are available in IPR proceedings under certain circumstances. *See* 37 C.F.R. § 42.12 (discussing the sanctions available in proceedings before the PTAB, including "[a]n order providing for compensatory expenses, including attorney fees").

I recommend that the Court deny Dish's and SXM's fee requests to the extent they seek fees for work performed in the optional IPR proceedings.[15]

### C.    The Court cannot assess fees against Dragon's former counsel under § 285.

Dish and SXM also want FAW and Mr. Freitas to be found jointly and severally liable for any fee award.  To be clear, Dish and SXM do not argue that FAW or Mr. Freitas had any relationship with Dragon aside from their attorney-client relationship.[16]  Dish and SXM also rely solely on 35 U.S.C. § 285 as the basis for their request.[17]  I recommend rejecting that request.

It cannot seriously be disputed that 35 U.S.C. § 285 is generally understood to permit attorney's fees awards against the losing *parties* in a patent infringement suit, not their attorneys. Evidencing that general understanding is the fact that the Patent Act has contained a fee-shifting provision since 1946, and the defendants here haven't pointed to a single case where a court relied on it to assess fees against the losing side's attorneys.  *See* 35 U.S.C. § 70 (1946 ed.).

The parties agree that there is no binding authority on this issue, but the Federal Circuit has held in two non-precedential opinions that § 285 does not support a fee award against counsel.

---

[15] I anticipate that there will be a future dispute about whether some of the work performed during the pendency of the IPR proceedings should be reimbursed on the basis that the work product was also necessary for the district court proceedings.  (Tr. 63:18–64:19.)  That issue hasn't been briefed, so I don't decide it here.  The Court will have to sort it out when it receives Dish's and SXM's fee applications.  I will say that it is presently unclear to me how Dish and SXM could recover fees incurred while the district court cases were stayed.

[16] (Tr. 30:22–31:7 ("THE COURT: You made no showing, have you, that Mr. Freitas or his firm are, essentially, the Wizard of Oz behind the curtain and are really behind Dragon, right? You're not making an argument that I should pierce the corporate veil, and when I do, I'm going to find Mr. Freitas and his law firm, right?  That's not an argument that you made.  [DISH'S COUNSEL]: We haven't made that argument.").

[17] As explained above, Judge Andrews has already denied the requests for fees under 28 U.S.C. § 1927.  Dish and SXM's recent briefing pointed out that the Court has inherent authority to assess fees against counsel (D.I. 199 at 26), but they clarified at the hearing that they were not seeking fees pursuant to the Court's inherent authority.  (Tr. 29:10–20.)

*Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 Fed. App'x 219, 222 (Fed. Cir. 2003) (non-precedential) (vacating district court's finding that counsel and party were jointly and severally liable for fee award because "[c]ounsel . . . is not liable for fees awarded under § 285; it can only be liable for excess fees awarded under § 1927"); *Interlink Elecs. v. Incontrol Solutions, Inc.*, 215 F.3d 1350, at *3 (Fed. Cir. 1999) (table) ("[S]ection 285 imposes costs on a party, not an attorney."). Those decisions are consistent with other non-binding authority. *See, e.g., Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 801 (4th Cir. 1975) ("[W]e think it would be unwise to read the statute so broadly that it would expose the members of the patent bar to potential liability for the sanctions of Section 285."); *My Health, Inc. v. ALR Techs., Inc.*, No. 16-535, 2019 WL 2395409, *3 (E.D. Tex. June 5, 2019) (citing *Phonometrics* and denying request for fees from opposing counsel under § 285), *aff'd*, 2020 WL 122933 (E.D. Tex. Jan. 10, 2020); *Advanced Video Techs. LLC v. HTC Corp.*, No. 11-6604, 2015 WL 7621483, at *5 (S.D.N.Y. Aug. 28, 2015) ("Unlike other types of sanctions, sanctions under § 285 may not be assessed against counsel— only against a party"); *Tech. Properties Ltd. LLC v. Canon Inc.*, No. 14-3640, 2017 WL 2537286, at *5 (N.D. Cal. Jan. 26, 2017), *aff'd*, 718 F. App'x 987 (Fed. Cir. 2018).

I agree with those cases. Unlike 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11, which expressly apply to attorneys, the text of § 285 says nothing about taxing fees against the losing party's attorneys. In support of their argument that § 285 authorizes such an award, Dish and SXM point to the Supreme Court's statement in *Octane Fitness* that the text of § 285 "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." 572 U.S. at 553. But, again, that case dealt with the question of *when* fees may be awarded; it did not consider *from whom* they may be recovered.

Courts assessing similar fee-shifting statutes have declined to construe them to authorize a fee award against attorneys where the statutory text does not mention attorney liability. *See, e.g., Peer v. Liberty Life Assurance Co. of Bos.*, 992 F.3d 1258, 1263 (11th Cir. 2021) (holding that ERISA statute stating that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" does not authorize a court to require an attorney to pay another party's fees); *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 461–62 (5th Cir. 2020) (holding that, consistent with the interpretation of similar fee-shifting statutes, a fee-shifting provision of the FDCPA "permits fee awards only against parties, not against their counsel"); *In re Crescent City Ests., LLC*, 588 F.3d 822, 825 (4th Cir. 2009) (citing cases and applying a presumption that fee-shifting statutes apply only to parties unless they expressly state otherwise). It is true that some fee-shifting statutes assessed by the courts have legislative histories that more clearly evidence a lack of Congressional intent to impose attorney liability,[18] but not all of them.

---

[18] *E.g., Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761 (1980) (discussing 42 U.S.C. § 1988).

Dish and SXM agree that nothing in the legislative history of the Patent Act supports their position that § 285 authorizes an award of fees against opposing counsel. (Tr. 26:5–11.) If anything, the legislative history weighs against their position. As originally enacted, the Patent Act's fee-shifting provision was part of the same section that enumerated the remedies in patent cases:

> The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions . . .; and upon a judgment being rendered in any case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor, together with such costs, and interest, as may be fixed by the court. *The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgement on any patent case.*

35 U.S.C. § 70 (1946 ed.). The inclusion of authority to award fees in a section listing remedies naturally suggests that Congress intended the losing party (and not its attorney) to pay attorney's fees, since it is the losing party that is responsible for patent infringement (not its attorney). When the Patent Act was amended in 1952 and § 285 was codified in its current form, Congress kept it

And I agree with those courts that have concluded that a fee-shifting statute that does not mention attorney payment of fee awards cannot be read to authorize it, absent some evidence of Congressional intent to subject attorneys to liability.[19]

Dish and SXM point to cases in which courts awarded fees against non-parties.  But none of those cases imposed liability against a non-party because they were the party's attorney.  *See, e.g., Alliance for Good Government v. Coalition for Better Government*, 998 F.3d 661, 664–66 (5th Cir. 2021) (affirming district court's assessment of fees against party's officer, noting "the general principle that 'an officer is individually liable for any tortious conduct that he committed in connection with his corporate duties'"); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 842–47, 852–54, 859–62 (E.D. Tex. 2017) (finding that non-party created and undercapitalized an "empty shell" plaintiff for the purpose of insulating himself from a fee award).

Dish and SXM also point out that they are unlikely to ever collect anything from Dragon: its current corporate status is "Cease Good Standing" due to its non-payment of Delaware taxes. (D.I. 199 at 27.)  Dish and SXM argue that their inability to recover fees against opposing counsel under § 285 would result in a "nefarious loophole in patent cases."  (D.I. 215 at 12.)  That is so, they say, because "[a]ttorneys who are responsible for exceptional litigation behavior in their

---

within the chapter setting forth the remedies for patent infringement.  *See* Patent Act, Pub. L. No. 82-593, 66 Stat. 792, 812–13 (1952).  And the Supreme Court has recognized that the new § 285 was not intended to depart significantly from the old § 70.  *See Octane Fitness*, 572 U.S. at 549 n.2.

[19] Dish and SXM point to Federal Rule of Appellate Procedure 38, which some appellate courts have relied on to impose awards against attorneys who prosecute frivolous appeals, even though the rule is silent on who bears liability.  I agree with the Fourth Circuit that Federal Rule of Appellate Procedure 38 does not call into question the general understanding that fee-shifting statutes authorize awards against parties, not attorneys.  *Crescent City Ests.*, 588 F.3d at 829, n.*.

representation of under-capitalized, shell companies can insulate themselves and their clients from fee liability." (*Id.*)

If Dragon's owners have abused the corporate form or intentionally undercapitalized the company to avoid paying a fee award, there are theories under which they can be held accountable. But Dish and SXM don't raise such theories here. And Dish and SXM have not made the argument that FAW or Mr. Freitas could be liable under some sort of a veil-piercing or alter-ego theory, as the record suggests that their only relationship with Dragon was an attorney-client relationship.

The defendants express a legitimate concern about holding attorneys accountable where they have engaged in blameworthy conduct. But courts already "have at their disposal Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and their inherent powers, all of which may permit awards of attorneys' fees against attorneys whose actions compromise standards of professional integrity and competence." *Crescent City Ests.*, 588 F.3d at 831.

I recommend that the Court deny Dish's and SXM's requests to the extent they seek to hold FAW and Mr. Freitas jointly and severally liable with Dragon.

## IV.    CONCLUSION

For the reasons set forth above, I recommend that Dish's and SXM's Motions to Declare Case Exceptional Pursuant to 35 U.S.C. § 285 be GRANTED-IN-PART and DENIED-IN-PART. The Court should grant the motions to the extent they seek attorney's fees from Dragon for time spent litigating these cases. The Court should deny the motions to the extent they seek reimbursement of fees incurred in the IPR proceedings and to the extent they seek to hold Dragon's former counsel jointly and severally liable with Dragon for any fee award.

Fee applications are not supposed to result in a second major litigation. It's too late for that here—significant party and judicial resources have been expended on fee requests. It's time

to wrap this up.  I recommend that the Court order Dish and SXM to submit a fee accounting within 14 days that accords with my recommendations.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rules of Civil Procedure 54(d)(2)(D) and 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: August 16, 2021

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE