IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRAGON INTELLECTUAL PROPERTY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 13-2066 (RGA) ) ) |
| DISH NETWORK L.L.C., | ) **REDACTED -** ) **PUBLIC VERSION** ) |
| Defendant. | ) |

## DISH'S SUBMISSION FOR ITS ATTORNEYS' FEES AND COSTS

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007
(650) 739-7500

Ali Dhanani
Bradley Bowling
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001
(202) 639-7700

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant DISH Network L.L.C.*

Original Filing Date: December 1, 2021
Redacted Filing Date: December 8, 2021

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | RELEVANT PROCEDURAL HISTORY | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | DISH IS ENTITLED TO ALL OF ITS FEES FOR THE DISTRICT COURT WORK FROM THE CASE'S INCEPTION | 2 |
| IV. | DISH'S LAWYERS' BILLING RATES WERE REASONABLE | 4 |
| | A. Calculating Reasonable Fees for Patent Infringement Cases | 4 |
| | B. Evidence Establishing the Reasonableness of DISH's Fees | 6 |
| V. | THE NUMBER OF HOURS SPENT BY DISH'S ATTORNEYS IS REASONABLE | 9 |
| VI. | THE *JOHNSON* FACTORS WEIGH IN FAVOR OF SLIGHTLY HIGHER BILLABLE RATES FOR DISH ATTORNEYS | 13 |
| VII. | THE COURT SHOULD AWARD DISH ITS EXPENSES | 14 |
| VIII. | CONCLUSION | 15 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alto-Shaam, Inc. v. Manitowoc Co.*,
   No. 7:09-CV-018-O, 2012 WL 12978015 (N.D. Tex. Feb. 2, 2012) ........................................6

*Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*,
   C.A. No. 09-515-SLR, 2013 WL 936451 (D. Del. Mar. 11, 2013) ..................................4, 5, 7

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...............................................................................................2, 4, 10

*Brytus v. Spang & Co.*,
   203 F.3d 238 (3d Cir. 2000) ..................................................................................................2

*Bywaters v. United States*,
   670 F.3d 1221 (Fed. Cir. 2012) ..............................................................................2, 4, 13, 14

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
   723 F.2d 1573 (Fed. Cir. 1983) ............................................................................................14

*Chalumeau Power Sys. LLC v. Alcatel-Lucent USA Inc.*,
   C.A. No. 11-1175 (RGA), 2014 WL 5814062 (D. Del. Nov. 6, 2014) ..............................4, 11

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991) .............................................................................................................2, 4

*Goodyear Tire & Rubber Co. v. Haeger*,
   137 S. Ct. 1178 (2017) ..........................................................................................................2

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................................14

*Howes v. Med. Components, Inc.*,
   761 F. Supp. 1193 (E.D. Pa. 1990) ......................................................................................13

*iLOR, LLC v. Google, Inc.*,
   No. CIV.A 5:07-109-JMH, 2009 WL 3367391 (E.D. Ky. Oct. 15, 2009) ...........................4, 5

*In re ASARCO LLC*,
   No. 05-21207, 2011 WL 2974957 (Bankr. S.D. Tex. July 20, 2011) ....................................6

*Innovention Toys, LLC v. MGA Ent., Inc.*,
   No. 08-6510, 2014 WL 1276413 (E.D. La. Feb. 24, 2014) ....................................................4

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  426 F.3d 694 (3d Cir. 2005)..........................................................................................5, 9

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988)....................................................................................1, 7, 14

*Microstrategy Inc. v. Crystal Decisions, Inc.*,
  555 F. Supp. 2d 475 (D. Del. 2008)........................................................................................7

*Microstrategy Inc. v. Crystal Decisions, Inc.*,
  586 F. Supp. 2d 256 (D. Del. 2008)........................................................................................1

*Philips Elecs. N. Am. Corp. v. Compo Micro Tech., Inc.*,
  No. 02-123, 2006 WL 3020724 (D. Del. Oct. 23, 2006)...........................................11, 14, 15

*Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*,
  297 F.3d 253 (3d Cir. 2002)....................................................................................................9

*Pub. Interest Research Group of N.J., Inc. v. Windall*,
  51 F.3d 1179 (3d Cir. 1995).........................................................................................6, 9, 13

*Rath v. Vita Sanotec, Inc.*,
  C.A. No. 17-953 (MN), 2020 WL 5877597 (D. Del. Oct. 2, 2020) ...................................5, 12

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*,
  67 F. Supp. 3d 637 (D. Del. 2014)..........................................................................................3

*Vehicle Operation Techs. LLC v. Ford Motor Co.*,
  C.A. No. 13-539-RGA, 2015 WL 4036171 (D. Del. July 1, 2015).........................................2

*Waterkeeper All., Inc. v. Spirit of Utah Wilderness, Inc.*,
  No. 10CIV1136NSRLMS, 2016 WL 11483851 (S.D.N.Y. Sept. 14, 2016)...........................6

*Yahoo!, Inc. v. Net Games, Inc.*,
  329 F. Supp. 2d 1179 (N.D. Cal. 2004) ................................................................................10

**STATUTES**

35 U.S.C. § 285...........................................................................................................1, 12, 13

Pursuant to the Court's November 8, 2021 Order (D.I. 227) instructing Defendant DISH Network L.L.C. ("DISH") to submit "a fully-supported request for the appropriate amount of fees," DISH hereby submits this submission, with the accompanying declaration of Jamie R. Lynn ("Lynn Decl.") and attached exhibits. The billing report attached to the Lynn Declaration establishes that DISH incurred attorneys' fees of ▇▇▇▇▇▇ and expenses of ▇▇▇▇▇▇ in defending against Dragon's frivolous patent infringement claim through October 31, 2021. The amounts provided are those billed by Baker Botts L.L.P. ("Baker Botts"), lead counsel in this matter; and Morris, Nichols, Arsht & Tunnell ("Morris, Nichols"), Delaware counsel. In preparing this submission, DISH incurred an additional ▇▇▇▇▇▇ in fees incurred by Baker Botts in November 2021.[1] DISH, therefore, respectfully requests a total award of attorneys' fees and costs in the amount of ▇▇▇▇▇▇.

## I. RELEVANT PROCEDURAL HISTORY

Dragon filed this case on December 20, 2013. Declaration of Jamie R. Lynn ("Lynn Decl.") ¶ 2.[2] The long and complicated procedural posture of this case is summarized in the Lynn Declaration (¶¶ 2-10).

## II. LEGAL STANDARD

"The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). Under the most widely endorsed method for calculating attorneys' fees (the "lodestar" approach), the court multiplies a reasonable hourly rate by the number of hours reasonably expended on the case,

---

[1] "Awards under § 285 include the fee for the reasonable time expended in preparing the elaborate fee application and briefs filed herein." *Microstrategy Inc. v. Crystal Decisions, Inc.*, 586 F. Supp. 2d 256, 262 (D. Del. 2008) (internal quotations omitted).
[2] All exhibits referenced herein are attached to the Lynn Declaration.

1

applying Federal Circuit law. *See Bywaters v. United States*, 670 F.3d 1221, 1225-28 (Fed. Cir. 2012); *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). As the prevailing party, DISH bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

## III. DISH IS ENTITLED TO ALL OF ITS FEES FOR THE DISTRICT COURT WORK FROM THE CASE'S INCEPTION

DISH is entitled to all fees spent for work related to the district court proceeding from the inception of this case because the lawsuit should never have been brought in the first place. In *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017), the Supreme Court explained that an award of attorneys' fees must be related to the offending party's misconduct. In exceptional cases, which this is, the trial court is permitted to "shift all of a party's fees, *from either the start* or some midpoint of a suit, in one fell swoop." *Id.* (emphasis added). For example, when "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." *Id.* at 1188. The ultimate test is whether the fees "would not have been incurred except for the misconduct." *Id.* And this Court has already held that filing a patent infringement suit, where "the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for . . . awarding costs, attorney fees, and expenses to the accused infringer." *Vehicle Operation Techs. LLC v. Ford Motor Co.*, C.A. No. 13-539-RGA, 2015 WL 4036171, at *3 (D. Del. July 1, 2015). Given the "need to ensure that such abuses [are] not repeated," the Court is within its discretion to award fees from a case's inception when the case should not have been brought in the first place. *Cf. Chambers v. Nasco, Inc.*, 501 U.S. 32, 56-57 (1991).

Dragon's misconduct occurred from the case's inception, when it filed its Complaint on December 20, 2013 having every reason to know DISH's products did not infringe. *See* D.I. 218

2

at 11, 13. For patent infringement lawsuits, the ambit of an objectively reasonable pre-suit investigation includes a review and understanding of the prosecution history of the patent being asserted, as well as reasonably available public materials concerning the allegedly infringing products. *See Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 651 (D. Del. 2014) (finding that an "objectively reasonable pre-suit investigation would have led an attorney" to "a clear, unambiguous disavowal of claim scope" in the prosecution history). Specifically, by the time it filed its Complaint, Dragon already knew about, or a reasonable investigation would have revealed: (1) multiple instances in the '444 Patent's prosecution history where the applicant expressly disclaimed continuous recording; and (2) ample publicly available proof that the accused products continuously record. D.I. 218 at 11, 13.

Here, the disclaimer of continuous recording would have been virtually impossible to overlook or misinterpret. Indeed, the Court has already (on three occasions) found this to be the case. D.I. 101 at 7 ("In this case, the applicants clearly and unequivocally disclaimed continuous recording devices. I have only once seen a clearer case of prosecution disclaimer."); D.I. 218 at 11, 13; D.I. 226 at 4-5. And Dragon still sued even though the non-infringing nature of DISH's products was evident from both DISH's public user manuals and from the use of DISH's publicly available products. *See* D.I. 206 at 11. Dragon filed suit fully knowing how the accused products operated.

The obvious disclaimer in its own patent's prosecution history, combined with Dragon's admitted pre-suit knowledge of the accused products' operation, rendered Dragon's claims objectively baseless from December 20, 2013—the day it first filed its Complaint. Every dollar DISH spent from that day forward for district court work in this litigation is a direct result of

3

Dragon's exceptional behavior. Accordingly, DISH is entitled to all fees spent for district court work from the inception of this case. *Cf. Chambers*, 501 U.S. at 56-57.

## IV. DISH'S LAWYERS' BILLING RATES WERE REASONABLE

### A. Calculating Reasonable Fees for Patent Infringement Cases

Under the lodestar inquiry, the first step is to determine the reasonable hourly rate. The Supreme Court has instructed that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. "A reasonable attorney's fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Id.* at 897 (internal quotations and punctuation omitted). The general rule in non-patent cases is that the "relevant community" is defined by the forum in which the case was pending. *See Bywaters*, 670 F.3d at 1233-34. In patent cases, however, the "abundant" case law "allows for the use of national or specialty rates, sometimes referred to as those of an 'out-of-town specialist,' in the field of patent law and other complex litigation." *Innovention Toys, LLC v. MGA Ent., Inc.*, No. 08-6510, 2014 WL 1276413, at *2 (E.D. La. Feb. 24, 2014) (citing cases). This Court generally uses a forum rate "governed by the rate for Delaware intellectual property attorneys." *Chalumeau Power Sys. LLC v. Alcatel-Lucent USA Inc.*, C.A. No. 11-1175 (RGA), 2014 WL 5814062, at *2 (D. Del. Nov. 6, 2014); *but see Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, C.A. No. 09-515-SLR, 2013 WL 936451, at *3 (D. Del. Mar. 11, 2013) (defining "relevant community" as "outside counsel handling a patent infringement case in Delaware").[3]

However, "[i]f a prevailing party had good reason for using non-local counsel, then the comparison may be to prevailing rates in the attorney's business location." *iLOR, LLC v. Google*,

---

3 Indeed, the national character of patent litigation is particularly true in this Court, which has among the busiest patent dockets in the country. *See* Lynn Decl. ¶ 54; Ex. D.

4

*Inc.*, No. CIV.A 5:07-109-JMH, 2009 WL 3367391, at *5 (E.D. Ky. Oct. 15, 2009), *rev'd on other grounds*, 631 F.3d 1372 (Fed. Cir. 2011). These exceptions include "when the need for 'special expertise of counsel from a distant district'" is shown. *Rath v. Vita Sanotec, Inc.*, C.A. No. 17-953 (MN), 2020 WL 5877597, at *4 (D. Del. Oct. 2, 2020) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005)).

Here, DISH's use of national and Delaware counsel is reasonable. DISH is a telecommunications equipment company organized and existing under the laws of the State of Colorado with its principal place of business in Englewood, Colorado. Baker Botts has represented DISH in intellectual property matters, including patent infringement litigations ▌. Lynn Decl. ¶ 20. ▌ demonstrates its status as "specialists in the field of intellectual property—which is, by its very nature, national and not necessarily regional in scope." *iLOR*, 2009 WL 3367391, at *5. Courts have recognized that use of primary national counsel in patent litigations, "even at rates which well exceeded that of local counsel . . . was justified [where] [t]he attorneys were clearly specialists in the field of intellectual property" particularly where national counsel was "clearly intimately aware of the [accused] product, its parameters and limitations." *Id.* Thus, the "relevant community" here should be defined as "outside counsel handling a patent infringement case in Delaware" and therefore the hourly rates should include consideration of forums outside Delaware. *Asahi Glass Co. v. Guardian Indus. Corp.*, C.A. No. 09-515-SLR, 2013 WL 936451, at *3 (D. Del. Mar. 11, 2013).

The Plaintiff in this case, Dragon Intellectual Property, LLC ("Dragon"), purported to be a Delaware limited liability company. D.I. 1 ¶ 2. It was formed in 2012 by its sole owner, Mr. Kai Zhu—a self-identified "patent litigation attorney running a small plaintiff company" and

5

"President & General Counsel" of Dragon—but has ceased to remain in good standing in the State of Delaware. Lynn Decl. ¶ 2. At the same time this lawsuit against DISH was filed, Dragon filed nine other patent infringement lawsuits against Sirius XM Radio Inc., Apple, Inc., AT&T Services, Inc., Charter Communications Inc., Comcast Cable Communications LLC, Cox Communications Inc., DirecTV LLC, Time Warner Cable Inc., and Verizon Communications Inc. in separate complaints. Against that background, it was eminently reasonable (if not necessary) for DISH to seek representation from a national law firm with a strong reputation in patent defense litigation. Indeed, each and every one of the other defendants sued by Dragon also hired national counsel.

### B. Evidence Establishing the Reasonableness of DISH's Fees

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Pub. Interest Research Group of N.J., Inc. v. Windall* ("*PIRG*"), 51 F.3d 1179, 1185 (3d Cir. 1995). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Lynn Decl. ¶ 20.

The billing rates charged by Baker Botts have already been found to be reasonable in a number of instances. *See, e.g.*, *Alto-Shaam, Inc. v. Manitowoc Co.*, No. 7:09-CV-018-O, 2012 WL 12978015, at *6 (N.D. Tex. Feb. 2, 2012) (finding rates in patent infringement dispute reasonable); *Waterkeeper All., Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10CIV1136NSRLMS, 2016 WL 11483851, at *2 (S.D.N.Y. Sept. 14, 2016), *report and recommendation adopted*, No. 10CV1136NSRLMS, 2016 WL 6083986 (S.D.N.Y. Oct. 17, 2016) (finding rates in trademark infringement dispute reasonable); *In re ASARCO LLC*, No. 05-21207, 2011 WL 2974957, at *17, 20 (Bankr. S.D. Tex. July 20, 2011), *aff'd in part, rev'd in part and remanded*, 477 B.R. 661 (S.D. Tex. 2012) (Hanen, J.), *rev'd on other grounds*, 135 S. Ct. 2158 (2015).

A summary of the billing rates, hours billed, and experience of the Baker Botts attorneys, paralegals, and staff that were billed to this matter is provided in the Lynn Declaration. *See* Lynn Decl. ¶¶ 37-50.

Courts in this District (as well as the Federal Circuit) have relied on data concerning national billing practices and rates for patent litigators to evaluate the reasonableness of fee requests in patent cases. *See, e.g.*, *Mathis*, 857 F.2d at 755-56; *Asahi Glass*, 2013 WL 936451, at *3; *Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d 475, 482-83 (D. Del. 2008). Three items of evidence support the reasonableness of Baker Botts's billing rates: (1) overall cost-of-defense of patent litigation reported by American Intellectual Property Law Associations Report of the Economic Survey for 2013 ("AIPLA Report"); (2) billing rates from the AIPLA survey for intellectual property litigators from 2014-2021 that practice at law firms having over 150 full time intellectual property lawyers; and (3) reports from a real-time billing monitoring tool called PeerMonitor®. Each is summarized below.

*First*, the AIPLA Report is a biannual survey that "examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services." Ex. M-1 at 1. The AIPLA Report contains information regarding typical costs of patent litigation as well as national average billing rates. The data on the typical costs of patent litigation is broken out by year and reported both (1) through the end of discovery, and (2) inclusive of discovery, motions, pretrial, trial, post-trial, and appeal. For patent infringement litigations brought by a non-practicing entity with between $10 and $25 million at stake, the median litigation costs (including all attorneys' fees and expenses) inclusive of discovery, motions, and claim construction (but not including pre- and post-trial or appeal) was ███████████████████████████████. Lynn Decl. ¶ 56. Accordingly, DISH's total fee

expenditure for this case ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ creates a strong presumption that the requested fees are reasonable.

*Second*, in addition to the overall cost-of-defense, the AIPLA Reports contain national statistics for billing rates for all intellectual property litigation. According to the AIPLA, for law firms that have over 150 full-time intellectual property lawyers ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*[4]

*Third*, a PeerMonitor® report is attached to the Lynn Declaration. *See* Ex. N. PeerMonitor® is a subscription-based service that collects actual billing rates from participating law firms, aggregates and anonymizes the information, and allows subscribers to generate reports based on practice area, office location, law firm size, and experience level. Lynn Decl. ¶ 59. According to PeerMonitor®, for intellectual property litigation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] For law firms situated in the "Other East" region (which includes Delaware but also numerous other regions outside of Delaware), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, whereas the rates for law firms situated in the "Philadelphia Metro" region ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Lynn Decl. ¶ 57 & n. 13-14. Nevertheless, because the sample size for each of these regions is so small, this data is less relevant. *See id.* at n.13-14; Ex. M-1 at I-37, I-49; Ex. M-2 at I-29, I-42; Ex. M-3 at I-27, I-39; Ex. M-4 at I-25, I-36.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ This demonstrates that Baker Botts' rates align with the prevailing market rates for patent litigation from the AIPLA Reports and PeerMonitor® and are comparable with Delaware and nationwide market rates. *Id.* ¶ 64; *see also id.* ¶¶ 65-66.

## V. THE NUMBER OF HOURS SPENT BY DISH'S ATTORNEYS IS REASONABLE

Under the lodestar inquiry, the second step is determining the time reasonably expended in conducting the litigation. To determine the reasonableness of the amount of time, "[t]he district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *PIRG*, 51 F.3d at 1188. Time expended is considered "reasonable" if the work performed was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 266 (3d Cir. 2002) (internal quotations omitted). "The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *Interfaith*, 426 F.3d at 711. Here, there were no "excessive, redundant, or otherwise unnecessary" time entries in the bills submitted to DISH, and the Court should find the time spent by attorneys at Baker Botts and Morris Nichols in defending DISH from Dragon's allegations was reasonable. *See PIRG*, 51 F.3d at 1188.

In support of the reasonableness of the number of hours spent, attached as Exhibits A-1, A-2, and B-1 to the Lynn Declaration are contemporaneous and detailed billing entries for the total hours expended by all Baker Botts and Morris Nichols timekeepers, respectively. Lynn Decl. ¶¶ 24, 52. The time in Exhibits A-1 and A-2 includes only time billed to DISH, not all hours worked by Baker Botts. *Id.* ¶¶ 23, 34. Each monthly bill was carefully reviewed, and in the course

9

of those reviews, ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Finally, because the Court determined that DISH was not entitled to recover any fees related to the IPR work, DISH categorized the fees based on whether the work reasonably related to only the district court proceeding or was partially related to the IPR. *Id.* ¶ 28. For purposes of this accounting, and reserving all rights to challenge the Court's decision not to award DISH any of its IPR-related fees, DISH eliminated from its requested fee award all fees related to the IPR. *Id.* ¶ 29.

These attached supporting documents make evident that DISH's attorneys expended their time in a reasonable and responsible manner. *See Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1186 (N.D. Cal. 2004) ("Thus, if a fee applicant can demonstrate that its attorneys billed fewer hours than reasonably competent counsel would have billed, the fee applicant should be reimbursed at an above-average hourly rate.") (citing *Blum*, 465 U.S. at 898). Baker Botts leanly staffed this case. Lynn Decl. ¶ 20. ███████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████[5] ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[5] Jamie R. Lynn was promoted from associate to counsel on January 1, 2016 and from counsel to partner on January 1, 2019. Lynn Decl. ¶ 38.

10

███████████████████████████████████████████████

████████████ ██████

Moreover, Baker Botts attorneys worked efficiently, and the total recoverable hours ██████—which includes work through claim construction as well as significant work following the Federal Circuit's November 1, 2017 decision (including, among other things, yet another appeal (*see id.* ¶¶ 21-22)—are well-below what other parties have requested in similar cases. *See Chalumeau Power Sys. LLC v. Alcatel-Lucent USA Inc.*, No. CV 11-1175 (RGA), 2014 WL 5814062, at *2 (D. Del. Nov. 6, 2014) (granting award of attorneys' fees for 1,858.4 hours (1:11-CV-01175, D.I. 182 at 10) in case dismissed after claim construction), *aff'd sub nom. Chalumeau Power Sys. LLC v. Alcatel-Lucent Enter. USA, Inc.*, 611 F. App'x 1008 (Fed. Cir. 2015); *cf. Philips Elecs. N. Am. Corp. v. Compo Micro Tech., Inc.*, No. 02-123, 2006 WL 3020724, at *4 (D. Del. Oct. 23, 2006) (requesting reimbursement for 10,979 hours in 16 months that included summary judgment briefing and a trial on damages and willful infringement).

Further, work was appropriately delegated to junior attorneys (*i.e.*, associates). Lynn Decl. ¶ 36. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

The total recoverable hours here also represent the significant work that Baker Botts attorneys undertook to successfully defend against Dragon's claims of infringement. *Id.* ¶¶ 21-

---

[6] Lauren J. Dreyer was promoted from associate to counsel on March 1, 2021. Lynn Decl. ¶ 43.

22. A summary of that significant undertaking is provided in the Lynn Declaration. *Id.* In particular, before the case was stayed, DISH attorneys analyzed and reviewed a substantial amount of prior art and served 55-page invalidity contentions, containing 38 claim charts and 62 prior art references. *Id.* ¶ 21(c). DISH attorneys were also involved in substantial motions practice, including the claim construction briefing and motions related to Dragon's withdrawal of counsel and failure to prosecute, including DISH's motion to dismiss for failure to prosecute and hearings related to those motions. *Id.* ¶ 21(f). This Court has found fees warranted in similar circumstances. *See, e.g.*, *Rath v. Vita Sanotec, Inc.*, C.A. No. 17-953 (MN), 2020 WL 5877597, at *5 (D. Del. Oct. 2, 2020) (finding amount of fees reasonable for "complex trademark action" involving motions practice, discovery, including in particular motions to withdraw as counsel and defending the case after party's failure to litigate after ordered to substitute counsel).

On remand from the Federal Circuit's November 1, 2017 decision, DISH attorneys undertook a reasonable amount of hours in continuing to litigate the exceptionality of this case. In particular, DISH attorneys opposed Dragon's motion to vacate the noninfringement order and deny DISH's August 2016 motion for exceptionality under § 285, which resulted in yet another Federal Circuit appeal. Lynn Decl. ¶ 22(a). On appeal, DISH attorneys successfully sought vacatur of the Court's decision that DISH was not a prevailing party, which included substantial appellate briefing and oral argument. *Id.* ¶ 22(b). Without those appellate activities, DISH would not have been able to recover fees.

On remand from the Federal Circuit's April 21, 2020 decision, DISH attorneys again were forced to engage in motions practice by Dragon, in opposing the motion to terminate the district court proceedings for lack of subject matter jurisdiction (*id.* ¶ 22(c))—a meritless argument that had been foreclosed by the Federal Circuit's prior decision. *See* D.I. 218 at 10;

D.I. 226 at 3. DISH attorneys also prepared and filed a renewed opening brief and reply brief in support of its motion to declare the case exceptional based on the developments since its original August 2016 brief, argued the issue during the hearing before Magistrate Judge Hall, and prepared objections to the portion of the report and recommendation denying recovery of IPR fees and assessment of fees against Dragon's counsel. Lynn Decl. ¶ 22(c).

Given the complexity of the case, the substantial motions practice (including meritless motions filed by Dragon and its counsel), and the necessity of two Federal Circuit appeals in order for DISH to seek fees, the amount of hours spent by DISH attorneys was reasonable.

### VI. THE *JOHNSON* FACTORS WEIGH IN FAVOR OF SLIGHTLY HIGHER BILLABLE RATES FOR DISH ATTORNEYS

In determining the lodestar amount for this case, courts typically consider the twelve *Johnson* factors to upwardly or downwardly adjust a lodestar figure to account for, *e.g.*, "the skill required to perform the legal services properly," "the amount involved and results obtained," and "the experience, reputation, and ability of the attorneys." *PIRG*, 51 F.3d at 1185 n.8; *see also Bywaters*, 670 F.3d at 1229 n.5. In this case, these considerations weigh in favor of hourly billing rates slightly higher than the average or median from the available survey data.

*First*, the lodestar amount should reflect "the skill requisite to perform the legal services properly." *Bywaters*, 670 F.3d at 1229 n.5. In the context of patent litigation, courts have universally recognized that patent litigation specialists command higher billing rates. *See, e.g., Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1195-96 (E.D. Pa. 1990) (allowing higher New York rates in a § 285 action in Philadelphia for specialized patent litigation). ▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

13

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████

*Second*, the district court should account for the "result obtained" in calculating the lodestar figure. *Bywaters*, 670 F.3d at 1231. Where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Mathis*, 857 F.2d at 755 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotations omitted)). Here, the ultimate result—invalidating of the asserted patent, along with a stipulation of noninfringement based on a successful prosecution history disclaimer defense adopted by the Court's *Markman* order—was an absolute victory for DISH. Accordingly, the Court would be within its discretion in finding the billing rates of DISH's Baker Botts attorneys justified.

*Third*, the "amount involved" also justifies a slightly higher-than-average billing rate. This case was a high-stakes patent litigation against a pernicious non-practicing entity that had multiple lawsuits pending against industry leaders. Lynn Decl. ¶¶ 2, 56. ████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████

## VII. THE COURT SHOULD AWARD DISH ITS EXPENSES

The Federal Circuit has interpreted "attorneys' fees" to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). Such sums include "certain expenses when the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented." *Philips Elecs.*, 2006 WL 3020724, at *6. Typically, these expenses include those related to travel, food, lodging, telephone, mail, photocopying, facsimile, courier,

14

filing fees, deposition transcripts, subpoena services and other related services. *Id.* Supporting documentation and a description of these activities is included in the Lynn Declaration. *See* Lynn Decl. ¶¶ 67-73; Exs. A-3, B-2.

DISH seeks ▮▮▮▮▮▮ in expenses from Baker Botts and ▮▮▮▮▮▮ in expenses from Morris Nichols, for a total of ▮▮▮▮▮▮. Lynn Decl. ¶ 15; *see also id.* ¶¶ 67-73.

## VIII. CONCLUSION

DISH, therefore, respectfully requests a total award of attorneys' fees and costs in the amount of ▮▮▮▮▮▮.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Lucinda C. Cucuzzella* |
|  | Rodger D. Smith II (#3778)<br>Lucinda C. Cucuzzella (#3491)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>rsmith@morrisnichols.com<br>ccucuzzella@morrisnichols.com |
| OF COUNSEL: |  |
| G. Hopkins Guy III<br>BAKER BOTTS L.L.P.<br>1001 Page Mill Road<br>Building One, Suite 200<br>Palo Alto, CA 94304-1007<br>(650) 739-7500 | *Attorneys for Defendant DISH Network L.L.C.* |
| Ali Dhanani<br>Bradley Bowling<br>BAKER BOTTS L.L.P.<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, TX 77002-4995<br>(713) 229-1234 |  |
| Jamie R. Lynn<br>BAKER BOTTS L.L.P.<br>700 K Street NW<br>Washington, DC 20001<br>(202) 639-7700 |  |

December 1, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 8, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Timothy Devlin, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| J. James Li, Ph.D.<br>LILAW INC.<br>5050 El Camino Real, Suite 200<br>Los Altos, CA  94022<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| FREITAS ANGELL & WEINBERG LLP<br>350 Marine Parkway, #200<br>Redwood City, CA  94065 | *VIA ELECTRONIC MAIL AND FEDEX* |
| Robert Freitas, Esquire<br>FREITAS ANGELL & WEINBERG LLP<br>350 Marine Parkway, #200<br>Redwood City, CA  94065 | *VIA ELECTRONIC MAIL AND FEDEX* |

*/s/ Lucinda C. Cucuzzella*

Lucinda C. Cucuzzella (#3491)