# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
_____

(302) 658-9200
(302) 658-3989 FAX

LUCINDA C. CUCUZZELLA
(302) 351-9685
(302) 425-4689 FAX
ccucuzzella@morrisnichols.com

November 18, 2022

The Honorable Richard G. Andrews                    *VIA ELECTRONIC FILING*
United States District Court
  For the District of Delaware
844 North King Street, Unit 8
Wilmington, DE 19801

    Re:    *Dragon Intellectual Property, LLC v. DISH Network L.L.C.*,
           C.A. No. 13-2066 (RGA)

Dear Judge Andrews:

    On behalf of Defendant DISH Network L.L.C. ("DISH"), we request that the Court grant Defendant's Motion to Compel Plaintiff to Produce Documents and compel Dragon Intellectual Property, LLC ("Dragon") to produce the document(s) in its possession that embody Dragon's fee arrangement with Freitas Tseng & Kaufman LLP ("Freitas")[1] within five days of a Court order granting this motion.

## BACKGROUND

    Dragon is an admittedly non-funded, non-practicing patent assertion entity operated by a single shareholder, Kai Zhu, that availed itself of the judicial system and this Court's resources for nearly a decade in its pursuit of a meritless case. *See* Declaration of Lauren Dreyer ("Dreyer Decl."),[2] Ex. A (Resp. to RFA No. 13); Ex. B (Resp. to Interrog. No. 1); D.I. 1.

    Dragon filed its case on December 20, 2013, asserting U.S. Patent No. 5,930,444 against DISH's continuous recording DVR devices. D.I. 1. Before filing and shortly after its formation, Dragon pitched its proposed "patent enforcement campaign" to scores of plaintiff's firms—"[t]oo many that [Dragon] can remember" (Ex. C at 113:7-11)—in an effort to secure legal representation (Ex. B). Ultimately, Dragon retained Freitas because it "was the first [law firm] that was willing

---

[1]    Freitas Tseng & Kaufman LLP is now Freitas & Weinberg LLP.

[2]    All references to Exhibits herein are attached to the Dreyer Declaration, unless otherwise indicated.

to take [Dragon's case] on [a] full contingency basis." Ex. C at 116:19-25. Dragon's "first priority" was to pay "[n]othing" for the litigation (*id.* at 122:7-11), and indeed, it "did not pay and [] did not need to pay a single dollar" to Freitas to litigate the case (*id.* at 121:9-22). In Dragon's own words, it sought "full contingency, even including the costs," because "obviously [it] could not afford to spend [its] own money to enforce the patent." *Id.* at 74:21-75:7. In exchange for its services, Freitas was entitled to receive a portion of Dragon's proceeds. *Id.* at 120:18-121:5 (describing Freitas as being entitled to a "big chunk" of any recovery by Dragon but refusing to otherwise describe the fee arrangement). And, once Dragon entered into its agreement with Freitas, Freitas took control of the litigation. *See, e.g.*, *id.* at 90:4-12, 91:4-14.

But, as the Court has already found, Dragon's case was meritless from its inception. D.I. 226, 227; *see also Dragon Intell. Prop., LLC v. Apple, Inc.*, C.A. No. 13-2058-RGA, 2015 WL 5298938, at *4 (D. Del. Sept. 9, 2015) (finding that the patentee of Dragon's asserted patent "clearly and unequivocally disclaimed continuous recording devices" during prosecution, noting that Court had "only once seen a clearer case of prosecution disclaimer") (emphasis added). The Court declared this case to be exceptional (D.I. 226, 227) and awarded $1,456,273.49 in attorneys' fees to DISH (D.I. 244).[3]

On May 10, 2022, DISH served post-judgment discovery on Dragon under Fed. R. Civ. P. 69 to investigate Dragon's ability to satisfy the judgment against it and the nature and extent of its relationship with its former counsel Freitas. *See* Exs. D-F. Particularly, DISH's Request for Production No. 5 sought Dragon's production of "[a]ny engagement agreement, contract, and/or retainer between Dragon and Freitas, including any contingency fee agreements or agreements regarding the payment of costs or expenses." Ex. D (Request No. 5). Dragon responded on August 3, 2022, but it refused to produce the contingency fee agreement and objected, *inter alia*, on the grounds of attorney-client privilege and the work-product doctrine.[4] Ex. G (Resp. to RFP No. 5).

The next day, DISH notified Dragon's then-counsel[5] that contingency fee agreements are not privileged under Third Circuit law, requested that Dragon produce the agreement, and requested confirmation that Dragon would produce a privilege log for documents that are being withheld. Ex. H (citing *Montgomery County v. Microvote Corp.*, 175 F.3d 296, 304 (3rd Cir. 1999)). Dragon never produced the requested privilege log. Rather, after counsel for the parties met and conferred on the matter, Dragon's counsel "confirmed that Dragon *did not withhold any documents on the basis of privilege* and that [its] search for documents is complete." D.I. 261-1 at 108 (emphasis added).

---

[3]  Dragon was never properly capitalized and admittedly cannot satisfy the judgment against it. Ex. A (Resp. to RFA No. 13); Ex. B (Resp. to Interrog. No. 1). The liability of Freitas for the outstanding judgment is pending appeal.

[4]  Dragon never objected to Request No. 5 (or to any Request) on the grounds of relevance or proportionality. *See* Ex. G.

[5]  Dragon's then-counsel has since withdrawn its representation of Dragon. *See* D.I. 265.

DISH deposed Dragon's corporate representative on November 8, 2022. Dragon testified that its contingency fee agreement with Freitas was reduced to a writing, and that Dragon *is currently withholding* based on its privilege objection. Ex. C at 32:5-19, 117:18-119:20.

## ARGUMENT

DISH requests that the Court compel the production of Dragon's contingency fee agreement with Freitas. Granting this motion falls squarely within this Court's discretion. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003). And doing so is proper where, as here, the nonmovant "fails to produce documents . . . as requested under Rule 34" that are nonprivileged, relevant, and proportional to the needs of the case, and where the "movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 26(b)(1), 37(a)(1), 37(a)(3)(B)(iv).

Dragon's fee agreement with Freitas is not privileged as either an attorney-client communication or attorney work product. *See Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("[F]ee agreement letter[s] [are] not privileged.") (citing *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980)) (distinguished on other grounds by *Bacher v. Allstate Ins. Co.*, 211 F.3d 52, 55 (3d Cir. 2000)). Indeed, the document DISH seeks from Dragon is precisely the type of document that was at issue (and compelled) in *Montgomery County*. *Id.* Nothing about Request No. 5 calls for the legal advice that was sought or given. See Ex. D (Request No. 5). Rather, it merely seeks the document that governs the specific consideration for which attorney services were provided to Dragon. *See id.* It is not legal advice but a contract for services rendered. *See Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, C.A. No. 14-1430-LPS-JLH, 2021 WL 4819904, at *6 (D. Del. Oct. 15, 2021) (ordering production of unredacted "Contingency Fee Engagement Letter" after determining that the redacted portions "do not constitute privileged information," reasoning that "[t]hey are contract terms"). At a minimum, the compensation structure here between Dragon and Freitas—where Freitas controlled the litigation and paid for all of its expenses—is akin to funding agreements between client and third-party funders, which Chief Justice Connolly has found to be not privileged and relevant. *See* Standing Order of Chief J. Connolly (D. Del. Apr. 18, 2022).

Dragon's fee arrangement is also relevant to DISH's ability to enforce the judgment under Rule 69 and production of the requested fee agreement in no way can be considered disproportional with DISH's need to investigate its ability to enforce its nearly $1.5 million award. *See* Fed. R. Civ. P. 26(b)(1). Dragon conceded that the fee agreement is relevant and proportional to the needs of the case by not objecting on those bases. *See SWIMC, Inc. v. Hy-Tech Thermal Sols., LLC*, C.A. No. 08-084-SLR, 2009 WL 1795177, at *3 (D. Del. June 24, 2009) (ruling that "[o]bjections to document requests under Rule 34 must be [] stated within 30 days to avoid waiver"); *see also Hayes v. Bergus*, No. 2:13-CV-4266-SDW-SCM, 2015 WL 5666128, at *3 (D.N.J. Sept. 24, 2015) (waiving "any objections not asserted in the initial response to a discovery request but raised in response to a motion to compel"). The Court should therefore compel the production of Dragon's fee agreement with Freitas.

## **CONCLUSION**

For the foregoing reasons, DISH respectfully requests that the Court grant Defendant's Motion to Compel Plaintiff to Produce Documents and compel Dragon to produce the document(s) in its possession that embody Dragon's fee arrangement with Freitas within five days of a Court order granting this motion.

Respectfully,

*/s/ Lucinda C. Cucuzzella*

Lucinda C. Cucuzzella (#3491)

LCC/bac